# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SUEANN SWANEY, )<br>on behalf of plaintiff and the class defined )<br>below, )<br>)<br>               Plaintiff, )<br>)<br>     vs. )<br>)<br>REGIONS BANK, )<br>)<br>              Defendant. ) | Case No.: CV-13-JHE-0544-S |

## JOINT STATUS REPORT

Per the Court's Order of July 10, 2014, the parties submit this joint status report indicating the status of the limited discovery the parties have been permitted to take and the parties' respective readiness to brief the class certification issue.

The parties' respective positions on both issues are set forth below:

**<u>Regions' Position</u>**

By Order dated May 9, 2014, the Court limited discovery to two threshold issues (i) whether the accused Regions text alert system included an "automatic telephone dialing system" ("ATDS") under the Telephone Consumer Protection Act ("TCPA"); and (ii) whether there is an identifiable class in connection with

1

plaintiffs' TCPA claim. Regions positions regarding the status of discovery and class certification briefing are set forth below.

    A.    Status of ATDS-Related Discovery.

Swaney has had approximately four months to pursue discovery on the two threshold issues identified above. Regarding issue (i), Swaney has sought and has been given significant discovery regarding Region's text alert system. First, Regions' third party mobile banking provider, Monitise Americas, offered to make its source code available to plaintiff for review, as the source code is unquestionably the best source of information regarding the system's functions and capabilities. Plaintiff, however, declined Monitise's offer, opting to request technical documents and to take a 30(b)(6) deposition of Monitise instead of (not in addition to) a source code inspection. The Monitise deposition was completed on August 27, 2014. While plaintiff's subpoena to Monitise requested that Monitise produce the requested documents **at** (not before) the deposition, Monitise offered on two occasions to produce the documents in advance, an offer plaintiff did not even acknowledge must less accept until the week before the deposition. In addition, Regions produced the documents in its possession related to the alert system.

The information that Monitise and Regions provided conclusively establish that the Regions alert system is not an ATDS because it does not have the ability to

store or produce numbers using a random or sequential number generator or to dial such numbers as required by the TCPA. *See* 47 U.S.C. 227(a)(1) ("The term "automatic telephone dialing system" means equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."). While Plaintiff disagrees that ATDS must have random/sequential number generation capability, the proper definition of an ATDS under the TCPA is a pure issue of law.

Regions submits that unless plaintiff has changed her mind and now wishes to review the Monitise source code – something Monitise has offered several times – no further fact discovery on this issue is needed. The only open issue – whether the Regions system qualifies as an ATDS – is an issue of law. Accordingly, Regions requests leave to file an early motion seeking summary judgment that Regions has not violated the TCPA because the text alerts were not sent from an ATDS as required by the statute. [1]

B. Status of Discovery Related to Whether There is an Identifiable Class.

Plaintiff has also sought extensive discovery relating to whether records exist that can be used to identify members of the class plaintiff has proposed for

---

[1] Although Regions will address the ATDS issue in detail if permitted to file an early summary judgment motion, Regions notes that the FCC's statement referenced by plaintiff regarding not requiring random or sequential number-generation capacity was referring to "predictive dialers," which are not at issue in this case.

3

this case. The discovery process, however, has helped to demonstrate that there is not an ascertainable class that could properly be certified in this case.

As this Court has recently explained, it is "universally recognized that the first essential ingredient to class treatment is the ascertainability of the class." *Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 264 F.R.D. 659, 663 (N.D. Ala. 2010). At the most fundamental level, this means that "the named plaintiff must define the proposed class in a manner that adequately identifies its members. Who, exactly, are they, and how can they be located?" *Id*. at 664.

According to her complaint, plaintiff seeks to certify a class defined as "(a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. § 1658), (c) were sent text messages by Defendant (d) where Defendant's records do not show that the person provided the number to the defendant." (Doc. 1, ¶ 24). On its face, however, such a class does not exist. Discovery provided to plaintiff shows that a mobile number is entered into Regions' system only after a Regions customer provides that number to the bank for the express purpose of permitting the bank to send text messages to the customer about the customer's account. Accordingly, Regions' records only include phone numbers that were voluntarily provided to Regions by its customers along with the identity of the person *who provided the number*.

Plaintiff's TCPA claim is based on her assertion that after buying a new cellphone, she received text messages from Regions concerning the bank account of a Regions customer who previously had the same telephone number. That is, plaintiff was allegedly the recipient of text messages intended for the Regions customer who had provided that number to Regions. Assuming, hypothetically, that there might be other "persons" who received text messages under similar circumstances,[2] Regions' records do not – and cannot – reflect the identities of such persons; the records only reflect the identity of the person who authorized the sending of text messages. Simply put, while Regions has records showing the phone numbers to which text messages were sent and the identities of the customers who provided those numbers to Regions (*i.e.*, authorized text messages to be sent), Regions has no records to show why, when, or how there may have been a break in service to a particular number or who may have received the texts if the phone number was reassigned to a non-Regions customer before the number was deactivated from Regions' system (*i.e.* proposed class members). Nor does Regions' service provider Monitise have such records. Under similar circumstances, class certification has been denied on the basis that "determining

---

[2] The evidence provided to date shows that Monitise receives a list of all cellphone numbers that have been disconnected by a carrier on a daily basis. Monitise in turn deactivates in the Regions alert system any number appearing on that list that also appears in the Regions database.

who would be in [such] a class . . . would be an unmanageable task." *Vigus v. So. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235-36 (S.D. Ill. 2011).

Perhaps anticipating the ascertainability problem inherent in her proposed class definition, Swaney also proposes "a subclass" that she seeks to define as "class members who informed Defendant that they were not the person Defendant was attempting to communicate with" (Doc. 1, ¶ 25). During discovery, Monitise provided a spreadsheet containing e-mails received from Regions asking Monitise to address all issues relating to mobile banking received by Regions' customer service center. While it was not required to do so, as a courtesy, Monitise also provided a second spreadsheet identifying just those requests Monitise received from a Regions customer service representative to "purge" mobile phone numbers from the text alert system. That spreadsheet took longer to prepare so it was not ready for production until the day before the deposition, a day earlier than the day the subpoena called for documents to be produced. In the vast majority of instances, however, the "purge" request on the spreadsheet is not accompanied by an explanation indicating why the request was made, and there are numerous reasons a customer might seek to have his or her number purged from the system having nothing to do with the issues in this case. As a result, even Swaney's proposed "subclass" is problematic. As the court explained in *Grimes*, where there are no records identifying the recipients of allegedly improper communications, the

ascertainability requirement is not satisfied where class members must first self-identify themselves as potential members of the class and then have their eligibility for inclusion in the class determined by reference to the circumstances of their individual cases. *See Grimes*, 264 F.R.D. at 665-66. Yet that is precisely the path plaintiff is trying to follow in this case.

In the face of these debilitating hurdles to defining an ascertainable class in this case, and after several months of class-related discovery during which Regions and Monitise ran multiple database queries in an effort to locate the information requested by plaintiff related to identification of potential class members, produced voluminous records, and provided a 30(b)(6) deposition, counsel for plaintiff has indicated that they may wish to pursue additional discovery related to the issue of ascertainability. Indeed, plaintiff's counsel provided Regions' counsel with a list of additional documents plaintiff wished to obtain from Monitise. Regions' counsel, however, has confirmed with Monitise that much of the requested information does not exist, and the requested information that does exist will in no way identify individuals who fall within plaintiff's class definition.[3] Nevertheless, plaintiff has indicated that she wishes to continuing researching additional ways to

---

[3] While plaintiff notes that Monitise can determine what text messages were sent to deactivated cellular phones and when, Monitise has advised that as currently configured, its system cannot provide such information without Monitise coding the system to do so, which would be a significant undertaking. Even if Monitise undertook such coding, however, the information pulled would not provide the identity of the person(s) who received the text.

identify potential class members, and now for the first time is requesting that she be allowed to proceed with full fact discovery, both on the class and the merits, "because whether a class can be certified is closely tied to whether plaintiff's claim has merit." In making this argument, plaintiff essentially concedes the problems inherent in her class allegations. *See, e.g., Lindsay Transmission, LLC v. Office Depot, Inc.*, 2013 WL 275568, at *4 (E.D. Mo. Jan. 24, 2013) (class allegations stricken and plaintiff's motion to compel discovery denied where class certification would "require the Court to engage in an improper merits evaluation to determine who is in the class"). At this point, Regions respectfully submits that any such further discovery would be unreasonably burdensome and would simply consist of indulging plaintiff's futile search for the proverbial needle in the haystack.

    C.    Discovery by Regions from Plaintiff.

Regions believes that any consideration of class certification in this case must also take into account issues related to Swaney's role as potential class representative. For example, soon after this case was filed, Regions made an offer of judgment to plaintiff pursuant to F.R.C.P. 68. Although plaintiff did not respond within the permitted time for acceptance, in light of the offer provided (the statutory amount of damages for each text she received), plaintiff cannot achieve a better result in this case than what was offered to her. Under the circumstances,

plaintiff's claims are moot, and there is no live "case or controversy" here that would be a proper subject matter of the Court's jurisdiction.

In addition, before the question of class certification is brought before the Court, Regions would like to take a short deposition of plaintiff to explore whether there are addition reasons she would not be an adequate class representative in this case and/or why her claims are not typical of other proposed class members. Counsel for the parties have discussed potential dates for this deposition, and plaintiff's counsel has indicated that she will not be available until later in the month of September 2014.

        D.       Readiness to Brief the Question of Class Certification.

Once Swaney's deposition is taken (and any accompanying document production from Swaney is complete), Regions believe the parties will be ready to brief the question of class certification.[4] On that basis, Regions respectfully suggests that the Court set a deadline of October 8, 2014 for plaintiff to file her class certification motion.

**Plaintiff's position:**

        1.       Plaintiff disagrees with defendant's statement of the status of the case.

        2.       As part of this Court's allowance of preliminary discovery, plaintiff took a subpoenaed deposition of a representative of Monitise Americas, Inc.

---

[4] Regions notes that its arguments in opposing class certification will likely extend to additional issues, including the Rule 23 requirements of predominance and superiority.

("Monitise") on August 27, 2014, the purpose of which was to determine pursuant to this Court's July 10, 2014 order whether Regions Bank used an automatic telephone dialer system to send text messages to plaintiff and whether there was an identifiable class. Defendant objected to every aspect of plaintiff's subpoena of the Monitise witness. Indeed, prior to the deposition, plaintiff's counsel inquired as to whether there was any reason to appear since Monitise had objected to every topic that was subpoenaed. Contrary to defendant's assertion that discovery has been going on for months,[5] plaintiff has not yet been permitted to serve written discovery, get responses, and determine herself whom to depose. Two business days prior to the deposition, Monitise served documents on plaintiff's counsel. The evening before the deposition, after counsel had already left for California, Monitise served an additional 300 pages of documents.

3. In response to the subpoena, Monitise produced a witness who was unable to identify the hardware and software used or the options that were chosen by Regions Bank even though that information was specifically requested in plaintiff's subpoena. Knowing the hardware and software used is important to determine whether a system is an automatic telephone dialing system. The witness for Monitise, however, did testify that the Regions Bank's text alert system installed by Monitise stores lists of cellular telephone numbers and sends text

---

[5] Defendant and Monitise spending months pouring over their system to find a defense is not discovery.

messages to those telephone numbers without human intervention. Plaintiff's position is that the system constitutes at automatic dialer under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). *See Sterk v. Path, Inc.*, 13 C 2330, 2014 WL 2443785 *4 (N.D. Ill. May 30, 2014) ("The FCC emphasized that the main requirement for an [Automatic Telephone Dialing System] is not the capacity to generate random or sequential numbers, but rather to be able to 'dial numbers without human intervention.' *In re Rules & Regulations Implementing the TCPA,* 18 FCC Rcd. [14014, ]14092"); *Lardner v. Diversified Consultants*, ___ F. Supp. ___, 2014 WL 1778960 *5 (S. D. Fla. May 1, 2014) ("it does not matter that the LiveVox software is not used to store or produce telephone numbers using a random or sequential number generator. It qualifies as an [Automatic Telephone Dialer System] under the statute because it automatically dials telephone numbers from a preprogrammed list.") Plaintiff understands that defendant denies that Regions Bank used at an automatic telephone dialing system. More information may be needed. Plaintiff will likely require the help of an expert.

4. With regard to identifying the class, Monitise keeps records of all the numbers it deactivates after receiving notice from the carriers that ownership has changed.[6] Monitise also has records of its date of deactivation. During the class

---

[6] Contrary to defendant's representation in its footnote, the evidence shows that Monitise receives a list of cell phones on a daily basis but those cell phones numbers were not necessarily

period, 134,000 cellular telephone numbers were deactivated through the system set up by Monitise on behalf of Regions Bank. Monitise can also determine what text messages were sent to those deactivated cellular phones and when. Contrary to defendant's contention, no evidence has been produced that defendant had authorization from plaintiff or other non-customers to send text message alerts. Defendant's claim that it had consent is severely compromised by the opinions from the U.S. Court of Appeals for the Eleventh Circuit in *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank F.S.B.*, 2014 WL 1258023 (11th Cir. Fla. March 28, 2014).

5. The question still exists whether there were text messages sent after ownership changed but before the numbers were deactivated by Monitise's system. The fact that the night before the deposition defendant produced an Excel spreadsheet showing its customer complaints sheds no light on the issue. To determine that, plaintiff will need to know what carrier provided service to the deactivated cell phones, how often that carrier provides public notice that ownership of a number has changed, and when the ownership changed. Carriers indicate publically how often they provide notice that a number is deactivated. Plaintiff is consulting with her expert to determine if the other information is available. If so, then a class is ascertainable.

---

terminated on the prior day. Some carriers report deactivation weekly, biweekly, monthly and quarterly.

6. Plaintiff believes that based on the limited discovery so far, she continues to have a valid class claim against Regions Bank under the TCPA. At this time, she needs additional discovery before refiling the motion for class certification to further identify the class as discussed above. Plaintiff further requests that this court proceed with full fact discovery, both on the class and the merits, because whether a class can be certified is closely tied to whether plaintiff's claim has merit. Plaintiff should not be required to pursue her motion for class certification or respond to a summary judgment motion until she has had an opportunity to pursue full discovery.

        Respectfully submitted,

        /s/ Micah S. Adkins
        Micah S. Adkins (ASB-8639-I48-A)
        THE ADKINS FIRM, P.C.
        301 19th Street North, Suite 581
        The Kress Building
        Birmingham, Alabama 35203
        Telephone: 205-458-1202
        Facsimile: 205-208-9632
        Email: MicahAdkins@ItsYourCreditReport.com

William Peerce Howard (admitted *pro hac vice*)
MORGAN & MORGAN, TAMPA, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tele: 813-223-5505
Fax: 813-223-5402
Email: BHoward@ForThePeople.com

Cathleen M. Combs (admitted *pro hac vice)*

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle St., 18th Floor
Chicago, Illinois 60603
Telephone: 312-739-4200
Facsimile: 312-419-0379
Email: ccombs@edcombs.com
*Counsel for Plaintiff*

/s/ Robin L. McGrath
Robin L. McGrath Ga. Bar No. 493115 (admitted *pro hac vice*)
Edward J. Benz. , Ga. Bar No. 344010(admitted *pro hac vice*)
Andrea J. Pearson, Ga. Bar No. 409604(admitted *pro hac vice*)
PAUL HASTINGS LLP
1170 Peachtree Street, Suite 100
Atlanta, GA 30309
Telephone: 1(404) 815-2400
Facsimile: 1(404) 815-2424


Maibeth Porter (ASB-3915-O40M)
Joshua B. Baker (ASB-5105-S72B)
Maynard, Cooper & Gale, P.C.
2400 Regions/Harbert Plaza
1901 6th Ave. North
Birmingham, Alabama 35203
Telephone: 205-254-1000
Facsimile: 205-254-1999
Email: MPorter@maynardcooper.com
Email: JBaker@maynardcooper.com