FILED

2015 Mar-02  PM 04:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |
|---|---|
| SUEANN SWANEY, on behalf of plaintiff and the class defined below,<br><br>      Plaintiff,<br><br>v.<br><br>REGIONS BANK,<br><br>      Defendant. | CIVIL ACTION NO.<br>2:13-cv-00544-JHE |

## REGIONS BANK'S RESPONSE TO PLAINTIFF'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.   RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS ................... 1

II.  ADDITIONAL FACTS REQUIRING DENIAL OF SUMMARY JUDGMENT IN PLAINTIFF'S FAVOR. .................................................................................................. 7

III. ARGUMENT AND CITATION OF AUTHORITY .......................................... 8

    A.   Summary Judgment Standard. ............................................................... 8

    B.   Plaintiff Has Failed to Establish that the Accused System Satisfies the Definition of ATDS ............................................................................... 9

        1.   Plaintiff Has Failed to Establish that the Accused System Has the Capacity to Store or Produce Numbers Using a Random or Sequential Number Generator .................................................. 10

        2.   Plaintiff has Failed to Establish that the Accused System Has the Capacity to Dial Stored Numbers. ........................................... 10

    C.   The Court Should Reject Plaintiff's Definition of ATDS. ................................. 12

        1.   Plaintiff's Definition is Grammatically Insupportable. ........................... 12

        2.   Plaintiff Has Misinterpreted the FCC's Orders. ...................................... 13

IV.  CONCLUSION ............................................................................................. 17

CERTIFICATE OF SERVICE ............................................................................. 19

## I.     RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

1.  Disputed.  The cited evidence states that plaintiff obtained a cellular telephone *number* and *account* from MetroPCS.  There is no cited evidence to show from where Plaintiff obtained her cellular telephone.   Also disputed as irrelevant to Plaintiff's summary judgment motion.

2.  Admitted in part and disputed in part.  Regions admits that on November 5, 6, 8-10, and 12-17, 2012, the cell phone registered by a Regions bank customer received low balance mobile alerts.  Regions disputes that the texts received by Ms. Swaney's mobile phone can properly be characterized as "series of text messages."  Also disputed as irrelevant to Plaintiff's summary judgment motion.

3.  Admitted in part and disputed in part.  The cited evidence shows that between November 5 and 17, 2012, a phone number that was in Regions' database as one registered for alerts received between 11 and 18 (Pltf. Ex. B shows 11; Pltf. Ex. C suggests up to 18) low balance mobile alert texts.  Regions further admits that seven texts were sent responding to Ms. Swaney's attempts to communicate with Regions using unrecognized commands.  Regions disputes that this fact is relevant to Plaintiff's summary judgment motion.

4.  Admitted in part and disputed in part. Regions admits that the mobile alert texts that Ms. Swaney received included wording similar to the cited text, but denies that the response texts she received included similar wording.  Instead, those response texts included a list of commands for communicating with Regions via text, including the command "STOP" for "deactivate alerts" (Pltf. Ex. C, p. 665-67).  Also disputed as irrelevant to Plaintiff's summary judgment motion.

5.  Admitted in part and disputed in part.  Regions admits that Plaintiff sent text messages to Regions, but disputes that Plaintiff sent any texts to Regions stating either "Please stop

1

texting me" or "Do not text me again as I am not the person u want!" (Pltf. Ex. C). Regions also disputes that any of the texts Plaintiff sent to Regions indicated that she has never done business with Regions (*Id.*). Also disputed as irrelevant to Plaintiff's summary judgment motion.

6. Admitted in part and disputed in part. Regions admits that in response to the one and only time Plaintiff included the word "stop" in a text to Regions, Regions responded with a permissible confirmation text stating "You have cancelled and will receive no msgs; Call 800-734-4664 www.regions.com. To turn alerts on again.  Reply HELP for help." Regions further admits that after Plaintiff responded to Regions' cancelation text with a text stating "I hope so!!! If I DO I WILL CALL ATTORNEY!!" that regions sent a text containing a list of commands for communicating with Regions via text (Pltf. Ex. C). Regions disputes that Regions continued to send mobile alerts to Plaintiff after receiving the stop command (*Id.*).  Also disputed as irrelevant to Plaintiff's summary judgment motion.

7. Admitted in part and disputed in part.  Regions admits that the number 800-734-4667 is a number that allows a dialer to reach Regions Customer Service Center" (Doc. 4, ¶ 13). Plaintiff cites no evidence to show that this number is "issued" to "Regions Customer Service Center."  Also disputed as irrelevant to Plaintiff's summary judgment motion.

8. Admitted in part and disputed in part.  Regions admits that it leases a short code from an aggregator (Pltf. Ex. E, p. 6).  Regions disputes that the short code is "assigned" to Regions (*Id.*).  Also disputed as irrelevant to Plaintiff's summary judgment motion.

9. Admitted in part and disputed in part.  Regions admits that Plaintiff did not enroll in Regions' mobile alert program and did not originally provide her number to Regions.

Instead of sending a text with the command "stop," to discontinue the receipt of text messages, however, Plaintiff sent texts to Regions containing unrecognizable commands. In so doing, Plaintiff triggered response texts to her cell phone (Pltf. Ex. C).  In that respect, Regions disputes that Plaintiff did not authorize the response texts to her cell phone. Also disputed as irrelevant to Plaintiff's summary judgment motion.

10. Admitted.

11. Admitted in part and disputed in part.  Regions admits that Monitise designed the software for the Regions mobile alert system and that the system involves hardware from both Regions and Monitise (Pltf. Ex. G (Ex. 2)).  Regions disputes that Clairmail was "taken over by Monitise Americas, Inc."  Monitise PLC, a U.K. company, acquired Clairmail Inc. and renamed it Monitise Americas, Inc. (Pltf. Ex. F, 8:4-9:1) (Ex. 1).  Also disputed as irrelevant to Plaintiff's summary judgment motion.

12. Admitted as to fact, but disputed as irrelevant to Plaintiff's summary judgment motion.

13. Disputed.  Plaintiff has cited no evidence to support this purported fact.  The cited exhibit does not show that the accused system begins sending text messages when a wireless phone number gets registered in the system.    To the contrary, the undisputed evidence shows that the system only sends alerts to a registered mobile device upon the triggering of a selected event (Pltf. Ex. F, 38:4-14; Pltf. Ex. E, 1307).  For instance, if a bank customer registers for low balance alerts, the system will not send an alert to the customer unless and until his account goes below the threshold that the customer has selected (Pltf. Ex. J, p. 606). If a triggering event does not occur, the system will not send any text messages to the wireless numbers in the database (*Id.*).

14. Admitted that when a customer registers to receive mobile alerts, the customer provides the wireless phone number on which he wishes to receive alerts which number is stored in a Regions' database.

15. Admitted as to fact, but disputed as irrelevant to Plaintiff's summary judgment motion.

16. Admitted in part and disputed in part. Regions disputes that triggers are created "through the registration process," as the cited evidence does not establish this to be the case. Regions admits that a bank customer can register to receive different types of alerts. Once registered, the customer will receive an alert if one is triggered by a selected event. For instance, if a customer registers to receive a low balance alert, any time the customer's account balance dips below the customer-designated threshold amount, the system will trigger an alert that will be sent to the customer's registered mobile device number (Pltf. Ex. J, p. 606).

17. Admitted in part and denied in part.  Regions admits that once a trigger is met, a text message is sent to a number stored in the Regions' database, but denies that Regions is the entity that sends the text message to that number. Rather, the undisputed evidence shows that Regions makes the text available to the aggregator, who in turn provides it to the mobile carrier who then sends it to the mobile device number (*See* SUF 18 and Pltf. Ex. G (Ex. 2).

18. Admitted in part and denied in part.  Regions admits that the text message is "sent" to an aggregator only to the extent that Regions initiates a connection with the aggregator which allows the aggregator to "retrieve the short messages from the queue."  (Pltf. Ex. G (Ex. 2), p. 599).

19. Admitted in part and disputed in part.  Regions admits that low balance, deposit
    confirmation, check cleared, and overdraft fee assessed are among the mobile alerts for
    which a bank customer can register.  Regions disputes that these four mobile alerts are
    the only alerts for which a bank customer can register (Pltf. Ex. G (Ex. 2), p. 606-608).
    Also disputed as irrelevant to Plaintiff's summary judgment motion.

20. Disputed.  Plaintiff has misstated the cited evidence which does not show that the
    accused system "can send text messages to large number of wireless phone numbers in
    batch files without human intervention."  To the contrary, the evidence shows that certain
    types of alerts, *e.g.* low balance alerts, are processed after batch files are placed in a
    watch directory as a *feed* for alert *determination* (Pltf. Ex. F, 36:2-24).  Specifically, two
    different batch files are reviewed by the mobile alert system for alert evaluation – a
    "balance file," which contains account balances, and a "transaction file," which contains
    a list of transactions (Pltf. Ex. G (Ex. 2); Pltf. Ex. F, 36:14-37:8).  Those batch files are
    uploaded by Regions into a watch directory at an SFTP (secure file transfer protocol)
    location (Pltf. Ex. G (Ex. 2); Pltf. Ex. F, 37:9- 38:14, 53:24- 54:19).  Once the presence of
    a batch file is detected, the alert system will parse the file contents (Pltf. Ex. F, 37:9-
    38:14).   Each record in the file will be evaluated against an alert registration within the
    system (Pltf. Ex. F, 38:4-14).  If conditions for the alert are met (*e.g.* the balance is below
    the customer's chosen threshold amount), the system will trigger an alert that is sent only
    to the registered phone number (Pltf. Ex. F, 55:5-11).

21. Admitted as a fact, but disputed as irrelevant to Plaintiff's motion for summary judgment.

22. Disputed on the ground that the cited evidence does not support the stated proposition.
    Plaintiff cites generally to (i) a declaration from Ms. Swaney that does not address

5

whether the messages are sent automatically, without human intervention, and (ii) the expert report of Jeffrey A. Hansen.   As to the latter, Mr. Hansen concludes that the "system automatically sends that SMS or text message to the wireless numbers stored, as a list, in its database through an aggregator which provides the connection to the wireless carriers.  This process is completely automated.  Once the list of phone numbers and the other entries in the database are created, no human intervention is required for the system to send SMS or text messages ('alerts') to wireless subscribers" (Pltf. Ex. F, ¶15).   The foregoing conclusion is included within a larger paragraph containing additional statements.  At the end of the paragraph, Mr. Hansen cites generally to a number of pages from Monitise-produced documents, but none of the cited pages support the stated proposition.

23. Disputed at least on the grounds that the statement is incomprehensible.  It is unclear who the referenced "operator" is or how such "operator" can watch text messages being sent, and the cited evidence does not support the proposition.  Regions admits that summary "alert activity" reports can be generated for a specified time period but the cited evidence does not show that these reports show the content of the text messages that were sent (Ex. 2, p. 1258-1269).

24. Admitted in part and disputed in part.  Regions admits that customers can chose to cancel their enrollment in the mobile alert program in several ways, including by calling a customer service representative and asking to no longer receive alerts or by texting "stop" to the Regions short code (Pltf. Ex. F, 64:18-65:11).  Regions denies that these features are "automated."  Also denied as to irrelevant to Plaintiff's summary judgment motion.

25. Admitted in part and disputed in part.  Regions admits that if a mobile device owner texts "stop" to Regions, that owner's mobile phone number will be removed from the mobile alert program and the owner will receive no additional mobile alerts.  However, the owner will receive one final "confirmation" text notifying the customer that they will no longer receive alerts and providing instructions on how to turn on alerts again (Pltf. Ex. C).

26. Disputed.  Plaintiff has misinterpreted the cited testimony.  The evidence shows that when the system receives a text that contains no recognizable commands, the system responds with a full list of available commands, which includes the "help" command among many others (Pltf. Ex. C).

27. Admitted in part and disputed in part.  Regions admits that Plaintiff sent a number of messages that did not contain the word "stop" or any other recognizable command, thereby triggering the system to respond with a list of recognizable commands (Pltf. Ex. C).  Regions further admits that after Plaintiff sent a text to Regions containing the word "stop," Regions sent a confirmation text indicating that no further alerts would be sent. Regions disputes that it sent Plaintiff any additional mobile alerts after receiving the stop command (*Id.*).

28. Denied as unsupported speculation.  Plaintiff cites to the declaration of Jeffrey Hansen who in turn cites nothing in the record to support this statement.

## II.    ADDITIONAL FACTS REQUIRING DENIAL OF SUMMARY JUDGMENT IN PLAINTIFF'S FAVOR.

1. The accused Regions Mobile Alert System (Accused System) does not have the present capacity to randomly or sequentially generate numbers to be dialed (Ex. 3, 9:16-24, 44:19-23).

2. The Accused System does not have the present capacity to dial numbers stored in the Regions' database accessed by the system (Doc. 64-1, ¶11).

3. The Accused System is not a predictive dialer (Ex. 3, 105:10-12).

## III.     ARGUMENT AND CITATION OF AUTHORITY

The Court should deny Plaintiff's motion for Partial Summary Judgment that Regions sent text messages using an automatic telephone dialing system ("ATDS"), because Plaintiff has failed to set forth any evidence to establish that the Accused System satisfies the definition of an ATDS set forth in the Telephone Consumer Protection Act ("TCPA").   While Regions agrees that whether the Accused System is an ATDS is an issue that is ripe for summary determination, Regions disagrees that the issue can be decided in Plaintiff's favor.  To the contrary, as set forth in Regions' Motion for Summary Judgment, Plaintiff readily concedes that the Accused System is not presently capable of randomly or sequentially generating numbers, as required to be an ATDS.  Moreover, Plaintiff has not even attempted to show that the Accused System has the capacity to dial the numbers stored in the Regions as required by the TCPA in in definition of ATDS.  For these reasons, as more fully detailed below, Regions respectfully requests that the Court deny Plaintiff's motion for partial summary judgment.

### A.  Summary Judgment Standard.

The Federal Rules of Civil Procedure provide that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   A dispute is "genuine" if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  Importantly, summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986).

Here, Regions is entitled to summary judgment because Plaintiff has utterly failed to establish that the Accused System has the capacity required by the TCPA's definition of ATDS.

### B. Plaintiff Has Failed to Establish that the Accused System Satisfies the Definition of ATDS

The TCPA prohibits the making of all calls (including the sending of texts) to any telephone number assigned to a "cellular telephone service" (among others services) using an ATDS.  47 U.S.C. § 227(b)(1)(A)(iii)(2012). The TCPA expressly defines an ATDS as "equipment which has the ***capacity***":

> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B) to dial such numbers.

47 U.S.C. § 227(a)(1) (emphasis added).  The parties agree that the foregoing TCPA definition applies in this case (Doc. 59, p. 7; Doc. 52, p. 22, Transcript of December 18, 2014 Hearing (emphasis added)) "Let's all be real clear.  There's one definition to what an ATDS is, and it's in the statute. . . . [T]his is the definition that we're going by.").  Thus, to establish that the Accused System is an ATDS, Plaintiff must show that the system has the ***capacity***, even if such capacity is never in fact used, to (i) store or produce numbers using a random or sequential number generator and (ii) dial the stored numbers.[1] *See, e.g.*, *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1192 (W.D. Wash.  2014) (equipment with the  "capacity" to store or produce numbers using a random or sequential number generator "need not actually store, produce, or call

---

[1] A "random" number is one that involves a random sequence of 10 digits, whereas "sequential" numbers are numbers in sequence, for example "(111) 111–1111, (111) 111–1112, and so on. *See, e.g.*, *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1192 (W.D. Wash.  2014).

randomly or sequentially generated telephone numbers'" for liability to attach). *See also, Hunt v. 21st Mort. Corp.*, Civil Action No. 2:12-CV-2697-WMA, 2013 WL 5230061, at *3 (N.D. Ala. Sept. 17, 2013) (the "statutory text plainly focuses on 'the capacity' of equipment when defining an 'automatic telephone dialing system' . . . ."). As used in the definition of ATDS "capacity" means "present capacity, at the time the calls were being made," not potential capacity. *Hunt*, 2013 WL 5230061, at *4. Thus, a defendant can be liable under the TCPA for using a system that has such capacity "even if it does not make use of the automatic dialing capability." *Id*. However, a defendant "cannot be held liable if substantial modification or alteration of the system would be required to achieve that capability." *Id*.

1. **Plaintiff Has Failed to Establish that the Accused System Has the Capacity to Store or Produce Numbers Using a Random or Sequential Number Generator.**

Here, Plaintiff's summary judgment motion must be denied (and judgment entered in favor of Regions) because Plaintiff has utterly failed to establish that the Accused System has the present capacity to store or produce numbers using a random or sequential number generator. Indeed, Plaintiff's expert, Jeffrey Hansen, readily concedes that he specifically looked for such capacity when analyzing the Accused System but could not find any evidence that it existed. (Ex. 3, 44:19-45:1). Plaintiff also fails to address this requirement in its summary judgment motion. This failure alone mandates denial of Plaintiff's summary judgment motion.

2. **Plaintiff has Failed to Establish that the Accused System Has the Capacity to Dial Stored Numbers.**

The Court should also deny Plaintiff's summary judgment motion because Plaintiff has failed to come forward with evidence to establish that the Accused System has the present capacity to "dial" numbers stored in the Regions' database. In fact, the undisputed evidence shows just the opposite – that the Accused System does ***not*** have such capacity. Specifically, the

10

undisputed evidence shows that when a banking event, *e.g.*, an expenditure that causes a customer's balance to dip below a set threshold, triggers an alert, the alert is placed into a file and is retrieved by an aggregator who then delivers the alerts to the appropriate carriers for delivery to the bank customers' mobile phones ((Pltf. Ex. G (Ex. 2), p. 8, 2.1 ((section titled "SMS Messaging Architecture" states the "ClairMail appliance initiates a connection to the SMS aggregator to retrieve short messages from the queue and to deliver short messages to the wireless devices"); (Doc. 64-1, ¶ 11)). As Monitise's 30(b)(6) representative explained, once an alert is triggered, the alert "goes to the aggregator; the aggregator would then submit to the carrier; and the carrier would handle delivery to the enduser" (*see also* Pltf. Ex F, p. 61:25-62:10; 75:12-13 (the aggregator "mBlox connects to the carriers to send and receive SMS messages"); Ex. 3, 74:20-75:2 (Plaintiff's expert acknowledging that text messages go "through an aggregator to the carrier to [the mobile owner's] phone.").

Even under the faulty definition of ATDS that Plaintiff relies upon from the Northern District of Illinois, the Accused System must be able to dial numbers from a list in order to be an ATDS (Doc. 59, p. 8 (stating that the FCC has determined an ATDS to be any "equipment that ***automatically dials numbers*** from a stored list without human intervention . . . ." (emphasis added)). Yet at no point does Plaintiff cite to evidence showing that the Accused System "dials numbers" or has the capacity to do so. Instead, Plaintiff attempts to sidestep the "dialing" requirement by stating generally that Regions "sends" text messages (*see, e.g.*, *id.*, p. 10 (that "the System automatically sends a text alert" and ""the text alert *will be sent* without human intervention by taking a number from a database and *sending a text message*") (emphasis added). But sending texts and dialing numbers are not necessarily the same thing, and in this case they are actually quite different. As noted above, in this case Regions does "send" text messages, but

it does so not by dialing any numbers.  Instead, it places the texts into a queue to be retrieved by an aggregator, who then delivers the messages to the appropriate carrier for delivery to the mobile phone owner. *See* supra.  At no time does the Accused System itself dial any number in the Regions database, and Plaintiff has come forward with no evidence to show that it does or has the capacity to do so.  Because the ability to dial stored numbers is a required element for equipment to be an ATDS, Plaintiff's failure to set forth evidence establishing this element provides yet another reason that the Court should deny Plaintiff's summary judgment motion.

### C.  The Court Should Reject Plaintiff's Definition of ATDS.

Although  Plaintiff cites to the definition of ATDS that is set forth in the TCPA, 47 U.S.C. §227(a)(1), she nevertheless implies that she need only show that the Accused System automatically sent text messages without human intervention to establish that it is an ATDS.  As shown below, Plaintiff's position is both grammatically unsound and is based on a misinterpretation of the FCC's various rulings.

### 1.   Plaintiff's Definition is Grammatically Insupportable.

According to Plaintiff, to be an ATDS under the TCPA, equipment need only store telephone numbers to be called *or* produce telephone numbers to be called using a random or sequential number generator (Doc. 59, p. 7).  In other words, Plaintiff believes that the clause "using a random or sequential number generator" applies only to the words "produce telephone numbers" and ***not*** to the words "store telephone numbers."  Plaintiff's interpretation is grammatically unsound.  *See, e.g.*, *Satterfield v. Simon & Schuster*, No. C 06-2893 CW, 2007 WL 1839807, *4 (N.D. Cal. June 26, 2007) (rejecting as "ungrammatical" the position that the clause "using a random or sequential number generator" "modifies only the last antecedent 'produce telephone numbers to be called,' not 'to store.'").  Plaintiff's position ignores that there is a comma immediately before the clause "using a random or sequential number

generator."  Where, as here there is a comma prior to a qualifying clause, the clause should be interpreted to modify all *antecedents* and not just the last antecedent.  *Id*.; 2A Norman J. Singer, *Statutes and Statutory Construction* § 47:33 at 373 (6th ed. 2000) ("Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separate from the  antecedents by a comma.'"). The Courts should thus reject Plaintiff's position.

> ## 2.        Plaintiff Has Misinterpreted the FCC's Orders.

Plaintiff's position regarding the meaning of an ATDS is also based on a misinterpretation of the FCC's Orders discussing ATDS equipment.  According to Plaintiff, in an Order addressing whether predictive dialers constitute an ATDS, [t]he FCC has held that the ATDS includes a wide array of technologies including 'equipment that automatically dials numbers from a stored list without human intervention, even when the equipment lacks the capacity to store or produce numbers to be called, using a a random or sequential number generator" (Doc. 59 (*quoting Sterk v. Path*, No. 13 C 2330, 2014 Wl 24475 (May 30, 2014 N.D. Ill.)).  But in fact the FCC has held no such thing.  The quote cited in Plaintiff's brief is not from any FCC order, but is from *Sterk v. Path*, a Northern District of Illinois decision.  But even the court in that case later questioned whether it had misinterpreted the FCC's decisions when it granted the defendant's motion to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), stating that "[t]here is room to debate the meaning of the FCC decisions and what kind of number-generation capacity is required under the statute."[2] *Sterk v. Path, Inc*., No. 13 CV

---

[2] After the district court entered summary judgment that the defendant's system was an ATDS, the case was reassigned to a new judge who granted the request for an interlocutory appeal. *Sterk v. Path, Inc*., No. 13 CV 2330 (N.D. Ill. Aug. 8, 2014) (order).  Although the Seventh Circuit has since denied the petition for interlocutory appeal, the new judge has not issued any orders governing how the case will proceed.  *Sterk v. Path, Inc*., No. 13 CV 2330 (N.D. Ill. Mar. 28, 2013).

2330, slip op. at 3 (N.D. Ill. Aug. 8, 2014) (order).  Particularly relevant is that the court found the defendant's position – that the FCC orders require equipment to have the *capacity* to generate numbers, even if not used – to be "consistent with the FCC's 2012 decision." *Id*.

Looking at the actual language used in the FCC Orders, it becomes exceedingly evident that the *Sterk* decision granting summary judgment was based on a misinterpretation of the FCC's position.  Specifically, the FCC's orders themselves were clear that as long as equipment has the *capacity* to store or produce numbers using a random number generator, such equipment is an ATDS even if does not use that capacity but instead stores, produces, and dials numbers from a list:

> Under the TCPA, the term 'automatic telephone dialing system' or 'autodialer' is defined as 'equipment which has the *capacity* -- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.' Id. § 227(a)(1). The Commission has emphasized that this definition covers any equipment that ***has the specified capacity to generate numbers*** and dial them without human intervention ***regardless of whether the numbers called are randomly or sequentially generated or come from calling lists***.

27 FCC Rcd. 15391, l5391 n. 5 (2012) (emphasis added).   The FCC used the phrase "**<u>specified</u>** capacity to generate numbers," referring to the capacity to produce telephone numbers to be called "using a random number generator" as set forth in the TCPA and quoted in the preceding sentence.  Thus, as long as equipment has such specified capacity, it is still an ATDS even if it does not use that capacity and instead calls numbers "from calling lists."

Nowhere in any of the FCC's Orders, including the 2003 Report and Order on which Plaintiff also relies, does the FCC indicate an intent to replace the TCPA's definition of ATDS or to otherwise negate the requirement that an ATDS have the *capacity* to store or produce numbers using a random or sequential number generator.  The 2003 Order in particular overtly distinguishes between "capacity" as required by the statute, and actual use, which the statute

does not address.  *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 18 FCC Rcd. 14014, 14091-92 (2003) (2003 Order and Report) (noting that the statutory definition "provides that, in order to be considered an 'automatic telephone dialing system,' the equipment need only have the "***capacity*** to store or produce telephone numbers (emphasis added). . . .").  The FCC ultimately concluded that predictive dialers fall within the statutory definition of an ATDS because such predictive dialers have the capacity to store or produce numbers using a random or sequential number generator even though such capacity is rarely used.  Specifically, the Court found that the mere addition of software that allows predictive dialers to dial numbers from lists should not serve to legitimize dialers that would otherwise be prohibited under the TCPA, because without such software they would be randomly generating numbers instead of dialing them from lists:

> to exclude from these restrictions equipment that use predictive dialing software from the definition of "automated telephone dialing equipment" simply because it relies on a given set of numbers would lead to an unintended result. Calls to emergency numbers, health care facilities, and *wireless numbers would be permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists and software packages*. We believe the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented.

 *Id.* at 14091-92 (emphasis added).  When properly understood, therefore, the FCC's Orders are perfectly consistent with and do not alter the statutory definition of an ATDS, which addresses only the capacity of equipment as opposed to its actual use.

That said, Regions recognizes that some district courts have not viewed the FCC's Orders as consistent with the TCPA's definition of ATDS.  For instance, some courts have found that the inclusion of predictive dialers within the definition of an ATDS is a narrow ***exception*** to the requirement that equipment have the capacity to store or produce numbers using a random or

sequential number generator. *See, e.g.*, *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189 (W.D.Wash. 2014) (finding that to be an ATDS, equipment must **either** have the capacity to store or produce numbers using a random or sequential number generator **or** be a predictive dialer).[3]  Other Courts have found that the FCC's orders regarding predictive dialers actually contradict the words of the statute.  *See e.g.*,  *Johnson v. Yahoo!*, Nos. 14 CV 20228, l4 CV 753, 2014 U.S. Dist. LEXIS 171325 (E.D. Ill. Dec. 11, 2014) (finding that "the FCC's interpretation [of ATDS] conflicts with the statutory requirement that an ATDS have the capacity 'to store or produce telephone numbers to be called, using a random or sequential number generator'").

This Court, however, has agreed that equipment need only have the *capacity* to generate numbers even if it never makes use of such capacity.  Specifically, in *Hunt v. 21st Mortgage Corp.*, Civil Action No. 2:12-CV-2697-WMA, 2013 WL 5230061 (N.D. Ala. Sept. 17, 2013), this Court noted that the "statutory text plainly focuses on 'the capacity' of equipment when defining an 'automatic telephone dialing system . . . ." *Id.* at *3.  The Court noted the many cases in which telephone systems were determined to fall within the definition of an ATDS because they had the "required 'capacity' to meet the 'automatic telephone dialing system' definition *regardless of how they were actually used*."  Id. at *4 (emphasis added).  In view thereof, this Court held that:

> To meet the TCPA definition of an 'automatic telephone dialing system,' a system must have the *present capacity*, at the time the calls were being made, to store or produce and call numbers *from a number generator*. . . . [A] defendant can be liable under 227(b)(1(A) whenever it has such a system, *even if it does not make use of the automatic dialing capability* . . . .

---

[3] To the extent the Court adopts the opinions of such Courts, these opinions provide an alternate basis for denying Plaintiff's motion and entering summary judgment in favor of Regions, since Plaintiff's expert readily concedes that the Accused System is not a predictive dialer (Ex. 3, 42:8-14).

Id. (emphasis added).  *See also Satterfield v. Simon & Schuster,* No. C 06-2893 CW, 2007 WL 1839807, at *4 (N.D. Cal. June 26, 2007), rev'd on other grounds, 569 F.3d 946 (9th Cir. 2009) ("when evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator."). Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.

Because Plaintiff has come forward with no evidence to show that the Accused System has the capacity to store or produce numbers to be called, using a random or sequential number generator, Plaintiff's motion for summary judgment must be denied.

## IV.    CONCLUSION

For the foregoing reasons, Regions respectfully requests that the Court deny Plaintiff's partial motion for summary judgment.

Respectfully Submitted
Dated: March 2, 2015

By: /s/ *Robin L. McGrath*

Maibeth J. Porter (ASB-3915-O40M)
Joshua B. Baker (ASB-5105-S72B)
OF COUNSEL
Maynard, Cooper & Gale, P.C.
2400 Regions/Harbert Plaza
1901 6th Ave. North
Birmingham, Alabama 35203
Telephone:  1(205) 254-1000
Facsimile:   1(205) 254-1999

Robin L. McGrath, Ga. Bar No. 493115
(admitted *pro hac vice*)
Edward J. Benz, III, Ga. Bar No. 344010
(admitted *pro hac vice*)
Andrea J. Pearson, Ga. Bar No. 409604
(admitted *pro hac vice*)
PAUL HASTINGS LLP
1170 Peachtree Street, N.E.

17

Suite 100
Atlanta, GA  30309
Telephone:  1(404) 815-2400
Facsimile:   1(404) 815-2424

*Attorneys for Defendant*
*Regions Bank*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record via the CM/ECF electronic filing system or via U.S. Mail on this the 2nd day of March, 2015.

Michal S. Adkins (ASB-8639-I48A)
THE ADKINS FIRM, P.C.
The Kress Building
301 19th Street North, Suite 581
Birmingham, Alabama 35203
Telephone: 205-458-1202
Facsimile: 205-208-9632
Email: MicahAdkins@ItsYourCreditReport.com
*Attorneys for Plaintiff*

William Peerce Howard
Morgan & Morgan, Tampa P.A.
One Tampa City Center
201 N. Franklin St., 13th Floor
Tampa, Florida 33602
Telephone: 1(813) 223-5505
Facsimile:  1(813) 223-5402
*Attorney for Plaintiff*

Cathleen M. Combs
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
Telephone: 1(312) 739-4200
Facsimile: 1(312) 419-0379
*Attorney for Plaintiff*

 /s *Robin L. McGrath*

Robin L. McGrath