UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SUEANN SWANEY, on behalf of
plaintiff and the class defined below,

    Plaintiff,

CASE NO.: 2:13-cv-00544-JHE

v.

REGIONS BANK,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT REGIONS BANK'S OBJECTIONS TO REPORT AND RECOMMENDATION (DOC. 118)**

Plaintiff, Sueann Swaney, by and through her undersigned counsel, responds to Defendant Regions Bank's Objections to Report and Recommendation (Doc. 118). On the basis of the arguments and case law set forth below, the objections should be overruled.

**I.    INTRODUCTION**

Regions Bank ("Regions") challenges the Report and Recommendations of the Magistrate Judge ("R&R," Doc. 118), specifically objecting to the Magistrate Judge's recommendation that partial summary judgment be entered in favor of

1

Plaintiff and against Defendant on the grounds that Regions text-messaging system qualifies under the Telephone Consumer Protection Act ("TCPA") as an Automatic Telephone Dialing System ("ATDS" or "autodialer"). For the reasons that follow below, the Plaintiff respectfully asserts that the Magistrate Judge's R&R should be adopted and summary judgment should be granted in favor of Plaintiff on this issue, and denied for Defendant.

## II.    ARGUMENT AND AUTHORITY

Rule 72 of the Federal Rules of Civil Procedure provides that upon timely objection to a magistrate judge's report and recommendation, the district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Plaintiff initiated this action against Regions because they repeatedly sent text messages to her cellular telephone without her express consent[1] and even after she repeatedly asked Regions to stop. Regions, surprisingly, continues to argues their system is not an autodialer. While Regions' arguments are flawed in a number of ways, perhaps the most significant fault is Regions' failure to acknowledge the FCC's July 10, 2015 ruling concerning the TCPA, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 2015 WL 4387780 (2015) ("The Order"), which,

---

[1] Regions admits they never had the Plaintiff's express consent to send a text message to her cell phone.

2

although likely not mentioned in the R&R because of its recent release,[2] offers new and conclusively-binding[3] authority that supports the R&R's summary judgment recommendations. Recognizing the dilemma posed by The Order, Regions endeavors to limit its mention of The Order and convince the Court through isolated "sound bites" that The Order favors its position. However, the simple fact of the matter is that no reasonable person who actually read The Order would agree with Regions, as its purpose-built autodialer equipment, which sent **over 19 million** text messages in October 2014 (Joint Status Report, Doc. 43, p.4), quite plainly could not be described as anything other than an ATDS.

As a threshold matter, The Order is virtually tailor-made to refute many of the past and present defenses raised by Regions. In particular, The Order specifically notes that the purpose of its issuance was to "[s]trengthen the core protections of the TCPA by confirming that:" 1) "Callers cannot avoid obtaining consumer consent for a robocall simply because they are not "currently" or "presently" dialing random or sequential phone numbers," 2) "Callers are liable for robocalls to reassigned wireless numbers when the current subscriber to or customary user of the number has not consented . . .," and 3) "Text messages are

---

[2] The 2015 FCC Order was issued near the end of the business day on Friday, July 10, 2015. The R&R was released on Monday, July 13, 2015. It is evident that the R&R, which is a substantial document, was not likely authored in a single business day.

[3] The Hobbs Act, 47 U.S.C. § 402, deprives district courts of jurisdiction to review the merit of FCC regulations relating to the TCPA. See *Mais v. Gulf Coast Collection Bureau*, Inc., 786 F.3d 1110, 1119 (11th Cir. 2014). Accordingly, this Court must follow the directives of the FCC as they relate to the TCPA.

"calls" subject to the TCPA, as previously determined by the [FCC]." 2015 FCC Order, 2015 WL 4387780, at ¶2. Additionally, The Order describes in detail the massive dissatisfaction expressed by consumers regarding robocalls, with the complaints being received by U.S. government agencies regarding these calls increasing progressively and exceeding 200,000 per month at some points. Id. at ¶5. As is explained by The Order, as a result of the proliferation of autodialer equipment such as is utilized by Regions, "[c]alling and texting consumers *en masse* has never been easier or less expensive." Id. at ¶7. The need to reign in the abuses involving this autodialing equipment is thus manifest.

Turning to the merits of Regions' arguments, the disconnect[4] between the positions adopted by Regions and the holdings in The Order is perhaps best illustrated by debunking Regions' contention that the Magistrate Judge erred by failing to follow a decision of this district, *Hunt v. 21st Century Mortgage Corp.*, No. 1:12-cv-2697-WMA, 2013 WL 5230061 (N.D. Ala. Sept. 17, 2013) ("*Hunt*"). In *Hunt*, the operative holding was that, "to meet the TCPA definition of an 'automatic telephone dialing system,' a system must have a **present** capacity, at the time the calls were being made, to store or produce and call numbers from a number generator." Id. at *4 (bold emphasis present in original). However, The Order directly contravenes this ruling, stating "[w]e agree with commenters who

---

[4] Unlike the Magistrate Judge, Regions had an ample opportunity to review the 2015 FCC Order before submitting its objections.

argue that the TCPA's use of 'capacity' does not exempt equipment that lacks the 'present ability' to dial randomly or sequentially." 2015 FCC Order, 2015 WL 4387780, at ¶15. Indeed, The Order further clarifies that "a piece of equipment can possess the requisite 'capacity' to satisfy the statutory definition of 'autodialer' even if, for example, it requires the addition of software to actually perform the functions described in the definition." *Id.* at ¶18.

Regions also takes the unsupported position that the Magistrate Judge failed to give adequate consideration to Regions' position that an ATDS "must have the capacity to store or produce numbers using a random or sequential number generator." (Doc. 118, p. 2). However, when viewed in the context of The Order, it is clear that Regions' arguments are merely a matter of semantics. Specifically, while it might be debated as to whether the FCC has completely eliminated[5] the significance of the "the random or sequential number" language in the statute or has instead simply watered it down to practical near-meaninglessness due to the obvious programmability of modern computer-based autodialers, the fact of the matter is that it is evident that this debate will have **no impact** on the present case, as even Regions has admitted that "it is *theoretically* possible for [its] system to be

---

[5] There is in fact ample support for this position. *See, e.g., Glauser v. GroupMe, Inc.*, 2015 WL 475111 (N.D. Cal. 2015) ("*GroupMe*") (noting that "the FCC has made clear that the defining characteristic of an 'autodialer' is not the ability to make calls randomly or sequentially—instead, the 'basic function' of an autodialer is 'the capacity to dial numbers without human intervention,'" including through the use of lists); *Walker v. Transworld Systems, Inc.*, 2015 WL 631390 (M.D. Fla. 2015) (holding that "a dialer need not have a random or sequential number generator to qualify as an ATDS" and that "the TCPA was intended to protect against autodialed calls, including calls from a list of numbers."); *Morse v. Allied Interstate, LLC, 2014 WL 700403*, *3 (M.D. Pa. 2014) (suggesting that the FCC has created a "human intervention test" to determine whether equipment is an ATDS).

modified to generate and store random or sequential numbers." (Doc. 118, p. 8). The question thus becomes whether this supposedly "theoretical" possibility is adequate to support the conclusion that Regions' system is an ATDS.

When viewed in the proper context, the answer to that question is a resounding "yes." Here, Regions uses the word "theoretical" in a misguided attempt to take advantage of the following language in the 2015 FCC Order:

> We do, however, acknowledge that there are outer limits to the capacity of equipment to be an autodialer. As is demonstrated by these precedents, the outer contours of the definition of "autodialer" do not extend to every piece of malleable and modifiable dialing equipment that conceivably could be considered to have some capacity, however small, to store and dial telephone numbers— otherwise, a handset with the mere addition of a speed dial button would be an autodialer. Further, although the Commission has found that a piece of equipment can possess the requisite "capacity" to satisfy the statutory definition of "autodialer" even if, for example, it requires the addition of software to actually perform the functions described in the definition, there must be more than a theoretical potential that the equipment could be modified to satisfy the "autodialer" definition. Thus, for example, it might be theoretically possible to modify a rotary-dial phone to such an extreme that it would satisfy the definition of "autodialer," but such a possibility is too attenuated for us to find that a rotary-dial phone has the requisite "capacity" and therefore is an autodialer.

2015 FCC Order, 2015 WL 4387780, at ¶15. As a threshold matter, as stated above, the "addition of software" (i.e. reprogramming) is **specifically contemplated** by the FCC ruling in determining the capacity to store or produce numbers using a random or sequential number generator, thus eliminating any

6

claim of "attenuation." Even Regions does not deny that its sophisticated, computerized system is ultimately capable of accepting such programming. More to the point, however, is the absurdity of Regions' effort to hide behind the above paragraphs when its system is so dissimilar to the given examples of overreach, a handheld phone with speed dial and a rotary telephone. To put it colloquially, Regions' system, which it admits sent out **over 19 million texts in one month**, without any human intervention,[6] certainly ain't grandma's rotary telephone.

Notably, other language in The Order supports the conclusions in the R&R and further clarifies that Regions equipment qualifies as an ATDS. For example, the FCC stated quite clearly that the "basic functions" of an ATDS "are to 'dial numbers without human intervention' and to 'dial thousands of numbers in a short period of time,'" 2015 FCC Order, 2015 WL 4387780, at ¶20, tests that Regions' system obviously meets. The FCC also noted that "a present use or present capacity test could render the TCPA's protections largely meaningless by ensuring that little or no modern dialing equipment would fit the statutory definition of an autodialer." 2015 FCC Order, 2015 WL 4387780, at ¶20. In light of the fact that the FCC held that "random or sequential" number dialing was an antiquated and disused method of autodialing as early as 2003, this concern is very evidently

---

[6] At a rate of "only" 19 million text messages each month throughout the class period of 4 years, the number of text messages sent by Region's system would be **912,000,000 (Nine Hundred Twelve Million)**. This is precisely the type of autodialer Congress and the FCC are trying to regulate and protect consumers from.

applicable to Regions' very modern system. 2003 FCC Report and Order, 18 FCC Rcd. at 14092 (noting that "[i]n the past, telemarketers may have used dialing equipment to create and dial 10-digit telephone numbers arbitrarily" but emphasizing that "the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective.").

As a final matter, Regions' contention that its autodialer could not function as a "text alert system" if configured to generate random or sequential numbers is similarly lacking in merit, in this instance due to irrelevancy. To the extent any "capacity" requirement exists under FCC rulings, it applies to the technical capacity "equipment" used to send texts, not to the preservation of the purpose of those texts. *See* 47 U.S.C. § 227 (defining "automatic telephone dialing system" as "equipment which has the capacity--(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers"). Additionally, given the fact that the FCC has concluded that it is antiquated practice, random or sequential dialing would almost necessarily impair the function of **any** modern autodialer.

## CONCLUSION

For the reasons stated above, Region's objection to the Magistrate Judge's report and recommendation that summary judgment be granted to the Plaintiff should be rejected.

                                        Respectfully submitted,

                                        s/John Yanchunis
                                        John Yanchunis, Esquire
                                        William Peerce Howard
                                        MORGAN & MORGAN, P.A.
                                        One Tampa City Center
                                        201 N. Franklin Street, 7th Floor
                                        Tampa, FL 33602
                                        (813) 221-6590 Telephone
                                        (813) 222-4747 Facsimile
                                        jyanchunis@forthepeople.com
                                        whoward@forthepeople.com

Micah S. Adkins (ASB-8639-I48A)
THE ADKINS FIRM, P.C.
The Kress Building
301 19th Street North, Suite 581
Birmingham, AL 35203
(205) 458-1202 Telephone
(205) 208-9632 Facsimile
MicahAdkins@itsyourcreditreport.com

Cathleen M. Combs, Esquire
EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603
(312) 739-4200 Telephone
(312) 419-0379 Facsimile
ccombs@edcombs.com

# CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2015, I filed the foregoing document with the CM/ECF system which will electronically notify the following counsel of record of same:

s/William P. Howard<br>William Peerce Howard, Esquire

Maibeth Porter, Esquire
Joshua B. Baker, Esquire
MAYNARD, COOPER & GALE, P.C.
2400 Regions/Harbert Plaza
1901 6th Ave. North
Birmingham, Alabama 35203

Robin L. McGrath, Esquire
Edward J. Benz, III, Esquire
Howard Privette, Esquire
Andrea J. Pearson, Esquire
PAUL HASTINGS LLP
1170 Peachtree Street, N.E., Suite 100
Atlanta, GA 30309