UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SUEANNE SWANEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 2:13-cv-00544-JHE |
| | ) | |
| REGIONS BANK, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MAGISTRATE JUDGE'S SUPPLEMENTAL REPORT AND RECOMMENDATION**

On November 18, 2015, United States District Judge David R. Proctor entered a Memorandum Opinion and Order, recognizing that the undersigned's Report and Recommendation on the parties' cross motions for summary judgment, (Docs. 59 & 62), did not address the FCC's recently released July 10, 2015 ruling, *In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 2015 WL 4387780 (2015) ("2015 FCC Order'),[1] and referred this matter to the undersigned for further proceedings including consideration of the potential functionalities of Regions' system and how those affect the issue of whether its system is an ATDS.[2] (Doc. 121).

**I. Analysis**

As noted in the memorandum opinion and order, the 2015 FCC Order clarified the issues addressed in the Report and Recommendation, specifically that the TCPA defines an ATDS as

---

[1] The FCC's 2015 Order was issued near the end of the business day on Friday, July 10, 2015. The R&R was entered on Monday, July 13, 2015.

[2] In the July 13, 2015 Report and Recommendation, the undersigned denied Swaney's motion to strike the Wong declaration, (doc. 87), and granted Regions' motion to strike portions of Swaney's Rule 26(a)(2) report of Jeffery A. Hansen, (doc. 68). (Doc. 117). The parties filed no objects to those rulings, and the Clerk is **DIRECTED** to **TERM** documents 68 and 87.

"equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 2015 FCC Order at ¶12. The 2015 Order further emphasized that "capacity" is not limited to present ability or current capacity; rather the "capacity" of an auto dialer is not limited to its current configuration, but also includes its potential functionalities. *Id.* at ¶16. The 2015 Order explains that the purpose of its issuance was to "[s]trengthen the core protections of the TCPA by confirming that: '[1] Callers cannot avoid obtaining consumer consent for a robocall simply because they are not 'currently' or 'presently' dialing random or sequential phone numbers,' [2] 'Callers are liable for robocalls to reassigned wireless numbers when the current subscriber to or customary user of the number has not consented . . .,' and [3] 'Text messages are 'calls' subject to the TCPA, as previously determined by the [FCC].'" *Id.* at ¶2. The 2015 Order further states "the TCPA's use of 'capacity'' does not exempt equipment that lacks the 'present ability' to dial randomly or sequentially'" and that "a piece of equipment can possess the requisite 'capacity' to satisfy the statutory definition of 'autodialer' even if, for example, it requires the addition of software to actually perform the functions described in the definition." *Id.* at a5 ¶¶15, 18.

Regions argues that Swaney has not come forward with any evidence to establish that its system has the requisite "capacity" to store or produce and dial random or sequential numbers, but admits that "it is *theoretically* possible for [its] system to be modified to generate and store random or sequential numbers. (*see* doc. 118 at 7-8) (emphasis in original). Based on the evidence presented, this possibility is much more than "theoretical."

It appears Regions' use of the word "theoretical" is an attempt to align itself with an example the FCC used in its 2015 Order when discussing potential functionality and capacity, which states as follows:

> We do, however, acknowledge that there are outer limits to the capacity of equipment to be an autodialer. As is demonstrated by these precedents, the outer contours of the definition of "autodialer" do not extend to every piece of malleable and modifiable dialing equipment that conceivably could be considered to have some capacity, however small, to store and dial telephone numbers— otherwise, a handset with the mere addition of a speed dial button would be an autodialer.https://a.next.westlaw.com/Document/I3e6a77ee2d7011e5b86bd602cb8781fa/View/FullText.html?transitionType=UniqueDocItem&contextData=(sc.Search)&userEnteredCitation=2015+WL+4387780 - co_tablefootnoteblock_68 Further, although the Commission has found that a piece of equipment can possess the requisite "capacity" to satisfy the statutory definition of "autodialer" even if, for example, it requires the addition of software to actually perform the functions described in the definition, there must be more than a *theoretical* potential that the equipment could be modified to satisfy the "autodialer" definition. Thus, for example, it might be theoretically possible to modify a rotary-dial phone to such an extreme that it would satisfy the definition of "autodialer," but such a possibility is too attenuated for us to find that a rotary-dial phone has the requisite "capacity" and therefore is an autodialer.

2015 FCC Order at ¶18 (internal footnotes omitted) (emphasis added). The potential to modify Regions' system "to store or produce telephone numbers to be called, using a random or sequential number generator" and "to dial such numbers" is much more than "theoretical." Regions' system is a sophisticated, computerized system that has sent out over 19 million texts in one month without any human intervention. (*See* doc. 43 at 3). To compare its capabilities to a rotary-dial telephone or a handset with a speed-dial button, as used in the FCC's description, is illogical. The FCC's 2015 Order specifically contemplates the "addition of software" – i.e., reprogramming – in determining the capacity. (*Id.*).

The undisputed evidence, (*see* doc. 117), establishes Regions' system, as presently configured, upon the triggering of a batch event, will deliver a watch directory a "batch event file." (doc. 64, Ex. D at 19; doc. 64, Ex. E at 54:3-7). Upon completion of the batch file, the system sends a "signal file." (Doc. 64, Ex. D at 19). When Montise finds the signal file, the alert system receives and begins processing the batch file. (*Id.*). To process the batch file, the system first ensures that the file has not already been processed. (*Id.*; doc. 64, Ex. E at 54:12-

19). If the file has not been previously processed, the system determines if any of the accounts in the batch file are registered to receive account balance alerts and whether the balance indicated in the batch file meets the criteria (e.g., the customer's set balance threshold) for triggering an alert. (Doc. 64, Ex. D at 19; doc. 64, Ex. E at 55:1-11). If the alert criteria are met, a message template for the alert type is applied. (Doc. 64, Ex. D at 19). Thereafter, the Monitise server places the alert into a file which is then retrieved by an "aggregator" (mBlox) who then delivers the alert to the affected mobile device carrier. (Doc. 64, Ex. E at 56:6-10, 62:7-10, 75:9-13). It is the mobile device carrier, e.g., AT&T, who delivers the alert to the bank customer's registered mobile device. (Doc. 64, Ex. E at 56:6-10, doc. 64-5 at 8; doc. 64-1 at ¶ 11). The same process described above is also followed for all types of batch alerts, only the names of the batch event file and signal file are different, as are the triggering events. (Doc. 64, Ex. D at 20-21).

Kevin Wong, Director of Web and Mobile Development for Monitise, testified regarding the product it supplied Regions. (Doc. 66-7). Wong explains Monitise certifies its product on a Unix operating system, so Regions would be using hardware that runs a Unix, or similar, system. (*Id.* (16:17-23)). He further testified that various parts of the software it provided Regions can be configured to be on or off, performing different functions. (*Id.* (19:24-20:8)).

The undisputed evidence establishes Regions' system is a computerized system with the capacity required by the 2015 FCC Order and is the type of autodialer Congress and the FCC are trying to regulate through the TCPA. Although, when evaluating Swaney's motion for summary judgment, the undersigned must view the evidence in a light most favorable to Regions, to hold otherwise would require the suspension of reason. The portions of the original report and recommendation inconsistent with this supplemental report and recommendation are hereby superseded.

## II. Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** Swaney's motion for partial summary judgment, (doc. 59), be **GRANTED**, and Regions' motion for summary judgment, (doc. 62), be **DENIED**.

Should this recommendation be accepted, the undersigned **FURTHER RECOMMENDS** this action be referred back to him, at which time a scheduling conference will be set.

## III. Notice of Right to Object

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2), Fed. R. Civ. P., any party may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal, except for plain error. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

DONE this 14th day of April 2016.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

.