FILED
2018 Apr-20  AM 11:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SUEANN SWANEY, on behalf of plaintiff
and the class defined below,

    Plaintiff,

-vs-                                        CASE NO.:  2:13-CV-00544-JHE

REGIONS BANK,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE TO REGIONS BANK'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Regions' brief is perhaps most notable for its startlingly incomplete discussion of the important matters at bar. Regions has chosen to dedicate **less than a full page** to an analysis of the *ACA International* decision, which suggests that Regions knows that a more comprehensive analysis would not support its position. Moreover, and more importantly, Regions acknowledges that the effect of the *ACA International* decision was to set aside a "portion of the FCC's 2015 decision" (Doc. #147, p. 6), but tellingly fails to even mention that the Plaintiff was also found to be entitled to summary judgment in a prior Report and Recommendation under the standards that preexisted the 2015 FCC Order (Doc. #117). Thus, as Regions is well aware, but has failed to address in its arguments, the Plaintiff's entitlement to summary judgment has never relied upon the validity of the 2015 FCC Order.

As was explained in the Plaintiff's own memorandum on the effects of the *ACA International* decision on this case (Doc. 148), the Plaintiff's position has been greatly strengthened, not weakened, by the *ACA International* decision. The overturning of the ATDS portion of the 2015 FCC Order had the effect of restoring as the operative law the 2003 FCC Order that was closely examined by Judge England in his original Report and Recommendation (Doc. 117). *See Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 64 (D.D.C. 2004) ("When a court vacates an agency's rules, the vacatur restores the status quo before the invalid rule took effect[.]"). Importantly, the *ACA International* opinion agreed with Judge England's conclusion in that report that the 2003 FCC Order "determined that predictive dialers are within the definition of an ATDS, even though they may not 'store or produce telephone numbers to be called, using a random or sequential number generator,'" (Doc. #117, p. 9), stating that the 2003 FCC Order was "clear" that "while some predictive dialers cannot be programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of an ATDS." *ACA Int'l v. Fed. Commc'ns*

*Comm'n,* 885 F.3d 687, 702 (D.C. Cir. 2018).  This was nothing less than a wholesale rejection of Regions contention that the 2003 FCC Order stood for the proposition that, in order "to be an ATDS, equipment must have the capacity to store or produce numbers using a random or sequential number generator, even if that capacity is never used." (Doc. #118, pp. 4-5). Consequently, the Plaintiff is entitled to summary judgment for the reasons stated in Judge England's initial report (Doc. #117) even moreso now than when that report was first issued, as Regions principal argument against the summary judgment recommended in that report has been thoroughly discredited.

It should also be noted that, in an effort to benefit from "smartphone" concerns expressed by the D.C. Circuit that clearly have no relevance to Regions' highly industrial 19,000,000+ text per month device, Regions mischaracterizes the very limited portions of the *ACA International* opinion it actually does quote.  For example, Regions highlights the D.C. Circuit's use of the term "eye-popping," but fails to mention that it is found in a sentence stating "[i]f every smartphone qualifies as an ATDS, the statute's restrictions on autodialer calls assume an eye-popping sweep." *ACA Int'l*, 885 F.3d at 697.  Similarly, Regions points to the use of the phrase "utterly unreasonable in the breadth of its regulatory [in]clusion," but fails to quote the next sentence, which states that "[n]othing in the TCPA countenances concluding that Congress could have contemplated the applicability of the statute's restrictions to the most commonplace phone device used every day by the overwhelming majority of Americans," i.e. smartphones.  *Id.* at 699.  As should be apparent, the D.C. Circuit did not intend to confer any benefit to industrial users of specialized telephonic equipment through its discussion of the ubiquity of smartphone use amongst today's consumers. Rather, the D.C. Circuit suggested a neat and tidy solution to this "smartphone" problem, namely a regulatory exemption for smartphones that would "prevent[] a result under which every uninvited

call or message from a standard smartphone would violate the statute." *Id.* Regions quite obviously would not benefit from any such exemption.

It is also anticipated that, for lack of any better argument and despite having not made this claim in its first brief (Doc. #147), Regions may attempt in its response brief to suggest that the 2003 FCC Order was overturned by *ACA International* along with the 2015 FCC Order. This, however, is easily debunked by even a causal review of the *ACA International* opinion's two principal reasons for rejecting the 2015 FCC Order. The first such reason, overreach of the ATDS definition to the common consumer device known as a smartphone, is not a criticism the 2003 FCC Order is vulnerable to. Unlike the situation in 2015 through the present, where smartphones dominate the consumer communications market, smartphones were largely nonexistent in 2003, as the dominant players in the market, the iPhone and Android-branded phones, were not released in their first iterations until June of 2007 and October of 2008, respectively. Not only was the 2003 FCC Order reasonable when promulgated because such devices were not commonplace, the D.C. Circuit's suggested solution for the "smartphone" problem, namely promulgation of a regulatory exemption for smartphones, is entirely consistent with the continued validity of the 2003 FCC Order. There is thus no reason to believe that the D.C. Circuit found that the 2003 FCC Order met the extremely high "arbitrary and capricious" standard that would be required for the 2003 Order to be overturned. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984) (holding that "legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.").

The D.C. Circuit's second principal reason for invalidating portions of the 2015 FCC Order is even more supportive of the continued validity of the 2003 FCC Order. Specifically, the D.C. Circuit found it inappropriate that the 2015 FCC Order "appear[ed] to be of two minds" by

"espous[ing] [two] competing interpretations in the same order." *ACA Int'l*, 885 F.3d at 701-02. However, in its discussion of this issue, the D.C. Circuit held that the 2003 FCC Order was "clear." *Id.* at 702. Not only that, the D.C. Circuit suggested that the result obtained by the 2003 FCC Order was likely within the discretion of the FCC's authority. *Id.*

It is also noteworthy that *ACA International* is rife with distinctly singular references to the overturning of the 2015 FCC Order. For example, the D.C. Circuit was careful to specify that "[t]he Commission's **most recent effort** falls short of reasoned decision-making in "offer[ing] no meaningful guidance" to affected parties in material respects on whether their equipment is subject to the statute's autodialer restrictions." *ACA Int'l*, 885 F.3d at 701 (emphasis added). This obviously refers to the 2015 FCC Order and only the 2015 FCC Order. Likewise, in the concluding paragraph on the ATDS issue, the ACA International opinion uses the singular term "ruling" and the singular possessive term "order's," both quite obviously refer to the one and only order under review in the *ACA International* case, the 2015 FCC Order. *Id.* at 703. There is thus no basis for a conclusion that any order other than the 2015 FCC order was overturned.

As a final note and as an alternative ground for finding for the Plaintiff, Regions is simply wrong in contending that "there is no dispute that, as presently designed, the accused system does not have the ability to store or produce numbers to be called using a random or sequential number generator and to dial those numbers." (Doc. 147, p. 5). Throughout this case, Regions has relied on an erroneous reading of the statute, namely that the TCPA requires equipment to use a "random or sequential number generator" in order to qualify as an ATDS. But the TCPA defines an ATDS as equipment that has the capacity--(A) to store **or** produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. 47 U.S.C. § 226(a)(1)(A) (emphasis added). The definition is in the disjunctive; a telephone system is an ATDS if it has the

capacity to store **or** produce telephone numbers to be called using a random or sequential number generator. To give meaning to every word in the statute, the phrase "using a random or sequential number generator" must modify "produces numbers" because it makes no sense for a device to "store" numbers using a random or sequential number generator.  Further, if a device already has the numbers stored, there would be no need to produce or generate the numbers.

A reading of the statute that treats "storage" of numbers separately from "production of numbers using a random or sequential dialer" is consistent with long established rules of statutory construction.  The "last antecedent rule" says that a limiting clause or phrase "should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). Applying this rule to § 226(a)(1)(A), the phrase "using a random or sequential number generator" modifies the word "produce" rather than the word "store."  Such a reading also is consistent with the "rule of superfluity" because it gives meaning to every word in the statute whereas Regions' interpretation improperly reads the word "store" right out of the statute. *Massle v. U.S. Dept. of Housing & Urban Dev.*, 620 F.3d 340, 352 (3rd Cir. 2010) (prohibiting a reading of a statute such that any word or phrase is rendered superfluous).

In conclusion, Regions' "accused system" is precisely the type of system that Congress, and the FCC are trying to regulate with the TCPA, and to find otherwise would require a suspension of reason.  Summary judgment should therefore be granted to the Plaintiff as recommended by Judge England in his initial report using pre-2015 FCC Order standards (Doc. #117).

Respectfully submitted,

*/s/William Peerce Howard* (admitted *pro hac vice)*
William "Billy" Peerce Howard, Esquire
Florida Bar No.: 010330
THE CONSUMER PROTECTION FIRM
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Billy@TheConsumerProtectionFirm.com
*Attorney for Plaintiff*

John Yanchunis (admitted *pro hac vice*)
MORGAN & MORGAN TAMPA, P.A.
One Tampa City Center
201 N. Franklin St., 13th Floor
Tampa, Florida 33602
Telephone:     813-221-6573
Facsimile:     813-222-4719
jyanchunis@forthepeople.com
*Counsel for Plaintiff*

Micah S. Adkins (ASB-8639-I48A)
THE ADKINS FIRM, P.C.
The Kress Building
301 19th Street North, Suite 581
Birmingham, Alabama 35203
205-458-1202 Direct
205-208-9632 Fax
E-Mail: MicahAdkins@ItsYourCreditReport.com

Cathleen M. Combs (admitted *pro hac vice*)
EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
20 S. Clark St., Suite 1500
Chicago, IL 60603
Telephone:     312-739-4200
Facsimile:     312-419-0379
E-mail: ccombs@edcombs.com

## CERTIFICATE OF SERVICE

      I hereby certify that on April 20, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system to all parties of record.

                Respectfully submitted,

                */s/William Peerce Howard* *(admitted pro hac vice)*
                William "Billy" Peerce Howard, Esquire
                Florida Bar No.: 010330
                THE CONSUMER PROTECTION FIRM
                4030 Henderson Boulevard
                Tampa, FL 33629
                Telephone: (813) 500-1500
                Facsimile: (813) 435-2369
                Billy@TheConsumerProtectionFirm.com
                *Attorney for Plaintiff*