UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SUEANN SWANEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 2:13-cv-00544-JHE ) |
| REGIONS BANK, | ) ORAL ARGUMENT REQUESTED ) |
| Defendant. | ) ) |

**REGIONS BANK'S RESPONSE TO PLAINTIFF'S
MEMORANDUM OF LAW ON THE EFFECT OF THE *ACA* DECISION
ON DEFENDANT REGIONS BANK'S OBJECTIONS TO MAGISTRATE JUDGE'S
<u>SUPPLEMENTAL REPORT AND RECOMMENDATION [DOC. 135]</u>**

Plaintiff's thesis that the D.C. Circuit's decision in *ACA International v. Fed. Communications Commission*, No. 15-1211, 2018 WL 1352922 (D.C. Cir. Mar. 16, 2018), actually *strengthens* its motion for summary judgment is wholly without merit. Plaintiff appears to be under the misguided impression that when the DC Circuit set aside portions of the FCC's 2015 Order, the FCC's earlier *2003* Order (on which the Magistrate Judge originally relied to first recommend summary judgment in Plaintiff's favor) "returned to being the operative law" (Dkt. 128, p. 4). Plaintiff is mistaken. In setting aside portions of the 2015 Order, the D.C. Circuit was exceedingly clear that it was also setting aside those portions of the FCC's 2003 Order on which the Magistrate Judge relied in his first recommendation. As detailed below, there is simply no way to reconcile the *ACA* decision with a grant of summary judgment in Plaintiff's favor. To the contrary, the only reasonable reading of that decision in light of the evidence of record is that the Accused System does not qualify as an ATDS and that Regions is therefore entitled to judgment as a matter of law.

## I.     ARGUMENT

### A.     There is No Evidence of the Requisite "Capacity" in this Case.

Plaintiff does not and cannot deny that it lacks evidence to show that the Accused System uses randomly or sequentially generated numbers (regardless of where those numbers may be generated) or has the capacity to dial such numbers. Instead, Plaintiff has chosen to double down on its original, untenable position that the TCPA does not require such use – despite statutory language explicitly stating that it does – arguing that the *ACA* decision compels this conclusion. Far from supporting Plaintiff's position, however, *ACA* unambiguously dispels any notion that equipment can qualify as an ATDS absent the capacity to use a "random or sequential number generator."

B.     **Plaintiff Thoroughly Misconstrues The *ACA* Decision.**

In stark contrast to Plaintiff's rose-colored, Plaintiff-friendly portrayal of the *ACA* decision, that decision is in fact a blistering critique of the FCC's approach to the autodialer provisions of the TCPA, and in particular, to those aspects of the FCC's 2015 Order which sought "to clarify which devices for making calls qualify as an ATDS." *ACA*, 2018 WL1352922, at *3. Indeed, it is only by citing passages out of context and ignoring key aspects of the Court's opinion that Plaintiff has been able to spin the *ACA* decision in its favor. An objective reading of the case, however, underscores why the decision compels summary judgment in Regions' favor.

In addressing "which sorts of calling equipment qualify as an ATDS," the *ACA* Court separated its analysis into two separate and distinct questions: (i) "when does a device have the 'capacity' to perform the two enumerated functions" and (ii) "what precisely are those functions" equipment must have the capacity to perform. *Id.* at *4. As explained in Regions' supplemental brief (Dkt. 147), the Court addressed the first question by setting aside as "arbitrary and capricious" the FCC's interpretation of "capacity" to include "features that can be added . . . through software changes or updates"[1] (*id.*, p. 1). In so doing, the Court thoroughly undermined Plaintiff's TCPA claims against Regions, for all of the reasons discussed in Regions' brief (Dkt. 147).

But the Court did not end its analysis there. Rather, it then turned to the second question to address the *functions* that must be the subject of the equipment's capacity. It is this second

---

[1] Plaintiff's suggestion that the *ACA* decision does not apply to Regions because the ruling was principally concerned with smartphones is off-base (Dkt. 148, p. 2). In setting aside the FCC's 2015 interpretation of "capacity," the Court noted that even if the FCC did not intend for smartphones to be within its interpretation, the ruling would still be arbitrary and capricious because there is no satisfactory explanation as to why smartphones, which could become an ATDS by adding software, are not included in the definition, while other equipment, which could also become an ATDS adding software, is. *ACA*, 2018 WL 1352922, at *9.

question that Plaintiff now contends is answered by the FCC's 2003 Order, and in particular, by "the 2003 Order's 'clear' pronouncement that" equipment can be an ATDS "even though [it] may not 'store or produce telephone numbers to be called, using a random or sequential number generator'" (Dkt. 148, p. 4).  The Court, however, explicitly found that the 2003 Order did *not* provide the answer to this question and thus was not the operative law on the issue.

Indeed, like Plaintiff now argues here, the FCC argued in *ACA* that the determination of what "functions a device must be able to perform" to be an ATDS was something conclusively "resolved in prior agency orders – specifically, declaratory rulings in 2003 and 2008 . . . ." *ACA*, 2018 WL 1352922, at *10.  The Court, however, disagreed, explaining that while the 2015 Order "purports to reaffirm the prior orders, that does not shield the agency's pertinent pronouncements from review," including its earlier pronouncements regarding the functions of an ATDS.  *Id.*  The Court then concluded that far from containing any "'clear' pronouncement" regarding the requisite functions of an ATDS, as Plaintiff now contends, the FCC's 2003 and 2008 Orders "left *significant uncertainty* about the precise functions an autodialer must have the capacity to perform." *Id.* (emphasis added).

This uncertainty was due in large part to the statutory phrase "using a random or sequential number generator."  *Id.*  While the phrase indisputably requires the *use* of randomly or sequentially generated numbers, the Court acknowledged the existence of "substantial questions" as to what this phrase requires with respect to the *source* of those randomly/sequentially generated numbers.  *Id.*  That is, the Court agreed there was uncertainty as to whether an ATDS must itself have the capacity to generate the random/sequential numbers or whether the random/sequential numbers can be generated elsewhere:

> A basic question raised by the statutory definition is whether a device must *itself* have the ability to generate random or sequential telephone numbers to be dialed. Or is it enough if the device can call from a database of telephone numbers generated elsewhere?

*Id.* Thus, the issue at hand is not *whether* random/sequential numbers must be generated – the statute says they must be generated; the issue is *where* must those numbers be generated. In addressing this latter issue, however, the Court found that the FCC has been anything but consistent. Indeed, the Court noted that in certain instances, the FCC suggested an ATDS itself must have "the ability to *generate* and then dial 'random or sequential numbers." *Id.* at *11. Yet in other instances, the FCC suggested "a competing view: that equipment can meet the statutory definition even if it lacks that capacity." *Id.* Given these conflicting views, the Court questioned: "[s]o which is it: does a device qualify as an ATDS only if it can generate random or sequential numbers to be dialed, or can it so qualify even it lacks that capacity?" *Id.* at *12. Finding that the FCC has "give[n] no clear answer (and in fact seems to give both answers)," the Court concluded that the FCC's 2015 ruling affirming its 2003 Order "fails to satisfy the requirement of reasoned decisionmaking." *Id.*

Thus, it was not just "the unreasonableness of the Commission's expansive understanding of when a device has the 'capacity' to perform the necessary functions" to which the Court objected. *Id.* It was also the "order's lack of clarity about which functions qualify a device as an autodialer" that the Court found objectionable. *Id.*. For that reason, the Court "set aside the Commission's treatment of [both] those matters." *Id.*

Importantly, while Plaintiff is correct that the Court confirmed the FCC's ability to "adopt either interpretation" regarding the source of randomly/sequentially generated numbers, such future interpretation has no bearing on this case. As noted, *both* interpretations require the use of numbers that have been randomly or sequentially generated *somewhere*. But random or

sequential numbers are never generated *anywhere* in connection with the Accused System, and there is certainly no evidence that the Accused System has the capacity to dial randomly or sequentially generated numbers, as required by the TCPA (Dkt. 147, pp. 2-4).

In view thereof, Plaintiff is simply wrong that the D.C. Circuit "had no quarrel with the regulatory framework that existed prior to the 2015 order," or with the 2003 Order's allegedly "'clear' pronouncement" regarding the features of an ATDS (Dkt. 148, p. 3). The D.C. Circuit had a *substantial* quarrel with the pre-2015 framework precisely because the 2003 Order was *not* clear and "left significant uncertainty" about the functions of an ATDS. To now suggest that the FCC's 2003 Order is "the operative law" after the D.C. Circuit explicitly set aside the reaffirmance of that Order strains credulity.

## II.   CONCLUSION

In view of the foregoing, there is no legal or factual basis for granting Plaintiff's summary judgment motion. Accordingly, given Plaintiff's admitted failure to come forward with evidence showing that the Accused System has the capacity to perform the required functions of an ATDS, and in view of the *ACA* decision, Regions respectfully requests that this Court enter an order sustaining Regions objections to the Magistrate Judge's Supplemental Report and Recommendations and granting Regions' motion for summary judgment (Dkt. 62). Respectfully submitted this 20th day of April, 2018.

      */s/ Joshua B. Baker*
      Maibeth Porter (ASB-3915-O40M)
      Joshua B. Baker (ASB-5105-S72B)
      OF COUNSEL
      Maynard, Cooper & Gale, P.C.
      2400 Regions/Harbert Plaza
      1901 6th Ave. North
      Birmingham, Alabama 35203
      Telephone: (205) 254-1000
      Facsimile: (205) 254-1999

- 6 -

        Robin L. McGrath (GBN 93115)
        (admitted *pro hac vice*)
        Duane Morris LLP
        1075 Peachtree Street NE, Suite 2000
        Atlanta, Georgia 30309-3929
        Telephone: (404) 253-6922
        Facsimile:  (404) 745 0806
        rlmcgrath@duanemorris.com

        ***Attorneys for Defendant***
        ***Regions Bank***

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record via the CM/ECF electronic filing system or via U.S. Mail on this the 20th day of April, 2018:

Micah S. Adkins (ASB-8639-I48A)
The Adkins Firm, P.C.
Two Perimeter Park South
Suite 405 E
Birmingham, Alabama 35243
*Attorney for Plaintiff*

William Peerce Howard
The Consumer Protection Firm, PLLC
210-A South Macdill Avenue
Tampa, Florida 33609
*Attorney for Plaintiff*

John Allen Yanchunis, Sr.
Morgan & Morgan, Tampa P.A.
One Tampa City Center
201 N. Franklin St., 7th Floor
Tampa, Florida 33602
*Attorney for Plaintiff*

Cathleen M. Combs
Edelman, Combs, Latturner & Goodwin, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
Attorney for Plaintiff

                                              */s/ Joshua B. Baker*
                                              OF COUNSEL