FILED

2018 Jul-10  PM 03:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

SUEANN SWANEY, on behalf of
Plaintiff and the class defined below,

      Plaintiff,                               CIVIL ACTION NO. 2:13-cv-00544-JHE

v.                                        Class Action

REGIONS BANK,

      Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION
OR, IN THE ALTERNATIVE, MOTION TO STAY**

## TABLE OF CONTENTS

**I.  The Prolonged Procedural History of this Case** ..................................................**1**

**II.  Regions is not Entitled to Reconsideration** .....................................................**4**

   A.  The Threshold for Reconsideration is High..........................................................4

   B.  Regions Meets None of the Reconsideration Prongs...........................................5

**III.  The Court Already Correctly Resolved the Issue** ..........................................**8**

**IV.  Even if Regions Were Correct, the Court Lacks Jurisdiction to Invalidate the 2003 Order** ......................................................................................................................**11**

**V.  A Third Stay is Not Warranted and Would be Highly Prejudicial**................**12**

   A.  A Stay is Not Warranted under the Preimary Jurisdiction Doctrine...................13

   B.  New Rulemaking by the FCC is Unlikely to have Retroactive Effect and Thus Will not Control the Outcome in this Case ...............................................................................17

   C.  The Proposed Stay Should be Denied as Immoderate .......................................18

   D.  Another Stay Would Greatly Prejudice Plaintiff ...............................................20

**VI.  Conclusion**.........................................................................................................**22**

Defendant's motion (Doc. 156)[1] simultaneously asks this Court to (1) invalidate the FCC's 2003 Order, and to (2) recognize it lacks the jurisdiction to do so.[2]  Blackletter law dictates only the latter proposition is correct, and thus the Court lacks jurisdiction to invalidate the 2003 Order,[3] the sole substantive argument for reconsideration raised by Regions Bank (Regions or Defendant).  Yet, a stay—a *third*, wholly indeterminate stay—is likewise neither necessary nor just.  This case was filed more than five years ago.  If justice delayed is justice denied, Plaintiff has already been denied justice twice.  In any event, Defendant also fails to meet the threshold standard for reconsideration.  Accordingly, the motion should be denied.

## I.      The Prolonged Procedural History of this Case

Ms. Swaney filed this action on March 21, 2013 accusing Regions of violating the TCPA, 47 U.S.C. § 227, by sending text alert messages to her cell phone without consent.  On April 15, 2013, Regions filed a motion to stay (Doc. 6), which was granted.  After extending the stay on several occasions, by order of May 9, 2014, the Court lifted the stay and "limited discovery on (a) whether Regions' system is an 'automatic telephone dialing system.'"  (Doc. 27). On February 9, 2015, both parties filed cross motions for summary judgment, (Docs. 59 and 62), as to whether the accused system constitutes an ATDS under the TCPA. On July 13, 2015,

---

[1] Page citations to docket entries herein refer to the CM/ECF pagination at the top right hand of the docket entries, rather than the documents' pagination.

[2] *Compare* (Doc. 156 at 13) ("[T]here is no longer any legal basis for concluding that predictive dialers fall within the definition of ATDS or that the 2003 Order finding that they do continues to be valid."), *with* (*id.* at 18) ("[D]istrict courts are bound to follow the FCC's orders interpreting the TCPA.").

[3] *See, e.g.*, *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119–21 (11th Cir. 2014) (noting that the Hobbs Act rests exclusive jurisdiction in the federal courts of appeal "to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" FCC orders, and finding "[t]he district court exceeded its jurisdiction by declaring the 2008 FCC Ruling to be inconsistent with the TCPA").

Magistrate Judge England issued a Report and Recommendation that Plaintiff's motion for summary judgment (Doc. 59) be granted, and that Defendant's motion for summary judgment (Doc. 62) be denied. (Doc. 117) ("R&R").

On November 18, 2015, this Court entered a Memorandum Opinion and Order, recognizing that the Magistrate Judge's R&R did not address the FCC's recently released ruling, *In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015) ("2015 FCC Order'), and referred the matter back to the Magistrate Judge for further proceedings. (Doc. 121).

On April 14, 2016, Judge England entered his Supplemental Report and Recommendation. (Doc. 134) ("Supplemental R&R"). After a thorough analysis, the Supplemental R&R found that "[t]he undisputed evidence establishes Regions' system is a computerized system with the capacity required by the 2015 FCC Order and is the type of autodialer Congress and the FCC are trying to regulate through the TCPA." (*Id*. at 4).  Thus, the Magistrate Judge again recommended that Plaintiff's motion for partial summary judgment be granted and that Regions' motion for summary judgment be denied. On April 27, 2016, Regions filed its Objections to the Supplemental R&R. (Doc. 135). Also on April 14, 2016, Judge England entered an order denying Regions' motion for another stay, (Doc. 133), to which Regions also objected, (Doc. 136).

Following a hearing, on May 13, 2016, the Court stayed this matter for a second time "pending a ruling by the D.C. Circuit Court of Appeals in *ACA Int'l v. FCC*, Case No. 15-1211 (the lead case in Consolidated Appeals) reviewing the FCC's 2015 Order."  (Doc. 139).  As directed by that Order, on April 23, 2018, the Parties filed a status report upon a decision adjudicating the *ACA* case.  (Doc. 145).  Pursuant to the Court's briefing schedule (Doc. 146),

the parties submitted supplemental arguments "addressing the effect of the *ACA* decision" on the still pending objections to the Supplemental R&R.  (Docs. 147–150).

On May 22, 2018, this Court overruled Regions' Objections and directed summary judgment be entered in Plaintiff's favor, concluding:

> In *ACA International*, the D.C. Circuit invalidated certain portions of the 2015 FCC Order, but not the portion of the Order reaffirming the FCC's 2003 determination that, "while some predictive dialers cannot be programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of an ATDS." 885 F.3d at 702 (quoting the 2013 FCC Order). In its 2003 Order, the FCC concluded that the defining characteristic of an ATDS is "the capacity to dial numbers without human intervention." 2003 FCC Order at 14092. In light of *ACA International*, that proposition still stands. 885 F.3d at 702.
>
> Defendant's principal argument against summary judgment in this case is that "to be an ATDS, equipment must have the capacity to store or produce numbers using a random or sequential number generator, even if that capacity is never used." (Doc. #118 at 4-5). But that argument cannot be squared with the continuing validity of the 2003 FCC Order. "To determine whether a dialer is a predictive dialing system, and therefore an ATDS, 'the primary consideration ... is whether human intervention is required at the point in time at which the number is dialed.'" *Strauss v. CBE Grp., Inc.*, 173 F. Supp. 3d 1302, 1309 (S.D. Fla. 2016), *reconsideration denied*, 2016 WL 4402270 (S.D. Fla. June 8, 2016) (quoting *Brown v. NRA Grp., LLC*, 2015 WL 3562740, at *2 (M.D. Fla. June 5, 2015) (citation omitted)); *see also Legg v. Voice Media Grp., Inc.*, 20 F.Supp.3d 1370, 1374 (S.D. Fla. 2014) (explaining that "defining characteristic" of ATDS is "capacity to dial numbers without human intervention"). Here, Plaintiff presented sufficient evidence to demonstrate that the system at issue has the capacity to dial numbers (*i.e.,* send text messages) without human intervention. Therefore, the Magistrate Judge's recommendation that Plaintiff is entitled to partial summary judgment on this issue of whether the Defendant's system is an ATDS under the TCPA is due to be adopted.

(Doc. 153 at 3–4) (hereinafter "Summary Judgment Order").

3

Regions now seeks reconsideration of the Summary Judgment Order, arguing that the reasoning undergirding the *ACA* decision likewise undermines the FCC's 2003 Order: "In setting aside the broad interpretation of 'capacity,' *ACA* necessarily set aside any order, including the 2003 Order regarding predictive dialers, based on that interpretation."  (Doc. 156 at 4).  In the alternative, Regions seeks yet another stay, this time on the supposition that the FCC is "poised" to comment on the effect of the *ACA* decision, in its "forthcoming report," which is "likely" to resolve disputed issues here.  (Doc. 156 at 16).  None of Regions' arguments are correct and they should all be rejected.

## II.     Regions Is Not Entitled to Reconsideration

### A.  The Threshold for Reconsideration is High

As an initial matter, Regions fails to meet any of the thresholds for seeking reconsideration.  As this Court has explained, "[r]econsideration of a prior judgment is 'an extraordinary remedy which must be used sparingly.'" *Johnson v. Mossy Oak Properties, Inc.*, 7:11-CV-4205-RDP, 2013 WL 12253434, at *1 (N.D. Ala. Apr. 8, 2013) (quoting *Jackson v. Wesley*, 2011 WL 2144696, *1 (M.D. Fla. May 31, 2011)).  "The moving party must do more than merely ask the court for a reevaluation of an unfavorable ruling. 'A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.'"  *Ray v. Judicial Correction Services, Inc.*, 2:12-CV-02819-RDP, 2018 WL 3012276, at *1 (N.D. Ala. June 15, 2018) (quoting *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007)).

"Courts have identified three grounds for granting a motion to alter or amend a judgment: '1) an intervening change in controlling law; 2) the availability of new evidence; or 3) the need to correct clear error or prevent manifest injustice.'" *Smith v. Dunn*, 2:13-CV-00557-RDP, 2017

WL 4532040, at *1 (N.D. Ala. Oct. 10, 2017) (quoting *Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc.*, 62 F. Supp. 2d 1316, 1331 (M.D. Fla. 1999)). "Far too often," however,

> litigants operate under the flawed assumption that any adverse ruling on a dispositive motion confers upon them license to move for reconsideration, vacatur, alteration or amendment as a matter of course, and to utilize that motion as a platform to criticize the judge's reasoning, to relitigate issues that have already been decided, to champion new arguments that could have been made before, and otherwise to attempt a "do-over" to erase a disappointing outcome. This is improper.

*Id.* at *1 n.1 (quoting *Garrett v. Stanton*, 2010 WL 320492, at *2 (S.D. Ala. Jan. 18, 2010)).

Regions' arguments here are nothing more than an improper "do-over" attempt lodged by newly retained counsel. Ostensibly, the bases for reconsideration identified in the motion are:

> [1] there is new authority to consider – including the authority that was submitted by the Plaintiffs just prior to the May 22 Order, but to which Regions never had a meaningful chance to respond. (Doc. 151.) [2] There is also new evidence with respect to the activities of the FCC. And, finally, [3] Regions respectfully suggests that after consideration of full briefing on the issue, the Court should correct its error in finding that the 2003 Order survived ACA.

(Doc. 156 at 12).

### B.  Regions Meets None of the Reconsideration Prongs

As to the first, Regions did respond (Doc. 152) to Plaintiff's Notice of Supplemental Authority, (Doc. 151).  In any event, Regions cites no "intervening *change* in *controlling* law." *Smith*, 2017 WL 4532040, at *1 (emphasis added).  The only potential change in "controlling" law was *ACA International v. Fed. Communications Commission*, 885 F.3d 687 (D.C. Cir. 2018).  But this Court's Summary Judgment Order was entered after the *ACA* decision was rendered, took it expressly into full account, and was informed through the parties' briefing on the impact of that precedent, (Docs. 147–150).  Indeed, in that prior briefing, Regions raised the

5

very arguments it raises again here.[4]   Rather, Regions new counsel principally relies on a regurgitation of its old arguments and reading of *ACA*, combined with two non-controlling (and non-persuasive) district court cases: *Herrick v. GoDaddy.com, LLC,* Case No. CV-16-00254-PHX-DJH, 2018 WL 2229131, *7 (D. Ariz. May 14, 2018) and *Marshall v. CBE Group, Inc.*, No. 2:16-CV-02406-GMN-NJK, 2018 WL 1567852, *7 (D. Nev. Mar. 30, 2018).[5]

Even so, *Herrick* and *Marshall* have both been deeply undermined by subsequent judicial examination, factually and otherwise. For example, the court in *Ammons v. Ally Financial, Inc.*, NO. 3:17–cv–00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018), disagreed "with *Herrick's* conclusion that *ACA International* enables a court to 'not defer to any of the FCC pertinent pronouncements,'" found it "internally inconsistent," and noted that, factually, "human intervention is what truly doomed the *Herrick* plaintiff, because the defendant's dialer required such a level of human agency that it was completely disqualifying." *Id.* at at *6. Likewise, the *Ammons* court noted that *Marshall* found that, "even if the 2003 FCC Ruling applied, where dialer involved a 'point and click' system that required employees to trigger calls, the dialer was

---

[4] *See, e.g.*, (Doc. 150 at 2) ("Plaintiff appears to be under the misguided impression that when the DC Circuit set aside portions of the FCC's 2015 Order, the FCC's earlier *2003* Order (on which the Magistrate Judge originally relied to first recommend summary judgment in Plaintiff's favor) 'returned to being the operative law' (Dkt. 128, p. 4). Plaintiff is mistaken. In setting aside portions of the 2015 Order, the D.C. Circuit was exceedingly clear that it was also setting aside those portions of the FCC's 2003 Order on which the Magistrate Judge relied in his first recommendation.").

[5] The other cases cited by Regions—*Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 3d 637, 643 n.-6 (E.D. Pa. 2014) and *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1192-94 (W.D. Wash 2014)—(Doc. 156 at 8), were decided years ago and thus are not "intervening," and likewise are non-binding on this Court and thus not controlling.

not an ATDS because it involved too much up-front human intervention.'" *Id.* at *7. Both cases are thus factually distinct as well as legally incorrect.[6]

As to the second reconsideration threshold, Regions claims the "new evidence" is the FCC's request for comments concerning the "interpretation and implementation of the" TCPA. (Doc. 156 at 10-11). But while this is arguably "new," it is certainly not "evidence" of anything litigated in this case. At best, all this proves is that a government agency is seeking public comment on a statute it administers. It has no tendency to prove or disapprove any fact of consequence at issue here. Fed. R. Civ. P. 401. Moreover, notwithstanding Regions overwrought optimism that the FCC is actually "poised" to issue a "forthcoming report" that is "likely" to resolve any disputed issue (Doc. 156 at 16), the solicitation of comments from the public by a government agency imposes no duty on the agency to actually act, nor timeline within which to do so. Conceivably, the FCC could, in response to the comments, take no action whatsoever. Even if it were to act, the process of promulgating a new order could easily take years to complete. *See, e.g.*, *Pieterson v. Wells Fargo Bank, N.A.*, 17-CV-02306-EDL, 2018 WL 3241069, at *5 (N.D. Cal. July 2, 2018) (noting that the FCC's 2008 order took three years to develop). While Regions is clearly content to wait years and hope that the law changes in its favor, Plaintiff is not.

Finally, Regions argues that "consideration of full briefing on the issue" will convince the Court of the clear error of its ways. (Doc. 156 at 12). However, Regions has previously raised these same points. *See, e.g.*, (Doc. 150 at 2) ("In setting aside portions of the 2015 Order, the D.C. Circuit was exceedingly clear that it was also setting aside those portions of the FCC's 2003

---

[6] As noted above, and discussed further below, the Hobbs Act prevents this Court from invalidating the FCC's prior Orders.

Order on which the Magistrate Judge relied in his first recommendation.").  Having new counsel add fifteen pages to the original argument does not create new evidence or establish clear error.

Indeed, if the passage of time and spilling of ink in litigation across the country on this issue has shown anything, it is that far from "clear error" or "manifest injustice," the great majority of cases to address the issue have joined this Court in ruling that the 2003 Order and its progeny persist.  *See, e.g.*, *O'Shea v. Am. Solar Sol., Inc.*, 3:14-CV-00894-L-RBB, 2018 WL 3217735, at *2 (S.D. Cal. July 2, 2018); *Pieterson v. Wells Fargo Bank, N.A.*, 17-CV-02306-EDL, 2018 WL 3241069, at *3 (N.D. Cal. July 2, 2018); *Ammons v. Ally Financial, Inc.*, NO. 3:17–cv–00505, 2018 WL 3134619, at *6 (M.D. Tenn. June 27, 2018); *McMillion v. Rash Curtis & Associates*, 16-CV-03396-YGR, 2018 WL 3023449, at *3 (N.D. Cal. June 18, 2018); *Maddox v. CBE Group, Inc.*, 1:17-CV-1909-SCJ, 2018 WL 2327037, at *4–5 (N.D. Ga. May 22, 2018); *Reyes v. BCA Fin. Services, Inc.*, 16-24077-CIV, 2018 WL 2220417, at *11 (S.D. Fla. May 14, 2018).

Hence, no basis for reconsideration exists, and the motion should be denied for this reason alone.  Regions' attempt to "relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment," "to champion new arguments that could have been made before, and otherwise to attempt a 'do-over' to erase a disappointing outcome" is "improper" and should be rejected. *Ray*, 2018 WL 3012276, at *1; *Smith*, 2017 WL 4532040, at *1 n.1.

### III.    The Court Already Correctly Resolved the Issue

This Court correctly resolved the issue in its Summary Judgment Order.  *ACA*, neither expressly nor by implication, overturned the 2003 Order: "[N]owhere in the D.C. Circuit's opinion are the prior FCC orders overruled. Indeed, that would have been impossible given that

the time to appeal those orders had long passed."   *Reyes*, 2018 WL 2220417, at *11.  As noted

above, the vast majority of courts to address the issue agree with this Court.  *See, e.g.*, *O'Shea*,

2018 WL 3217735, at *2; *Pieterson*, 2018 WL 3241069, at *3; *Ammons*, 2018 WL 3134619, at

*6; *McMillion*, 2018 WL 3023449, at *3; *Maddox*, 12018 WL 2327037, at *4–5; *Reyes*, 2018

WL 2220417, at *11.

And Regions' argument lacks intuitive appeal as well.  The 2015 Order, and hence the

*ACA* decision, addressed the viability of the FCC's "future capacity" rule.  As the *Reyes* court

explained:

> [W]hat *ACA International* did was to reject the FCC's have-your-
> cake-and-eat-it-too approach to the questions before it. The FCC
> was of "two minds on the issue" of whether "a device must be able
> to generate and dial random or sequential numbers to meet the
> TCPA's definition of an autodialer," or whether "that equipment
> can meet the statutory definition even if it lacks that capacity." *Id.*
> at 701–02. The FCC answered "yes" and "yes," i.e., it *must have*
> that ability and it *may lack* that ability, two conflicting answers that
> the D.C. Circuit could not accept because it provided no
> meaningful guidance.
>
> But what *ACA International* did not do is endorse one
> interpretation over the other, even implicitly. *ACA International*
> did not say that a predictive dialer, or any other type of device,
> must be able to generate and dial random or sequential numbers to
> meet the TCPA's definition of an autodialer. Nor did it say that a
> predictive dialer, or any other type of device, may lack that
> capacity. In fact, the D.C. Circuit said that "[i]t might be
> permissible for the Commission to adopt either interpretation**.**"
> *ACA Int'l*, 885 F.3d at 703 (emphasis added). But what the FCC
> could not do was "espouse both competing interpretations in the
> same order." *Id.*
>
> In this case, [Defendant] is essentially urging the Court to adopt
> the first interpretation—i.e., that a predictive dialer must be able to
> generate and dial random or sequential numbers to be an ATDS—
> based on *ACA International's* authority. But *ACA International*

9

does not compel that conclusion because it did not adopt that interpretation. At best, *ACA International* arguably calls into doubt the FCC's previous broad statements that predictive dialers are ATDSs regardless of whether they call randomly or from a sequential list or a set list of numbers. But perhaps not, given that the D.C. Circuit did not adopt one interpretation over the other. In any event, as already explained, absent an express rejection of the prior FCC orders, the Court cannot deviate from them and impose my own interpretation of the TCPA.

*Reyes*, 2018 WL 2220417, at *12.  Regions seeks the same judicial legislation rejected by the *Reyes* court, and its request should meet the same fate.

Fundamentally, the *ACA* court had no quarrel with the 2003 Order's "clear" pronouncement that, "while some predictive dialers cannot be programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of an ATDS." *ACA Int'l*, 885 F.3d at 702. Indeed, it characterized the 2003 Order as a "permissible" result. *Id.* Rather, the problem with the vacated 2015 Order was that it espoused two "competing interpretations in the same order." *Id.* The 2003 Order does not suffer from this defect and was not overturned. It is telling, therefore, that Regions is unable to quote any language from *ACA Int'l* that expressly overturned any order prior to the 2015 FCC Order, relying, instead on an implied repudiation of "the very basis for the 2003 Order's ruling."  (Doc. 156 at 15).

Regions labors to reach this incorrect conclusion because it recognizes that the consequence of vacating the 2015 Order is to restore the regulatory regime to that existing prior, namely that imposed by the 2003 Order. *See Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 64 (D.D.C. 2004) ("When a court vacates an agency's rules, the vacatur restores the status quo before the invalid rule took effect and the agency must initiate another rulemaking proceeding if it would seek to confront the problem anew.").

**IV.    Even if Regions Were Correct, the Court Lacks Jurisdiction to Invalidate the 2003 Order**

Even if the Court were inclined to agree with Regions, the Hobbs Act removes this Court's ability to question the 2003 Order. "The Communications Act, which the TCPA amended, provides that any 'proceeding to enjoin, set aside, annul, or suspend any order of the Commission' must be brought under the Hobbs Act." *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1306 (11th Cir. 2015) (quoting 47 U.S.C. § 402(a)). "The Hobbs Act provides the federal courts of appeals with 'exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity' of FCC orders." *Id.* at 1307 (quoting 28 U.S.C. § 2342(1)).

> District courts may not determine the validity of FCC orders, including by refusing to enforce an FCC interpretation, because "[d]eeming agency action invalid or ineffective is precisely the sort of review the Hobbs Act delegates to the courts of appeals in cases challenging final FCC orders." If the Hobbs Act applies, a district court must afford FCC final orders deference and may only consider whether the alleged action violates FCC rules or regulations.

*Id.* (citation omitted) (quoting *Mais v. Gulf Coast Collection Bureau, Inc*., 768 F.3d 1110, 1120–21 (11th Cir. 2014)). "This procedural path created by the command of Congress 'promotes judicial efficiency, vests an appellate panel rather than a single district judge with the power of agency review, and allows uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress to enforce the TCPA." *Mais*, 768 F.3d at 1119 (quoting *CE Design, Ltd. v. Prism Bus. Media, Inc*., 606 F.3d 443, 450 (7th Cir. 2010)).

This jurisdictional bar applies whether validity of the agency order is raised by the plaintiff or the defendant—for, "[a] defensive attack on the FCC regulations is as much an evasion of the exclusive jurisdiction of the Court of Appeals as is a preemptive strike,"—and it

11

turns on the "the 'practical effect' of a proceeding," not the litigant's central purpose. *Mais*, 768 F.3d at 1120. Hence, the "district courts lack jurisdiction to consider claims [or defenses] to the extent they depend on establishing that all or part of an FCC order subject to the Hobbs Act is 'wrong as a matter of law' or is 'otherwise invalid.'" *Id.* (quoting *Self v. Bellsouth Mobility, Inc.*, 700 F.3d 453, 462 (11th Cir. 2012)). Accordingly, "the district court [is] without jurisdiction to consider the wisdom and efficacy of the 200[3] FCC Ruling." *Mais*, 768 F.3d at 1121.

Regions expressly asks this Court to hold the 2003 Order invalid.  *See, e.g.*, (Doc. 156 at 4) ("In setting aside the broad interpretation of 'capacity,' *ACA* necessarily set aside any order, including the 2003 Order regarding predictive dialers, based on that interpretation.").  In doing so it invites this Court to commit clear reversible error.  *ACA* refused to invalidate the 2003 Order, finding its formulation "permissible."  *ACA Int'l*, 885 F.3d at 702.  This Court lacks jurisdiction to undermine that outcome.

To the extent Regions' argument is based on some theorized distinction between "predictive dialers" and its system, Regions offers no limiting factor by which an invalidation of the 2003 Order for the Accused System would not, in form and effect, also impermissibly invalidate the FCC's 2003 Order for predicative dialers.

## V.    A Third Stay is Not Warranted and Would be Highly Prejudicial

This case is already more than five years old and has been stayed, over the course of two separate instances, for nearly three years: roughly April 2013–May 2014 and May 2016–April 2018.  A third, indefinite stay while the FCC considers comments, drafts and promulgates a rule, and while that rule is in turn subject to judicial challenge, would result in years more delay.

There is no telling if, or when, the FCC will make additional guidance on these issues available, and this case should not be stayed because the FCC may or may not act. This Court

can—and already has—construe the TCPA without staying this case for an indefinite period of time, in line with the majority of recent decisions throughout the country.[7]

### A.  A Stay is Not Warranted under the Primary Jurisdiction Doctrine

 "[T]he primary jurisdiction doctrine 'is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit,' but instead 'is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.'" *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1380 (S.D. Fla. 2014) (citing *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)); *see also Persaud v. Bank of Am., N.A.*, 14-21819-CIV, 2014 WL 4260853, at *6 (S.D. Fla. Aug. 28, 2014) (same); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1349 (S.D. Fla. 2013) (same).

Even Regions own cited authority, *Scoma Chiropractic*, (Doc. 156 at 20), follows this rule.  There, the court stayed an action regarding facsimile advertisements because the FCC had *never before* addressed "the issues raised [t]here with regard to sending and receiving faxes using

---

[7] *See, e.g.*, *Kafatos v. Uber Techs., Inc.*, No. 15-03727, 2016 WL 97489, at *2 (N.D. Cal. Jan. 8, 2016); *Glick v. Performant Fin. Corp.*, No. 16-05461, 2017 WL 786293, at *2 (N.D. Cal. Feb. 27, 2017); *Mendez v. Optio Sols., LLC*, 239 F. Supp. 3d 1229, 1233 (S.D. Cal. 2017); *Crooks v. Rady Children's Hosp.*, No. 17-246, 2017 WL 4541742, at *3 (S.D. Cal. Oct. 10, 2017); *Pedro-Salcedo v. Haagen-Dazs Shoppe Co., Inc.*, No. 17-03504, 2017 WL 4536422, at *3 (N.D. Cal. Oct. 11, 2017); *Montegna v. Ocwen Loan Servicing, LLC*, 17-00939, 2017 WL 4680168, at *4 (S.D. Cal. Oct. 18, 2017); *Embree v. Ocwen Loan Serv., LLC*, No. 17-156, 2017 WL 5632666, at *3 (E.D. Wash. Nov. 22, 2017); *Schwyhart v. AmSher Collection Servs., Inc.*, 182 F. Supp. 3d 1239, 1242 (N.D. Ala. 2016); *Rodriguez v. DFS Servs., LLC*, No. 15-2601, 2016 WL 369052, at *3 (M.D. Fla. Feb. 1, 2016); *O'Hanlon v. 24 Hour Fitness USA, Inc.*, No. 15-01821, 2016 WL 815357, at *4 (N.D. Cal. Mar. 2, 2016); *Riazi v. Ally Fin., Inc.*, No. 17-1705, 2017 WL 4269791, at *4 (E.D. Mo. Sept. 26, 2017); *Caudill v. Wells Fargo Home Mortg., Inc.*, No. 16-066, 2016 WL 3820195, at *3 (E.D. Ky. July 11, 2016); *Jones v. AD Astra Recovery Servs., Inc.*, No. 15-1013, 2016 WL 3145072, at *6 (D. Kan. June 6, 2016); *Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2017 WL 6507226, at *1 (M.D. Fla. Dec. 15, 2017); *Eldridge v. Cabela's Inc.*, No. 16-536, 2017 WL 4364205, at *4 (W.D. Ky. Sept. 29, 2017); *I.C. ex rel. Cochrane v. Am. Credit Acceptance, LLC*, No. 16-1479, 2017 WL 1507184, at *1 (M.D. Fla. Apr. 25, 2017).

13

cloud-based servers, raising a potential first-impression interpretation for the FCC." *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, 2:16-CV-41-FTM-99MRM, 2018 WL 2455301, at *3 (M.D. Fla. June 1, 2018).

Whether Regions' system—which sends out approximately 19,000,000 texts a month—is an ATDS is not one of "first impression." The FCC has already applied its expertise and determined that predictive dialers are ATDSs on multiple occasions. While the initial determination of whether predictive dialers are covered by the TCPA may have required agency expertise and discretion, once that question was answered, application of that determination is a matter within the conventional expertise of courts, as underscored by the multiple judicial decisions addressing similar TCPA claims.

For this reason, courts have repeatedly denied nearly identical motions to stay pending FCC proceedings on ATDS issues.  For instance, in 2010, the FCC issued a notice of proposed rulemaking that would address ATDS issues. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 25 FCC Rcd. 1501 (Notice of Proposed Rulemaking) (January 22, 2010).  Multiple defendants in TCPA actions pending at that time moved to stay their cases under the primary jurisdiction doctrine pending the FCC's rulemaking and these motions were repeatedly denied.

For instance, in *Frydman v. Portfolio Recovery Assocs., LLC*, 11 CV 524, 2011 WL 2560221 (N.D. Ill. June 28, 2011), the court denied the motion to stay, reasoning that:

> [T]he issues of statutory interpretation raised by the defendant here are not issues of first impression nor are they particularly complicated technical questions that need to be resolved by the FCC before this Court addresses them.   Whether the predictive dialers used by defendant are 'automatic telephone dialing systems' or 'autodialers' as these terms are used in the TCPA is a straightforward interpretive question addressed by prior FCC rulings and some case law . . . . In other words, in deciding these

14

issues in this case, this Court would not be writing on a completely clean slate.

*Id.* at * 4.  The Court concluded:

> Accordingly, this case does not raise an issue of first impression as far as the FCC is concerned. The FCC already has spoken, multiple times, on matters potentially relevant to this case . . . The possibility that the FCC will . . .  change or modify its previously stated positions, is not enough reason for this Court to stay its hand while that process plays out before the FCC. Rather, the Court and the parties in this case face a familiar playing field in the context of civil litigation. As such, this case presents issues that are well-within the conventional experience of judges.

*Id.* at *5; *see also Meyer v. Portfolio Recovery Assocs., LLC*, 11CV1008 AJB RBB, 2011 WL 11712610, at *9 (S.D. Cal. Sept. 14, 2011) ("Defendants' motion to stay [pending the same rulemaking] is hereby DENIED because the FCC has already ruled on the issue before this Court so it is not one of first impression[.]"); *Robinson v. Midland Funding, LLC*, 10CV2261 MMA AJB, 2011 WL 1434919, at *6 (S.D. Cal. Apr. 13, 2011) (same); *Tovar v. Midland Credit Mgmt.*, 10CV2600 MMA MDD, 2011 WL 1431988, at *4 (S.D. Cal. Apr. 13, 2011) (same).

Several years later, defendants in TCPA actions moved to stay their cases pending FCC orders on various petitions for declaratory rulings pending before the agency at that time.  Just as the courts had done in 2011, these courts denied the motions to stay because they were not issues of first impression and the courts were guided by prior precedent.

For instance, in *Holcombe v. Credit Prot. Ass'n, LP*, 44 F. Supp. 3d 1311 (M.D. Ga. 2014), the defendant argued, just as Regions does here, for a stay on primary jurisdiction grounds pending expected FCC action clarifying the scope of the ATDS definition. *Id.* at 1314.  The court denied the motion, ruling:

> [I]t is clear the two issues presented are not matters of first impression for this Circuit or the FCC, nor are they so technical that this Court would be unable to decide the factual issues based on its own experience and guidance from prior FCC rulings.

> Moreover, given the uncertainty as to when the FCC will issue
> rulings and whether the FCC will change its prior positions on
> these issues, the Court finds that a stay will add unnecessary delay
> and expense to the parties in the present litigation."

*Id.* at 1316; *see also Shehan v. Wells Fargo Bank N.A.*, 56 F. Supp. 3d 1206, 1209 (N.D. Ala. 2014) (denying motion to stay because "the Eleventh Circuit has spoken directly to this issue, providing direct guidance for a uniform interpretation of the statute throughout the Circuit"); *Swift v. Bank of Am. Corp.*, 3:14-CV-1539-J-20PDB, 2015 WL 13333136, at *3 (M.D. Fla. June 18, 2015) ("[B]y following Eleventh Circuit precedents, this Court will be able to answer Defendants' question without the need to dismiss without prejudice or to stay this case in order to wait on the FCC to make a ruling on the UHS and ACA petitions.").

The same reasoning applies here, with even more force.  Now, in 2018, the FCC's 2003 Order has been in place for fifteen years and there are numerous cases interpreting the FCC's orders on predictive dialers that support this Court's decision, including decisions from the Eleventh Circuit. *See Mais*, 768 F.3d at 1114 ("[A] predictive dialer falls within the meaning and statutory definition."); *Patterson v. Ally Fin., Inc.*, 3:16-CV-1592-J-32JBT, 2018 WL 647438, at *2 (M.D. Fla. Jan. 31, 2018) ("[P]redictive-dialing technologies are equivalent to ATDSs."); *Keim v. ADF Midatlantic, LLC*, 12-80577-CIV, 2015 WL 11713593, at *6 (S.D. Fla. Nov. 10, 2015); *Smith v. Markone Fin., LLC*, 3:13-CV-933-J-32MCR, 2015 WL 419005, at *3 (M.D. Fla. Feb. 2, 2015); *Legg v. Voice Media Group, Inc.*, 20 F. Supp. 3d 1370, 1375 (S.D. Fla. 2014). The primary jurisdiction doctrine does not apply in these circumstances.

The predictive dialer issue is not a matter of first impression requiring agency expertise; after fifteen years of precedent on the issue, the law is well developed. Thus, as the *Frydman* court held when denying a similar motion in 2011, in deciding the issues here "this Court would not be writing on a completely clean slate."  *Frydman*, 2011 WL 2560221, at *4.

**B. New Rulemaking by the FCC is Unlikely to Have Retroactive Effect and Thus Will Not Control the Outcome in this Case**

A stay under the primary jurisdiction is also unwarranted here because the FCC's potential rulemaking will not resolve any portion of this action. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1298, n.3 (11th Cir. 2001) ("primary jurisdiction is a judicially created doctrine whereby a court of competent jurisdiction may dismiss or stay an action pending a *resolution of some portion of the action* by an administrative agency.") (emphasis added).

The claims in this case concern texts sent in 2012. (Doc. 111 at p. 2–4). Thus, in order for any portion of this action to be resolved by a future rulemaking of the FCC, the rule adopted would need to have retroactive effect. Yet a substantive rulemaking by the FCC on the ATDS issue would not have retroactive effect. As explained by the Supreme Court, "administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Furthermore, "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Id.* There is no such express authorization for retroactive rulemaking found within the TCPA, and as such, there would be no retroactive application of the new rules that Regions anticipates.

Accordingly, several courts have ruled that the FCC's substantive TCPA rulemakings do not have retroactive effect. *See Ruffrano v. HSBC Fin. Corp.*, 15CV958A, 2017 U.S. Dist. LEXIS 132674, (W.D.N.Y. 2017) (ruling that the FCC's 2015 TCPA Order did not have retroactive effect because it was a "rulemaking rather than an adjudication of parties' dispute"); *Dominguez v. Yahoo!, Inc.*, CV 13-1887, 2017 WL 390267, at *6–12 (E.D. Pa. Jan. 27, 2017),

*aff'd sub nom. Dominguez on Behalf of Himself v. Yahoo, Inc*., 17-1243, 2018 WL 3118056 (3d Cir. June 26, 2018) (same).

Where, as here, a contemplated FCC ruling would not have retroactive effect, a stay under the primary jurisdiction doctrine is improper. Thus, numerous courts have denied similar motions for this reason. *See Swift*, 2015 WL 13333136, at *3 ("[T]he ruling will likely not be retroactive. Therefore, this case can proceed based on the FCC's prior interpretations of the TCPA."); *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 102, n.5 (N.D. Ill. 2013) (denying motion to stay pending FCC rulemaking in a TCPA case because "a change in existing regulations is presumed to not be retroactive."); *Frydman*, 2011 WL 2560221, at *6–8 (declining to stay case to on primary jurisdiction because any ruling by FCC would only be made on a prospective basis). Regions' motion should likewise be denied.

### C.  The Proposed Stay Should be Denied as Immoderate

Regions' motion to stay should also be denied because the proposed stay would be immoderate; it has an indefinite duration and is likely to sideline this action for years to come. "A stay must not be 'immoderate.'" *Trujillo v. Conover Co. Communs., Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000). A stay is immoderate if it is "indefinite in scope." *Id.* (citing *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982) ("It is difficult to accurately predict the time that CTI will be forced to stand aside if it is required to await the Tribunal's determination of its jurisdiction to hear these claims, but it can safely be described as an indefinite period of time. We cannot uphold such an indefinite or immoderate stay[.]").

"[T]he burden of making out the justice and wisdom" of the stay rests "heavily" on the movant. *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936). If there is even a "fair possibility that the stay . . . will work damage to someone else," then the movant "must make out a clear case of

18

hardship or inequity in being required to go forward" with the case. *Id.* A stay may not be of "indefinite duration in the absence of a pressing need." *Id.* Regions fails to meet its heavy burden of showing the "justice and wisdom" of a stay under *Landis*.

Given the long history of FCC rulings on the ATDS issue, numerous courts have recognized that staying TCPA actions pending further action by the FCC would be indefinite and improper. *See, e.g.*, *Petras v. Ocwen Loan Servicing, LLC*, 5:17-CV-73-OC-30PRL, 2017 WL 2426846, at *2 (M.D. Fla. June 5, 2017) ("Staying these proceedings will require Plaintiff to stand aside for an indefinite period of time, waiting first for the D.C. Circuit to make its ruling and then (possibly) for the Supreme Court to review that ruling. There is no compelling reason to require this of Plaintiff. The stay requested by Defendant is immoderate."); *Sliwa v. Bright House Networks, LLC*, 216CV235FTM29MRM, 2016 WL 3901378, at *4 (M.D. Fla. July 19, 2016) (same).

Several other courts in this circuit denied practically identical motions to stay pending adjudication of the 2015 Order in *ACA* for the same reason. *Yardley v. Ocwen Loan Servicing, LLC*, No. 8:16–cv–01385–T–30AEP, 2017 U.S. Dist. LEXIS 86798, *4 (M.D. Fla. March 29, 2017) (denying stay pending resolution of ATDS issue as immoderate); *Terec v. Reg'l Acceptance Corp.*, No. 8:16–CV–2615–T–30MAP, 2017 WL 662181, at *2 (M.D. Fla. Feb. 17, 2017) (same); *Schwyhart v. Amsher Collection Servs.*, 182 F. Supp. 3d 1239, 1243 (N.D. Ala. 2016) ("[T]he court is unwilling to stay this case indefinitely pending the issuance of the decision . . . . In addition, there is always the possibility that the D.C. Circuit's decision will be appealed to the Supreme Court, adding a further layer of indefinite—and perhaps lengthy—delay were a stay to be granted here."); *Mancini v. JPMorgan Chase Bank, N.A.*, 1:15-CV-61524-UU, 2016 WL 1273185, at *1 (S.D. Fla. Mar. 28, 2016) ("Any stay would be indefinite and solely in

the interests of judicial economy, which the Supreme Court has found to be insufficient justification for a stay pending a similar proceeding.").

The required deference to the FCC's 2003 Order also counsels against a stay:

> Staying this case because the Circuit Court *may* conclude that FCC incorrectly interpreted the TCPA is the *opposite* of affording the Final Order deference. Granting a stay premised on the contention that the FCC got it wrong could, in fact, amount to a constructive "refus[al] to enforce an FCC interpretation"–an action this Court is expressly prohibited from taking – and a "violat[ion of] the Hobbs Act's prohibition on district court review of FCC orders."

*Sliwa*, 2016 WL 3901378, at *4 (emphasis in original) (quoting *Murphy*, 797 F.3d at 1305).

While this Court previously stayed this matter pending the *ACA* decision, the procedural setting now is markedly different. Public comment on general TCPA topics closed days ago.  A proposed rule has not yet been promulgated. It too will be subject to rounds of further public comment and, ultimately, litigation, delaying this case by years. In this instance, Regions is seeking a stay premised on a rule that is yet to be written, that may never be written, and that, if promulgated, likely resolves nothing at issue in this case. This, simply, is an inappropriate context for a further stay of this case.

## D.  Another Stay Would Greatly Prejudice Plaintiff

Such a further delay would highly prejudice Plaintiff.  Contrary to Regions' arguments, the prior stays were not "through no fault of the parties," (Doc. 156 at 4), they were at Regions' request and over Plaintiff's strenuous objections.  Additional postponement, given the procedural history of this matter, would be the height of prejudice to Plaintiff, and truly embody justice delayed as justice denied.

With respect to any anticipated FCC action, Regions implies that the FCC is planning to issue new guidance about what constitutes an ATDS, and that this guidance is "likely to issue"

while the parties engage in the class certification phase. (Doc. 156 at 20). There is, however, a clear distinction between public comment and the issuance of an actual order from the FCC. An expedited schedule for public comment provides no indication as to when the FCC may ultimately issue an order. With history as a guide, the suggestion that FCC guidance is imminent is baseless.

It is well recognized that "[a]gency decision making often takes a long time and the delay imposes enormous costs on individuals, society, and the legal system." *Nat'l Commc'ns Ass'n, Inc. v. American Telephone and Telegraph Co*, 46 F.3d 220, 225 (2nd Cir. 1995) (internal citations and quotations omitted). In *Soppe*, 679 F.3d at 643, for example, the court noted that the petition that resulted in the FCC's 2008 FCC Declaratory Ruling was initiated in 2005. Likewise, the court in *Frydman* recognized that the delay encountered waiting for an agency decision is often lengthy. *Frydman*, 2011 WL 2560221, at *7 ("Whether the FCC's… process is completed this year, next year, or in the next century, the results of that process are likely of only limited utility for the Court to decide the issues in this case. Therefore, judicial economy will be served by proceeding with this case and letting the FCC's process run its own course.").

Further, if the FCC ultimately issues a final order, which will likely be more than one year from now, that order will be subject to challenge, including a Hobbs Act appeal, just as ACA International challenged the 2015 FCC Order. The resolution of the ACA International challenge took nearly three years. As a result, it is unlikely that the issues will be resolved for at least two to three years and, even then, it is possible that a ruling by the D.C. Circuit on that challenge will be appealed to the Supreme Court. This extends the ultimate resolution of the issues by several more years.

## VI.   Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion for Reconsideration or, In the Alternative, Motion to Stay (Doc. 153).

Dated: July 10, 2018

Respectfully submitted,

*s/John A. Yanchunis*
John Yanchunis (Fla. Bar No. 324681)
MORGAN & MORGAN COMPLEX
LITIGATION GROUP
201 North Franklin Street, 7th Floor
Tampa, FL 33602
(813) 223-5505 Telephone
(813) 222-4747 Facsimile
JYanchunis@forthepeople.com

William "Billy" Peerce Howard
THE CONSUMER PROTECTION FIRM
210 South MacDill Avenue
South Tampa, FL, 33609
(813) 500-1500
Billy@TheConsumerProtectionFirm.com

Micah S. Adkins (ASB-8639-I48A)
THE ADKINS FIRM, P.C.
The Kress Building
301 19th Street North, Suite 581
Birmingham, AL 35203
(205) 458-1202 Telephone
(205) 208-9632 Facsimile
MicahAdkins@itsyourcreditreport.com

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Julie Clark
EDELMAN, COMBS, LATTURNER &
GOODWIN, L.L.C.
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200 Telephone
(312) 419-0379 Facsimile

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 10, 2018, I electronically filed a true and correct copy of the foregoing unopposed motion with the Clerk of the Court using the CM/ECF system, which will send notification to all attorneys of record in this matter.

/s/ John A. Yanchunis

23