UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SUEANN SWANEY, on behalf of
Plaintiff and the class defined below,

    Plaintiff,

v.

REGIONS BANK,
    Defendant.
_____/

CIVIL ACTION NO. 2:13-cv-00544-JHE

Class Action

## JOINT STATEMENT REGARDING CY PRES RECIPIENT TO UNCLAIMED FUNDS FROM THE SETTLEMENT

**I.    PLAINTIFF'S PROPOSAL**

In response to this Court's order directing the parties to submit a brief regarding potential recipients of any cy pres distribution from the settlement of this case (ECF No. 192), Plaintiff submits the following:

### INTRODUCTION

The cy-près doctrine first arose in courts of equity and derives from a French legal term literally meaning "so near/close" and can be translated as "as near as possible" or "as near as may be." EDITH L. FISCH, CY PRES DOCTRINE IN THE UNITED STATES 1 (1950). The cy pres doctrine originated as a rule of construction to save a testamentary charitable gift that would otherwise fail, allowing "'the next best use of the funds to satisfy the testator's intent as near as possible.'" *In re Airline Ticket Comm'n Antitrust Litig.*, 268 F.3d 619, 625 (8th Cir. 2001) (quoting *Democratic Cent. Comm. v. Washington Metro. Area Transit Comm'n*, 84 F.3d 451, 455 n. 1 (D.C. Cir. 1996)); *see also* 3 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 10:17 (4th ed. 2012).

When the original objective of the settlor or testator became impossible, impracticable, or illegal to perform, the cy-près doctrine allowed the court to amend the terms of the charitable trust as closely as possible to the original intention of the testator or settlor to prevent the trust from failing. *Id*. at 625. For example, in *Jackson v. Phillips*, 96 Mass. 539 (1867), the testator Francis Jackson bequeathed to trustees money to be used to "create a public sentiment that will put an end to negro slavery in this country." *Id*. at 541. At the time of Jackson's death in 1861, slavery was legal in the United States. Four years later, after Jackson's death, slavery was abolished by the Thirteenth Amendment, and some of Jackson's family attempted to dissolve the trust. The Supreme Judicial Court of Massachusetts disagreed and ordered that, to best fulfill Jackson's wishes, the trust should be used, cy-près, "to promote the education, support and interests of the freedmen, lately slaves, in those states in which slavery had been so abolished." *Id*. at 597.

The cy pres doctrine may have been first introduced into the class action context in 1974 in the case of *Miller v. Steinbach,* No. 66 Civ. 356, 1974 U.S. Dist. LEXIS 12981, at *3-4 (S.D.N.Y. Jan. 3, 1974) (approving the parties' settlement agreement in a case that alleged the terms of a merger were unfair and acknowledging that the court was "applying a variant of the cy pres doctrine at common law"). When class actions are settled or tried, there are times that it is not possible to distribute all the money recovered to some or all of the class members. Members of the class may be difficult to identify or find, or it may not be economically feasible to distribute the funds to them. *Fraser v. Asus Computer Int'l*, No. C 12-00652 WHA (N.D. Cal. Dec. 21, 2012). For example, the cost of distributing 50 cents to each of 6 million class members may preclude individual distribution, even though the defendant has been held accountable for cheating the class out of $3 million. In another instance, funds may not have been claimed by class members, for example, in the instance where checks have not been cashed. Under these circumstances, the cy

pres doctrine allows the funds to be distributed to a nonprofit charitable organization to support work that indirectly benefits the class and advances the public interest.

Cy pres distributions can also serve the purpose of deterrence and voluntary compliance where, for example, parties cannot agree on a beneficiary of settlement funds. *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-18400-KHV (D. Kan. Nov. 20, 2012) (determining that where parties could not agree on a third-party beneficiary for a cy pres distribution, allowing unused funds to escheat to the states "will help serve the deterrence and enforcement goals of the underlying state statutes"); *see also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990).

In certain cases, courts and parties select cy pres distributions in order to avoid (i) returning the funds to a defendant who has been found liable, or who agreed it was liable; and (ii) increasing the pro-rata share of the class members who file claims, potentially giving those class members a windfall. *Lane v. Page*, 862 F. Supp. 2d 1182, 1231 (D.N.M. 2012) (citing Martin H. Redish, Peter Julian, & Samantha Zyontz, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative Empirical Analysis*, 62 Fla. L. Rev. 617, 619 (July 2010)).

The American Law Institute's Principles of Law of Aggregate Litigation ("ALI Principles") provide guidance on the application of cy pres awards in class actions. *See* ALI Principles § 3.07 cmt. a. The ALI Principles explain that "many courts allow a settlement that directs funds to a third party when funds are left over after all individual claims have been satisfied . . . [and] some courts allow a settlement to require a payment only to a third party, that is, to provide no recovery at all directly to class members." *Id.*; *see also* 3 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 10:17 (4th ed. 2012) ("When all or part of the common

fund is not able to be fairly distributed to class members, the court may determine to distribute the unclaimed funds with a cy pres . . . approach.").

As cy pres distributions can serve to fund important charitable and social causes, courts have approved cy pres distributions to such diverse organizations as community development projects, *Johnson v. Brennan*, No. 10-CV-4712 (CM) (S.D.N.Y. Dec. 21, 2012) (approving settlement with cy pres beneficiary of the Urban Justice Center's Community Development Project); the American Red Cross, *Elliot v. Leatherstocking Corp.*, No. 3:10-CV-0934 (N.D.N.Y. Dec. 4, 2012); and legal aid organizations, *Akaosugi v. Benihana Nat. Corp.*, No. C-11-01272 WHA (N.D. Cal. Jan. 24, 2013) (approving cy pres distribution to Lawyers' Committee for Civil Rights of Northern California or to escheat to the State of California Controller's Office's unclaimed property fund). *See also Lessard v. City of Allen Park*, 470 F. Supp. 2d 781, 783–84 (E.D. Mich. 2007) ("The Access to Justice fund is the 'next best' use of the remaining settlement monies in this case, because both class actions and Access to Justice programs facilitate the supply of legal services to those who cannot otherwise obtain or afford representation in legal matters." (citation omitted)); *Jones v. Nat'l Distillers*, 56 F. Supp. 2d 355, 359 (S.D.N.Y. 1999) (listing multiple cases where a class action cy pres distribution designed to improve access to legal aid was appropriate); *In re Folding Carton Antitrust Litig.*, MDL No. 250, 1991 U.S. Dist. LEXIS 2553, at *7-8 (N.D. Ill. Mar. 5, 1991) (approving cy pres distribution of the class action "Reserve Fund" to establish a program that would, inter alia, increase access to justice "for those who might not otherwise have access to the legal system"); Thomas A. Doyle, *Residual Funds in Class Action Settlements: Using "Cy Pres" Awards to Promote Access to Justice*, FED. LAW., July 2010, at 26, 27 (providing examples of approved class action settlements with cy pres distribution components that improved access to justice for indigent litigants).

For example, a United States District Judge in the Middle District of Florida approved a cy pres award of $500,000 to The Florida Bar Foundation in its order approving the settlement of a class action which sought to return late charges that had been charged to consumers in transactions where the plaintiffs claimed the late charges were improperly assessed. *DeLeon v. Bank of America*, *N.A.*, Case No. 6:09-cv-1251-JA KRS (2015). In two related cases filed in Circuit Court in the Thirteenth Judicial Circuit for the state of Florida, the court approved an award of $200,000 to The Florida Bar Foundation in *Moore v. Avis Rent A Car System, Inc.*, case no. 03-11773 (Fla. Cir. Ct. Nov. 4 , 2004) and $100,000 in *Moore v. Budget Rent A Car*, case no. 03-11771 (Fla. Cir. Ct. Nov. 8, 2004).

Several states specifically provide for legal services programs, among others, to receive cy pres distributions, either by court rule or statute. *Cy Pres Funds for Legal Aid*, 69 Bench & B. Minn. 8 (Nov. 2012); Amanda Donlin & Ryan Caday, *Cy Pres Provision Added to Hawai'i Rules of Civil Procedure*, 15 Haw. B.J. 20, 20 (June 2011). The fundamental rationale to these rules or statutes is access to justice; legal aid organizations are always appropriate recipients of cy pres or residual fund awards in class actions because no matter what the underlying issue is in the case, every class action is always about access to justice for a group of litigants who on their own would not realistically be able to obtain the protections of the justice system. Bob Glaves & Meredith McBurney, *Cy Pres Awards, Legal Aid and Access to Justice: Key Issues in 2013 and Beyond*, 27 MGMT. INFO. EXCH. J., 24, 25 (2013); Doyle, FED. LAW., July 2010, at 27 (stating that the myriad of state statutes and rules enacted to "require residual funds to be distributed, at least in part, to legal aid projects . . . provide[s] evidence of a public policy favoring cy pres awards that serve the justice system"); *see also* Daniel Blynn, *Cy Pres Distributions: Ethics & Reform*, 25 GEO. J. LEGAL ETHICS 435, 438 (2012) (mentioning that cy pres distributions that have flowed

to specific legal aid organizations have advanced the legal field); Calvin C. Fayard, Jr. & Charles S. McCowan, Jr., *The Cy Pres Doctrine: "A Settling Concept,"* 58 LA. B.J. 248, 251 (2011) (discussing how cy pres awards made to local legal aid organizations will promote access to civil litigation, in part, by funding and coordinating a pro bono panel utilizing local attorneys); Danny Van Horn & Daniel Clayton*, It Adds Up: Class Action Residual Funds Support Pro Bono Efforts*, 45 TENN. B.J. 12, 13–14 (2009) (identifying legal aid organizations which have received residual cy pres funds because of the indirect benefit they provide to class members, which is similar to the central purpose for which Fed. R. Civ. P. 23 was designed–access to justice); Nina Schuyler, *Cy Pres Awards–A Windfall for Nonprofits*, S.F. ATT'Y, Spring 2007, at 26, 27–28 (lauding the charitable efforts the Volunteer Legal Services has provided to low-income residents); *Cy Pres Nets $162,000 for Justice Foundation*, MONT. LAW., May 2005, at 24, 24 (noting that a significant cy pres distribution to the Montana Justice Foundation will help fund legal aid for indigent individuals); Robert E. Draba, Note, *Motorsports Merchandise: A Cy Pres Distribution Not Quite "As Near As Possible,"* 16 LOY. CONSUMER L. REV. 121, 122 (2004) (recognizing that the rationale for approving cy pres distributions to two legal aid organizations, like the purpose of the class action device, is "to protect the legal rights of those who would otherwise be unrepresented"); Bradley A. Vauter, *The Next Best Thing: Unclaimed Funds from Class Action Settlements Could Benefit Low-Income Consumers by Deposits in State Bar of Michigan Access to Justice Development Fund*, 80 MICH. B.J. 68, 69 (2001) (advocating for Michigan's Access to Justice Fund as a recipient of unclaimed class action settlements because it benefits low-income consumers in Michigan).

In those states where legal service organizations have been designated to receive cy pres awards, state courts and legislatures began with the premise that cy pres distributions of residual

funds resulting from a class action settlement or judgment are proper and valid. From there, these state courts and legislatures specified appropriate cy pres recipients: charitable entities that promote access to legal aid for low-income individuals. Finally, most of these courts and legislatures then mandated a minimum baseline distribution to the pre-approved category of recipients, usually either twenty-five or fifty percent of the unclaimed class action award. Because such statutes and court rules establish a presumption that any residual funds in class action settlements or judgments will be distributed to public interest or legal aid organizations, they make clear that legal services organizations are distinct from other charitable causes that have drawn legitimate concerns regarding a lack of nexus with the interests of the class members. In other words, the statutes and rules recognize the connection between access to justice through legal aid and class action procedures.

States that have rules or laws designating legal aid organizations as recipients of cy pres awards include:

- California – CAL. CIV. PROC. CODE § 384 (2002) (permitting payment of residual class action funds to nonprofit organizations that provide civil legal services to low-income individuals);

- Hawaii – HAW. R. CIV. P. 23(f) (granting a court discretion to approve distribution of residual class action funds, specifically to nonprofit organizations that provide legal assistance to indigent individuals);

- Illinois – 735 ILL. COMP. STAT. 5/2-807 (2008) (requiring distribution of at least fifty percent of residual class action funds to organizations that improve access to justice for low-income Illinois residents);

- Indiana – IND. R. TRIAL P. 23(F)(2) (requiring distribution of at least twenty-five percent of residual class action funds to the Indiana Bar Foundation to support the activities and programs of the Indiana Pro Bono Commission and its pro bono districts);

- Kentucky – KY. R. CIV. P. 23.05(6) (requiring distribution of at least twenty-five percent of residual funds to the Kentucky IOLTA Fund Board of Trustees to support activities and programs that promote access to civil justice for low-income Kentucky residents);

- Louisiana – LOU. SUP. CT. R. XLIII (permitting funds to be disbursed by the trial court to one or more non-profit or governmental entities which support projects that will benefit the class or similarly situated persons consistent with the objectives and purposes of the underlying causes of action on which relief was based, including the Louisiana Bar Foundation for use in its mission to support activities and programs that promote direct access to the justice system);

- Maine – MAINE R. CIV. P. 23(f)(2) (providing that when an entity whose interests reasonably approximate those being pursued by the class cannot be identified, residual fees, if any, be paid to the Maine Bar Foundation);

- Massachusetts – MASS. R. CIV. P. 23(e) (permitting distribution of residual class action funds to nonprofit organizations that provide legal services to low income individuals consistent with the objectives of the underlying causes of action on which relief was based);

- Nebraska – Neb. Rev. Stat. § 25-319(2014) (The rule requires that unclaimed funds go toward legal aid services, unless the court orders that they be disbursed to further the purposes of the underlying action);

- New Mexico – N.M. DIST. CT. R. CIV. P. 1-023(G)(2) (permitting payment of residual class action funds to nonprofit organizations that provide civil legal services to low income individuals);

- North Carolina – N.C. GEN. STAT. § 1-267.10(2005) (requiring equal distribution of residual class action funds between the Indigent Person's Attorney Fund and the North Carolina State Bar for the provision of civil services for indigents);

- Pennsylvania – PA. R. CIV. P. 1716 (directing distribution of at least fifty percent of residual class action funds to the Pennsylvania IOLTA Board to support activities and programs which promote the delivery of civil legal assistance, permitting distribution of the balance to an entity that promotes either the substantive or procedural interests of the class members);

- South Dakota – S.D. CODIFIED LAWS § 16-2-57 (2008) (requiring at least fifty percent of residual funds be distributed to the Commission on Equal Access to Our Courts);

- Tennessee – TENN. CODE ANN. § 16-3-821 (2009) (creating the Tennessee Voluntary Fund for Indigent Civil Representation and authorizing the fund to receive contributions of unpaid residuals from settlements or awards in class action litigation in both federal and state courts);

- Washington – WASH. SUPER. CT. CIV. R. 23(f)(2) (requiring distribution of at least twenty-five percent of residual class action funds to the Legal Foundation of Washington to support activities and programs that promote access to the civil justice system for low income residents).

Class action litigation has become an important device for resolving a wide range of disputes between individual plaintiffs and corporate defendants. Cy pres awards of undistributed

class action settlement residue are an important part of the settlement process. Distributing funds to appropriate recipients is a practical variant of the cy pres device long recognized in trust law and is generally accepted as preferable to returning undistributed funds to the settling defendants or escheat of those funds to the state.

Based upon review of the purpose of cy pres and the needs served by legal aid organizations, Plaintiff recommends that any undistributed funds be directed to the leading legal aid organization in those states where Defendant does business for use in providing consumer education and assistance in dealing with unwanted texts and calls to their cell phones. The states in which Defendant does business are Alabama, Arkansas, Florida, Georgia, Illinois, Indiana, Iowa, Kentucky, Louisiana, Mississippi, Missouri, North Carolina, South Carolina, Tennessee and Texas.

In order to facilitate the distribution of funds in the states identified above, and as there exist in each of these states organizations whose respective charges are to support legal aid organizations through Interest on Lawyers Trust Accounts (IOLTA), Plaintiff further suggests that the IOLTA organizations in each of the states identified above be the recipients of any cy pres funds, and that any such funds be divvied equally among the organizations in those states. The American Bar Association has a commission that has a clearinghouse of useful information: https://www.americanbar.org/groups/interest_lawyers_trust_accounts/overview/.   Additional information on IOLTA can be found at  https://www.iolta.org/

If the Court would prefer to direct the funds to a national organization with programs or initiatives dealing with robocalls or texts, then Plaintiff would suggest as worthwhile recipients any or all of the following organizations:

Consumer Action, https://www.consumer-action.org/about/, an organization whose mission is using multilingual consumer education materials, community outreach and issue-focused advocacy, Consumer Action empowers low- and moderate-income, limited-English-speaking, and other underrepresented consumers nationwide to financially prosper through education and advocacy. Consumer Action provides education regarding robocalls, for example : https://www.consumer-action.org/news/articles/the-robocall-scourge-spring-2019.

Electronic Privacy Information Center (EPIC), https://epic.org/, is a public interest research center in Washington, DC. EPIC was established in 1994 to focus public attention on emerging privacy and civil liberties issues and to protect privacy, freedom of expression, and democratic values in the information age. EPIC pursues a wide range of program activities including policy research, public education, conferences, litigation, publications, and advocacy. EPIC routinely files amicus briefs in federal courts, pursues open government cases, defends consumer privacy, organizes conferences for NGOs, and speaks before Congress and judicial organizations about emerging privacy and civil liberties issues. EPIC works closely with a distinguished advisory board, with expertise in law, technology and public policy. EPIC maintains one of the most popular privacy web sites in the world - epic.org. Illustrative of its advocacy for robust telephone privacy protections for consumers, EPIC has provided testimony and comment to the FCC, for example https://epic.org/2019/03/new-fcc-regulation-of-robocall.html, and filed an amicus brief in support of the FCC in the case of *ACA International v FCC*, https://epic.org/amicus/tcpa/aca-international/EPIC-Amicus.pdf. Before Congress, it has supported strengthening litigation by providing expert analysis, comments and multiple amicus briefs. https://epic.org/2019/07/house-passes-bill-to-combat-ro.html. Many other examples of its

advocacy in support of privacy and consumer protection against the vary purpose of the TCPA can be found at its website, https://epic.org/.

The National Consumer Law Center (NCLC) https://www.nclc.org/about-us/about-us.html), is a not for profit organization that uses its expertise in consumer law and energy policy to work for consumer justice and economic security for low-income and other disadvantaged people, including older adults, in the United States. NCLC's expertise includes policy analysis and advocacy; consumer law and energy publications; litigation; expert witness services, and training and advice for advocates. NCLC works with nonprofit and legal services organizations, private attorneys, policymakers, and federal and state government and courts across the nation to stop exploitative practices, help financially stressed families build and retain wealth, and advance economic fairness. In addition to consumer education about robocalls and how to address them, https://www.nclc.org/search_gcse?q=robocalls, the NCLC has provided testimony and comment to Congress on the topic of robocalls, for example: https://www.nclc.org/images/pdf/energy_utility_telecom/robocalls/testimony-escalating-problem-of-unwanted-robocalls.pdf

Consumer Federation of America https://consumerfed.org/, is an association of non-profit consumer organizations that was established in 1968 to advance consumer interests through research, advocacy, and education. Today, nearly 300 of these groups participate in the federation and govern it through their representatives on the organization's Board of Directors. The organization has been active before Congress and the FCC in advocating additional protection or consumers against robocalls. For example, see https://consumerfed.org/?s=robocalls.

Neither Mr. Yanchunis nor anyone in his firm sit on the boards or committees of any of the organizations named above.[1]

## II. DEFENDANT'S PROPOSAL

Regions agrees with Plaintiff's position to the extent it proposes the remaining settlement funds go to IOLTA organizations in the states in which Regions operates. Regions also proposes two additional local legal aid organizations as cy pres recipients: The Legal Aid Society of Birmingham and Legal Services of Alabama. Both organizations provide legal services to low income adults in Birmingham and/or the surrounding areas. Legal Services Alabama also does consumer advocacy work. Regions believes both organizations comport with the Court's discussion at the last status conference.

Dated: January 14, 2020         Respectfully submitted,

*s/John A. Yanchunis*
John Yanchunis (Fla. Bar No. 324681)
MORGAN & MORGAN COMPLEX LITIGATION GROUP
201 North Franklin Street, 7th Floor
Tampa, FL 33602
(813) 223-5505 Telephone
(813) 222-4747 Facsimile
JYanchunis@forthepeople.com

**Lead Class Counsel**

Dated: January 14, 2020         Respectfully submitted,

*/s/ Samrah R. Mahmoud*
Steven D. Allison (admitted pro hac vice)
Steven.allison@troutman.com
Samrah R. Mahmoud (admitted pro hac vice)
Samrah.mahmoud@troutman.com

---

[1] In the interest of full disclosure, however, it should be noted that Mr. Yanchunis does currently represent NCLC as Amicus Counsel in the case *Muransky v. Godiva Chocalatier, Inc*., Case Nos. 16-16486, 16-16783 (11th Circ.), currently pending *en ban*c before the Eleventh Circuit Court of Appeals.

Troutman Sanders LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614
Telephone: (949) 622-2703

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 14, 2020, I electronically filed a true and correct copy of the foregoing unopposed motion with the Clerk of the Court using the CM/ECF system, which will send notification to all attorneys of record in this matter.

*/s/ John A. Yanchunis*