FILED
2020 Feb-10  PM 04:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

SUEANN SWANEY, on behalf of
Plaintiff and the class defined below,

      Plaintiff,                          CIVIL ACTION NO. 2:13-cv-00544-JHE

v.                                      Class Action

REGIONS BANK,

      Defendant.

———————————————————————/

———————————————————————————————————————

## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES, AND FOR SERVICE AWARD TO CLASS REPRESENTATIVE AND SUPPORTING MEMORANDUM OF LAW SUPPORT

———————————————————————————————————————

After nearly seven years of prosecuting this complex action and having successfully negotiated a Settlement affording non-reversionary benefits to the Settlement Class of $2,805,200, S.A. ¶¶ 1.38, 3.1, Plaintiff requests the Court to award Plaintiff's Counsel $841,560 in fees, representing 30% of the Settlement Fund—which is 28.7% of the total cash value of the Settlement once the separately funded costs of notice and settlement administration are included—and $35,327.51, in costs and expenses.[1]  Plaintiff also requests that the Court grant Settlement Class Representative SueAnn Swaney ("Plaintiff" or "Class Representative") a Service Award of $10,000, reflecting her extraordinary commitment to this case.

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and Release ("Settlement" or "S.A."), which was previously filed at Doc. 109-1.

The requested relief is demonstrably reasonable and appropriate and amply supported by the record.[2]  The Settlement expressly reflects the parties' arms-length and separately negotiated agreement to the relief sought herein.  This factor alone merits great weight and consideration by the Court in ruling on Plaintiffs' motion.  Further, Plaintiff seeks a fee award that is eminently reasonable under the controlling "percentage of the benefit" fee-assessment method adopted by the Eleventh Circuit in *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 774-75 (11th Cir. 1991).[3]  Plaintiff also seeks a cost and expense reimbursement of $35,327.51, comprising out-of-pocket costs and expenses reasonably advanced by Plaintiff's Counsel in prosecuting this action to final and successful resolution.

Accordingly, Plaintiff, SueAnn Swaney ("**Plaintiff**" or "**Class Representative**"), respectfully submits this Motion for Attorneys' Fees, Costs, and Expenses and Service Award and Incorporated Memorandum of Law in Support.

## I.      INTRODUCTION

This case involves alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b) ("**TCPA**"), which prohibits the use of automatic telephone dialing systems ("**ATDS**") to call or text cellular telephones unless the caller has the "prior express consent" of the called party to make such calls.  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  Plaintiff alleges that Defendant, Regions Bank ("**Defendant**" or "**Regions**") violated the TCPA by sending text messages to cellular

---

[2]  Plaintiff specifically incorporates by this reference Plaintiff's Motion for Preliminary Approval (including attachments and declarations) ("Preliminary Approval Motion"), (Doc. 190).

[3]  Under *Camden 1*, the benefit of the fund analysis controls; the loadstar/multiplier analysis is improper, although some courts use the latter valuation to cross-check the former.  *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1302 (11th Cir. 1999) ("[W]hile we have decided in this circuit that a loadstar calculation is not proper in common fund cases, we may refer to that figure for comparison.").   As discussed infra, the fee request is well supported by the loadstar/multiplier method, which may be referenced as a cross-check to the percentage of the benefit calculation.

telephone numbers through the use of an ATDS without the prior express consent of consumers who are the current holders of the cellular telephone numbers. Defendant denies any liability and has asserted substantial defenses.

## II.   BACKGROUND

### A.   Nature of the Claims and Procedural History

Ms. Swaney filed this action on March 21, 2013, accusing Regions of violating the TCPA by sending text alert messages to her cell phone without consent. On April 15, 2013, Regions filed a motion to stay (Doc. 6), which, on June 7, 2013, was granted, awaiting the Eleventh Circuit Court of Appeals' decision in *Breslow v. Wells Fargo Bank, N.A.*, Case No. 12-14564, to resolve the "called party" issue. After extending the stay on several occasions, by order of May 9, 2014, the Court lifted the stay in light of the Eleventh Circuit's holding on the "called party" issue in *Osorio v. State Farm Bank, F.S.B.*, No. 13-10951, 2014 WL 1258023 (11th Cir. Mar. 28, 2014), and the Court permitted "limited discovery on (a) whether Regions' system is an 'automatic telephone dialing system.'" (Doc. 27). On February 9, 2015, both parties filed cross motions for summary judgment, (Docs. 59 and 62), as to whether the accused system constitutes an ATDS under the TCPA. On July 13, 2015, Magistrate Judge England issued a Report and Recommendation that Plaintiff's motion for summary judgment (Doc. 59) be granted, and that Defendant's motion for summary judgment (Doc. 62) be denied. (Doc. 117) ("R&R").

On November 18, 2015, this Court entered a Memorandum Opinion and Order, recognizing that the Magistrate Judge's R&R did not address the FCC's recently released ruling, *In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015) ("2015 FCC Order'), and referred the matter back to the Magistrate Judge for further proceedings. (Doc. 121).

On April 14, 2016, Magistrate Judge England entered his Supplemental Report and Recommendation. (Doc. 134) ("Supplemental R&R"), which found that the system at issue was an ATDS under the TCPA.  Thus, Magistrate Judge England again recommended that Plaintiff's motion for partial summary judgment be granted and that Regions' motion for summary judgment be denied.  On April 27, 2016, Regions filed its Objections to the Supplemental R&R. (Doc. 135). Also on April 14, 2016, Magistrate Judge England entered an order denying Regions' motion for another stay, (Doc. 133), to which Regions also objected.  (Doc. 136).

Following a hearing, on May 13, 2016, the Court stayed this matter for a second time "pending a ruling by the D.C. Circuit Court of Appeals in *ACA Int'l v. FCC*, Case No. 15-1211 (the lead case in Consolidated Appeals) reviewing the FCC's 2015 Order."  (Doc. 139).  As directed by that Order, on April 23, 2018, the parties filed a status report upon a decision adjudicating the *ACA* case.  (Doc. 145).  Pursuant to the Court's briefing schedule (Doc. 146), the parties submitted supplemental arguments "addressing the effect of the *ACA* decision" on the still pending objections to the Supplemental R&R.  (Docs. 147–150).

On May 22, 2018, this Court overruled Regions' objections and directed summary judgment be entered in Plaintiff's favor on the ATDS issue.  (Doc. 153 at 3–4) (hereinafter "Summary Judgment Order").  Regions then sought reconsideration of the Summary Judgment Order, (Doc. 156), which, on August 6, 2018, was denied (Doc. 168).  The order denying reconsideration also directed certain limited discovery to proceed and further directed a status report be filed on December 10, 2018. (Doc. 168).  Pursuant to the parties' December 10, 2018 status report (Doc. 171), the Court directed that a further report be filed on or before February 11, 2019, detailing the status of the case, discovery, and mediation, and including a Rule 26(f) discovery plan.  (Doc. 172).

Following the parties' submission of the February Status Report (Doc. 175) and Discovery Plan (Doc. 176), the Court entered a Scheduling Order on February 19, 2019. (Doc 177).

As noted in the parties' February Status Report (Doc. 175), the parties' engaged in a mediation with Mediator Rodney Max on July 30, 2019. At all times, the parties' negotiations were adversarial, non-collusive, and conducted at arm's length. The mediation was successful and resulted in a settlement which has been memorialized in the Class Action Settlement Agreement ("**Settlement**") (Doc. 190-1).

On December 11, 2019, the Court held a telephonic hearing regarding the Motion, (Doc. 191–192), and on December 20, 2019, the Court granted preliminary approval of the Settlement. (Doc. 194).[4]

### B.  The Settlement

The Settlement requires the establishment of a common fund in the amount of $2,805,200 to be funded by Defendant on a non-reversionary basis ("**Settlement Fund**"). S.A. ¶¶ 1.38, 3.1. Class Members who submit a valid and timely claim form will receive a check for $50.00. S.A. ¶ 3.3(a). If the funds available to pay claims in the amount of $50.00 to each Class Member who files a claim after such funds are reduced by the payment of the Service Award and the Fee Award are insufficient to pay claims in the amount of $50.00 each, the claims of those class members who file a claim shall be reduced and paid on a *pro rata* basis. *Id.* Settlement Class Members who are eligible to receive a second distribution shall not be entitled to receive more than the maximum that he or she could have received under the TCPA for a single text message violation. *Id.*

---

[4] Clarification of certain approval related deadlines was sought on December 31, 2019, (Doc. 195), and granted on January 3, 2020, (Doc. 196).

The Settlement also provides for a robust notice and administration plan, including direct mail notice, a Settlement Website, a toll-free telephone number, and a form of supplemental notice either by telephone or internet. Importantly, the administrative fees, costs, and expenses of the Settlement Administrator ("Settlement Administration Expenses") shall be paid exclusively by Defendant as such expenses are incurred, separate and apart from the Settlement Fund, except to the extent a second distribution to Class Members will be required, which will be paid from the Settlement Fund.   *See* S.A. ¶¶ 1.33, 1.38, 3.1, 3.3, 6.2.   This amounts to an additional approximately $125,000 in benefit to the Class that otherwise would have come from the Settlement Fund and reduced the amounts available to pay claims.  *See* Declaration of John Yanchunis, attached hereto as **Exhibit A**, at ¶ 10 (hereinafter "Yanchunis Decl.").

## III.   ARGUMENT

### A.  The Court Should Afford Substantial Weight to the Settlement on Fees and Costs.

The  Settlement  expressly  reflects  the  parties'  arms-length  and  separately  negotiated agreement to the relief sought herein.  The Settlement provides that Class Counsel may apply to the Court for a fee award of up to 30% of the Settlement Fund, in addition to reimbursement of the litigation costs and expenses incurred in this Action, all of which shall be paid from the Settlement Fund subject to approval from the Court.  S.A. ¶ 13.1.  The parties negotiated these attorneys' fees, costs and expenses only after reaching agreement on all the material terms of the Settlement.  (Doc. 190-2 ¶ 15).

The Court must independently evaluate the requested fees, costs and expenses and is certainly not bound by the parties' agreement in the Settlement regarding fees, costs and expenses. However,

> [f]ee agreements between plaintiffs and defendants in class actions
> are  encouraged,  particularly  where,  as  here,  evidence  has  been

> presented that the attorneys' fees were negotiated after the terms of the Settlement have been agreed to by the parties. In the absence of any evidence of collusion or detriment to the class, this Court will give substantial weight to a negotiated fee amount, assuming that it represents the parties' "best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees." This weight is particularly appropriate when, as here, no objection has been raised to the fee award and the amount of fees is entirely consistent with a reasonable fee award under the circumstances of the case.

*In re Liberty Nat'l Ins. Cases*, 1:02-CV-2741-UWC, 2006 WL 8436814, at *22 (N.D. Ala. Mar. 31, 2006) (citations omitted) (quoting *Elkins v. Equitable Life Ins. Co.*, No. CivA96-296-Civ-T-17B, 1998 WL 133741 at *34 (M.D. Fla. Jan. 27, 1998)).

Thus, the Settlement is entitled to great weight because it resulted from adversarial negotiations after the merits were decided. *See, e.g., id.*; *Strube v. Am. Equity Inv. Life Ins. Co.*, 2006 WL 1232816 at *2 (M.D. Fla. May 5, 2006); *Elkins*, 1998 WL 133741 at *34; *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001); *Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944 at *28 (M.D. Tenn. Aug. 11, 1999) (internal citations omitted); *see also, e.g.*, *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees."). Citing *Manners* with approval, courts have held:

> The Court finds that the parties' agreement with regard to the payment of fees and expenses was not reached until after a settlement had been reached in principle on its other terms and that the agreement was not the product of collusion or fraud. As a result, the parties' agreement is entitled to substantial weight.

*James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm. Inc.*, 3:07-CV-598-TJC-MCR, 2012 WL 12952592, at *2 (M.D. Fla. July 30, 2012) (*Hinson I*); *accord Bastian v. United Servs Automobile Ass'n*, *et al*, No. 3:13-cv-1454-TCJ-MCR at p. 32 (M.D. Fla. Nov. 11, 2017)

("[T]he amount of attorneys' fees and costs was separately negotiated from the settlement of the Class Claims, and the award of attorneys' fees and costs does not diminish the amount to be paid to Class Members under the Settlement Agreement.").

Practical and prudential considerations warrant judicial deference toward the Settlement in this case. First, there is no one reasonable fee or cost amount mandated by applicable law. The notion of reasonableness encompasses a range of amounts about which there can be a legitimate difference of opinion. As long as the requested fee is one that the Court agrees fall within the range of reasonableness, it should be approved. Further, the competing pressures on the parties served as a substitute for the incentives that normally drive private fee negotiations, ensuring that the agreed upon fee did not constitute a windfall. *See generally In re Continental Illinois Sec. Lit.,* 962 F.2d 566, 572-73 (7th Cir. 1992); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 720 (5th Cir. 1974).

### B.  The Requested Fee is Clearly Reasonable under the Common Fund Doctrine.

Courts have long recognized the common fund doctrine, under which attorneys who create a recovery benefitting a group of people may be awarded their fees and costs from the recovery. *See, e.g.*, *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). In a class case as this one, the Eleventh Circuit has directed that the fee be based upon a percentage of the class benefit. *Camden I,* 946 F.2d at 774-75. Courts have a great deal of discretion in choosing the proper percentage. "There is no hard and fast rule … because the amount of any fee must be determined upon the facts of each case." *Id.* at 774. The court should look at such factors as the time required reaching a settlement, whether there are any substantial objections, the economics of a class action, the criteria set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) and any other "unique" circumstances. *Camden 1* at 775. In *Camden I,* the Eleventh Circuit

recognized that a fee award of 50 percent of the benefit is the upper limit; that the majority of fee awards fall between 20 and 30 percent. *Camden I*, 946 F.2d at 774-75. As stated in *Camden I*, 25 percent serves as the default "benchmark". *Id.* at 774-75.

Here, Class Counsel seek a fee award of 30% of the Settlement Fund—or $841,560. However, in light of the separate payment for costs of notice and administration, this requests amounts to only 28.7% of the total benefits provided to the Class.

Specifically, for purposes of determining fees under the controlling percentage of the benefit fee-assessment method, the total value of the common fund or class benefit, both monetary and nonmonetary relief, are considered. *Camden I*, 946 F.2d at 771; *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 (11th Cir. 2015). Thus, notice and administration costs to be paid separately by defendants should also be included in valuing the total benefit to the class and hence the total fund from which Plaintiff's fee request is judged.[5] This makes sense because if the notice and

---

[5] *See, e.g.*, *Chieftain Royalty Co. v. XTO Energy Inc.*, CIV-11-29-KEW, 2018 WL 2296588, at *2 (E.D. Okla. Mar. 27, 2018) (noting that the "750,000 in administration, notice and distribution costs . . . is a significant benefit to the Settlement Class as such funds would otherwise be paid from the Gross Settlement Fund"); *In re classmates.com Consol. Litig.*, C09-45RAJ, 2012 WL 3854501, at *7 (W.D. Wash. June 15, 2012) ("Class counsel argues that the common fund should also include about $1.5 million in settlement administration costs that Classmates has paid or will pay . . . . Because Classmates' payment of these costs relieves the class of the burden of these expenses, the court may consider them as part of the common fund."); *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 09 C 7670, 2011 WL 13257072, at *5 (N.D. Ill. Nov. 30, 2011) ("[T]he common-fund doctrine applies to the entire sum recovered by class counsel for purposes of settling a class action lawsuit. Because the costs of class action litigation necessarily include the costs of notice, administration of the settlement fund, incentive awards, and attorneys' fees, and because the settling defendants in these types of lawsuits have agreed to pay these costs 'in exchange for release of [their] liability,' the court finds that such costs are reasonably viewed as having been paid 'for the benefit of the class.'") (citations omitted); *cf, e.g.*, *Johnston v. Comerica Mtg. Corp.*, 83 F.3d 241, 245-46 (8th Cir. 1996) ("Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."); *David v. American Suzuki Motor Corp.*, 2010 WL 1628362 at *8 n.14 (S.D. Fla. Apr. 15, 2010) ("While I recognize that the fee award requested by Class Counsel will be paid separately by Defendants and is not drawn from a 'common fund' in the traditional sense, there is authority directing 'district courts to exercise their equitable jurisdiction to review counsel-fee arrangements negotiated in

administration costs were not paid separately, class members would have to pay them directly out of the fund. *Manual for Complex Litigation* § 21.7 at 335 (4th ed.) ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney's fees and expenses … the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class."). Accordingly, Plaintiff's fee request falls below the Eleventh Circuit's articulated 30% upper benchmark.

### C.  The *Camden I* Factors Clearly Support the Requested Fee.

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class-action counsel are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Camden I*, 946 F.2d at 772 n. 3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These twelve factors are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action."  *In re*

---

connection with class-action settlements—even where the counsel fees are not taken from a common fund but are instead paid separately by a class-action defendant.'") (quoting *Duhaime v. John Hancock Mut. Life Ins. Co*., 183 F.3d 1, 4 (1st Cir.1999)).

*Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). These factors are merely guidelines, and the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Id.* (quoting *Walco Inv., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997)). The *Camden I* factors are discussed below.

### 1. Time and Labor Involved

As recounted above, and as set forth in the supporting declarations herewith of Plaintiffs' Counsel (**Exhibits A-F**), Plaintiffs' Counsel expended significant effort to achieve the $2.8 million settlement for the Class. Plaintiffs' Counsel have litigated this action for nearly seven years. They have engaged in extensive motion practice and discovery. *Id.* Class Counsel reached a hard-fought settlement only after mediation. *Id.*

In performing the aforementioned work on behalf of the Class, Class Counsel spent over 1,400 hours of attorney and other professional time without any assurance that the extraordinary commitment of time and effort to this case would result in the payment of any fee. Class Counsel should be amply compensated for the substantial time and labor invested to obtain this outstanding settlement on behalf of the Class and should not be punished for its persistence and efficiency in achieving a positive result.

### 2. The Novelty and Difficulty of the Questions Involved Required the Skill of a Highly Talented Team of Attorneys.

This factor strongly favors an award of the fees requested. "Class actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome." *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008). That this dispute presents complex issues as outlined above is evidenced not only by its protracted history, but also by the caliber of lawyers representing the parties. *See Walco*, 975 F. Supp. at 1472 (explaining that "[g]iven the quality of defense counsel from

prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *see also Camden I*, 946 F.2d at 772 n. 3 (in assessing the quality of representation by Class Counsel, Court also should consider the quality of their opposing counsel.); *Johnson.*, 488 F.2d at 718; *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). "The fact that this level of legal talent was available to the Settlement Class is another compelling reason in support of the fee requested... In the private marketplace, as pointed out by several of Plaintiffs' experts, counsel of exceptional skill commands a significant premium." *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1363 (S.D. Fla. 2011). Here, Class Counsel enjoy a strong reputation in the area of complex and class action litigation. (Doc. 109-1 ¶ 21, and its Composite Exh. 1). Plaintiffs' Counsel have successfully litigated and settled similar cases across the country, and, in this case, have been challenged by highly experienced and skilled counsel who deployed very substantial resources on Defendants' behalf.

### 3. The Claims Against Defendants Entailed Considerable Risk.

Prosecuting these claims was a significant undertaking. The risks incurred in pursuing the case were great. "The simple fact is that there were a larger than usual number of ways that Plaintiffs could have lost this case, and they still managed to achieve a successful settlement. A significant amount of the credit for this must be given to Class Counsel's strategy choices, effort and legal acumen." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364. "A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk." *In re Sunbeam*, 176 F. Supp. 2d at 1336.

Here, Defendants maintained (and still maintain) that the challenged devices were not ATDS. That precise issue played out before the FCC and D.C. Circuit Court of Appeals multiple times during the lifespan of this case, with each subsequent iteration potentially blowing a death

knell to this matter.  Indeed, since settling this case and obtaining preliminary approval of the Settlement, the Eleventh Circuit has also weighed-in on the ATDS issue, with a ruling that could have further frustrated Plaintiff's efforts here.  *See Glasser v. Hilton Grand Vacations Co., LLC*, 18-14499, 2020 WL 415811, at *2-8 (11th Cir. Jan. 27, 2020).  However, Plaintiff's Counsel's skill, and dogged determination, in pursuing this matter has led to an excellent result for the Class, despite the significant risks this matter faced.  Accordingly, this factor also militates in favor of awarding Class Counsel the requested fee amount.

### 4.    Class Counsel Assumed Substantial Risk in Pursuing this Action on a Pure Contingency Basis, and Were Precluded from Other Employment.

Class Counsel prosecuted this case entirely on a contingent fee basis. Yanchunis Decl. ¶ 5. As such, they assumed a significant risk of nonpayment or underpayment.  Numerous cases recognize the importance of this factor in determining the fee award. "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified*, 803 F.2d 1135 (11th Cir. 1986); *York v. Alabama State Ed. of Education*, 631 F. Supp. 78, 86 (M.D. Ala. 1986).

As Judge King has observed:

Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer... A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a

13

class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548. Plaintiff's Counsel spent very substantial time litigating this case that they could not spend on other matters. Thus, consideration of this factor also justifies the requested fee.

### 5. The Fee Requested Comports with Customary Fees Awarded in Similar Cases.

An award of 28.7% is below the upper-benchmark and less than the growing trend in this Circuit of 33 1/3% or above.[6]  Likewise, such an award comports with other fee awards in similar cases.[7]  Accordingly, Class Counsel's requested fee award of $841,560, or 30% of the Settlement Fund, and 28.7% of the total cash value is appropriate.

---

[6] *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33 1/3 % of settlement of $40 million); *Seghroughni v. Advantus Rest, Inc.*, No. 12-2000, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee ... which is one-third of the settlement fund ... is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Wolff v. Cash 4 Titles*, No. 03-22778, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Morefield v. NoteWorld, LLC*, No. 10-117, 2012 WL 1355573 (S.D. Ga. April 18, 2012) (awarding fees of 33 1/3% of the $1,040,000 settlement fund in addition to expenses); *Atkinson v. Wal-Mart Stores, Inc.*, No. 08-691, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third of the maximum $2,020,000 common fund); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-1317, (Doc. 1557 at 8-10) (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 95-2152, (Doc. 626 at 7) (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory).

[7] *See, e.g.*, *Med. & Chiropractic Clinic, Inc. v. KMH Cardiology Centres Inc.*, 8:16-CV-644-T-23JSS, 2017 WL 11046397, at *2 (M.D. Fla. Nov. 17, 2017) (awarding 30% fee in TCPA class case); *James v. JPMorgan Chase Bank, N.A.*, 8:15-CV-2424-T-23JSS, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (approving a 30% fee in TCPA class action); *Wreyford v. Citizens for Transp. Mobility, Inc.*, 1:12-CV-2524-JFK, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014) (awarding 33 1/3 %  in TCPA class case); *see also Cooper v. Nelnet, Inc.*, 6:14-CV-314-ORL,

      **6.**   **The Remaining *Camden I* and Other Factors Favor Approval of The Fee Requested.**

The remaining *Camden I* factors also support Plaintiff Counsels' fee request. The burdens of this litigation and the results obtained on behalf of Plaintiff and the Class weigh in favor of the fee requested. The fee request is firmly rooted in "the economics involved in prosecuting a class action." *In re Sunbeam*, 176 F. Supp. 2d at 1333. "[P]roper incentives must be maintained to insure that attorneys of this caliber are available to take on cases of significant public importance like this one." *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d at 1368.

In addition, the fact that the parties negotiated arduously and at length during the mediation session, and that no class member has objected to the Settlement or its provision on attorneys' fees, costs, and expenses, weighs in favor of the fee requested. *See, e.g.*, *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204 (S.D. Fla. 2006) ("The lack of significant objection from the Class supports the reasonableness of the fee request.") (collecting cases); *Gevaerts v. TD Bank*, No. 14-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015).

**D.  A Lodestar Analysis Confirms the Reasonableness of the Requested Fee.**

Under *Camden I*, use of the lodestar analysis is improper in common fund cases. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362-63 (declining to perform lodestar cross-check because *Camden I* "mandated the exclusive use of the percentage approach in common fund cases" and noting that "courts in this Circuit regularly award fees . . . without discussing lodestar at all") (internal quotations marks, brackets and emphasis omitted). Still, it has been used as a "cross-check" to the percentage-of-the-fund analysis. *Waters*, 190 F.3d at 1298 ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may

---

2015 WL 4623700, at *2 (M.D. Fla. July 31, 2015) (awarding 27.78% of the Settlement Fund in TCPA class case that had only been pending for one and a half years).

refer to that figure for comparison."); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1343 (S.D. Fla. 2007) (noting that "[s]ome courts use the lodestar method as a cross-check of the percentage of the fund approach") (citing *In re Sunbeam*, 176 F. Supp. 2d at 1336).

To determine the lodestar amount, the "court must multiply the number of hours reasonably expended by a reasonable hourly rate." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "After the lodestar is determined . . ., the court must next consider the necessity of an adjustment for results obtained." *Id.* at 1302. "If the results obtained were exceptional, then some enhancement of the lodestar might be called for." *Id.* (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711 (1987)). "[E]nhancement may be appropriate if there is a risk of non-recovery of a fee in the case," such as in a contingent fee arrangement. *Id.*

The following chart summarizes the time and hourly rates entered by attorneys and the professional staff of the firm in this matter:

| Name | Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| **MORGAN & MORGAN COMPLEX LITIGATION GROUP** | | | |
| John Yanchunis, Lead Partner | $950 | 183.0 | $173,185.00 |
| Patrick Barthle, Attorney | $658 | 152.5 | $100,345.00 |
| Jonathan Cohen, Attorney | $742 | 8.6 | $6,381.20 |
| David Reign, Investigator | $300 | 2.4 | $720.00 |
| Lorraine Carreiro, Paralegal | $202 | 9.3 | $1,878.60 |
| Jennifer Cabezas, Paralegal | $202 | 5.0 | $1,010.00 |
| **Total** | | **360.8** | **$283,519.80** |
| **THE CONSUMER PROTECTION FIRM, PLLC** | | | |
| William "Billy" Peerce Howard | $600 | 344 | $206,400.00 |
| Amanda J. Allen | $375 | 29 | $10,875.00 |
| Nancy Sauer | $200 | 28 | $5600 |
| Charles Schropp | $425 | 108 | $45,900.00 |
| **Total** | | **509** | **$268,775.00** |

| EDELMAN, COMBS, LATTURNER & GOODWIN, LLC | | | |
|---|---|---|---|
| Cathleen M. Combs | $700 | 254.30 | $178,010.00 |
| Daniel A. Edelman | $700 | 13 | $9,100.00 |
| James O. Lattumer | $700 | 6.2 | $4,340.00 |
| Michelle R. Teggelaar | $500 | .8 | $400.00 |
| Heather A. Kolbus | $500 | 13.5 | $6,750.00 |
| Julie Clark | $500 | 7.2 | $3,600.00 |
| Francis R. Greene | $500 | .1 | $50.00 |
| Catherine C. Charpie | $290 | 44 | $12,760.00 |
| Emiliya G. Farbstein | $230 | 25.2 | $5,796.00 |
| Michelle A. Alyea | $230 | 1 | $230.00 |
| Sharon G. Nissim | $230 | 16.30 | $3,749.00 |
| Paralegals | $125 | 17.7 | $2,212.50 |
| **Total** | | **399.3** | **$206,717.50** |
| THE ADKINS FIRM, P.C. | | | |
| Micah S. Adkins | $400 | 197.3 | $78,920.00 |
| Sarah E. Baber | $375 | 8.0 | $3,000.00 |
| Paralegal | $150 | 2.4 | $360.00 |
| Law Clerk | $75 | .2 | $15.00 |
| **Total** | | **207.9** | **$82,295.00** |
| COMBINED FIRM TOTALS | | | |
| | | **1,417** | **$841,307.30** |

Here, in the nearly seven years that Plaintiff's Counsel have been prosecuting their claims against Defendant in various forums, they have expended over 1,400 hours. Yanchunis Decl. ¶ 6; W. Howard Decl. ¶ 5; Adkins Decl. ¶ 14; Combs Decl. ¶ 8.a; Allen Decl.; Schropp Decl. (attached hereto as exhibits A through F). At their current hourly rates, the lodestar is $841,307.30. *Id*. Of course, as this Court knows, Plaintiff's Counsel will continue to invest significant time in this matter through the settlement administration process, preparing the motion for final approval, responding to any objections, preparing for and attending the final approval hearing, and defending the Court's Final Judgment on any subsequent appeals. Yanchunis Decl. ¶ 5. The additional time will certainly bring the total loadstar closer (if not exceeding, in the event of an appeal) to the $841,560.00 requested.

17

Had there been no common fund in the proposed Settlement and attorneys' fees were determined based solely on the lodestar method, Class Counsel would have sought a "substantial multiplier" to apply to their lodestar for reasons earlier discussed, in particular, the result achieved for the Class, the complexity of the dispute and issues Class Counsel had to skillfully address, and the contingent nature of Class Counsel's fee arrangement. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 04-3066, 2012 WL 12540344, at *5 (N.D. Ga. Oct. 26, 2012) (applying a multiplier of four times lodestar to "reflect such considerations as (1) the contingent nature of the fee; (2) the risk of the case (*i.e.*, the likelihood of success viewed at the tune of the filing); (3) the quality of representation; and (4) the result achieved," and surveying cases applying multipliers of approximately 4 to 9 times lodestar). This would further dwarf the fees requested under the percentage-of-the-fund approach and the proposed Settlement.

### E. Class Counsel's Expenses Are Reasonable.

In addition to attorneys' fees, Plaintiff's Counsel seek reimbursement of the costs and expenses incurred in prosecuting this case against Defendant. Since the filing of the case, and as of this filing, they have incurred expenses in excess of $35,000. The following chart breaks down the costs expended by Plaintiff's Counsel per firm:

| COSTS AND EXPENSES | |
|---|---|
| **Firm** | **Amount** |
| Morgan And Morgan Complex Litigation Group | $25,619.16 |
| The Consumer Protection Firm | $1,088.89 |
| Edelman, Combs, Latturner & Goodwin, LLC | $4,946.12 |
| The Adkins Firm | $3,673.34 |
| **Total** | **$35,327.51** |

Yanchunis Decl. ¶ 7; Howard Decl. ¶ 6; Adkins Decl. ¶ 15; Combs Declaration ¶ 8.b. The amount of costs and expenses actually expended and advanced by counsel include: filing and PACER fees, process service, expert expenses, *pro hac vice* fees, research/Westlaw charges, copying and

mailing expenses, court reporting expenses for hearing transcripts and deposition coverage, and travel expenses in connection with court appearances, mediations and depositions in various parts of the country. *Id.* As this Court can certainly be assured, however, this litigation is not over, and Class Counsel will continue to incur and advance costs through final judgment, and, if necessary, through any appeals. Yanchunis Decl. ¶ 8. A supplemental declaration of additional costs and expenses will be submitted to the Court prior to the fairness hearing in May. Accordingly, Class Counsel respectfully submit that they are entitled to recover these expenses.

### F.  Plaintiffs Are Entitled to Reasonable Service Awards.

The Settlement proposes that the named Plaintiff receive a Service Award of $10,000.00 for her participation in this action and service to the Settlement Class. "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, No. 08-22278, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See, e.g.*, *Cooper v. Nelnet, Inc.*, No. 14-314, (Doc. 81) (M.D. Fla. Aug. 4, 2014) (Dalton, J.) (approving a service award of $25,000); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award."); *Spicer v. Chi. Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff).

Plaintiff has worked diligently in service of the Class. Yanchunis Decl. ¶ 9. Ms. Swaney worked hand-in-hand with Plaintiff's Counsel from the start, having many conversations about

this case, staying involved in and apprised of litigation strategy from day one through many complex issues. Ms. Swaney was subject to the time consuming demands of discovery, including responding to interrogatories, going mediation, being deposed, and she also was involved in and approved the settlement terms reached in this case. Yet, the subject of service awards was not raised nor negotiated until after the parties had reached a settlement of the underlying claims, and the class representatives' consent and agreement to the terms of the settlement was not, nor is it in any way, conditioned on the class representatives' receipt of a service award. Howard Decl. ¶ 8.

Plaintiffs respectfully submit that service award of $10,000 is reasonable, particularly given the length of time this case pended, the amount and of time and effort put forth by Plaintiff, and the lack of any objections.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the request for attorney's fees, costs, and expenses, and for a service award in the amounts requested.

Dated:  February 10, 2020                         Respectfully submitted,


                                        /s/  John A. Yanchunis                     
                                        John A. Yanchunis (admitted *pro hac vice*)
                                        Patrick A. Barthle II (admitted *pro hac vice*)
                                        Jonathan B. Cohen (admitted *pro hac vice*)
                                        MORGAN & MORGAN
                                        COMPLEX LITIGATION GROUP
                                        One Tampa City Center
                                        201 North Franklin Street, 7th Floor
                                        Tampa, FL 33602
                                        Telephone: (813) 223-5505
                                        Facsimile: (813) 222-4747
                                        jyanchunis@forthepeople.com
                                        jcohen@forthepeople.com

                                        William "Billy" Peerce Howard
                                        (admitted *pro hac vice*)

THE CONSUMER PROTECTION FIRM
4030 Henderson Boulevard
Tampa, FL, 33629
Telephone: (813) 500-1500
Facsimile:  (813) 435-2369
Billy@TheConsumerProtectionFirm.com

Micah S. Adkins (ASB-8639-I48A)
THE ADKINS FIRM, P.C.
The Kress Building
301 19th Street North, Suite 581
Birmingham, AL 35203
Telephone: (205) 458-1202
Facsimile: (205) 208-9632
MicahAdkins@itsyourcreditreport.com

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Julie Clark
EDELMAN,    COMBS,    LATTURNER    &
GOODWIN, L.L.C.
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
Telephone: (312) 739-4200
Facsimile: (312) 419-0379

*Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this February 10, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to all attorneys of record in this matter.

*/s/ John Yanchunis*
John Yanchunis