UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

SUEANN SWANEY, on behalf of
Plaintiff and the class defined below,

    Plaintiff,

v.

REGIONS BANK,

    Defendant.
_____/

CIVIL ACTION NO. 2:13-cv-00544-JHE

Class Action

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

**I.   INTRODUCTION**

    Plaintiff respectfully requests that this Court grant final approval of the Parties' Class Action Settlement Agreement.[1] This Settlement is, by any measure, a solid result for the Class. At $2,805,200 in non-reversionary cash for 69,128 potential wrong-number text recipients, the Settlement offered Class Members an amount within the standard range for TCPA class settlements. After *pro rata* distribution of the Settlement Fund (with no money reverting back to Regions), each of the 3,496 Class Members who filed valid claims is projected to receive a cash payment of approximately $548.00 (if the Court awards the sums sought by Plaintiff's counsel for their fees, costs, and expenses, and the service award sought for Plaintiff), an exceptional amount when compared to awards achieved in similar TCPA settlements.

    The Settlement must be measured against the real possibility that Settlement Class Members would have received no compensation whatsoever were the case fully litigated. While

---

[1] All capitalized terms used herein will have the meaning attributed to them in the Settlement Agreement unless otherwise defined herein, previously filed at Doc. 190-1, and cited to herein as "S.A."

1

Plaintiff believes she would have secured class certification and prevailed at trial, success was not assured, particularly given the uncertainty surrounding the FCC's interpretation of "automatic telephone dialing system" ("ATDS"), and evolving 11th Circuit precedent concerning the ATDS issue,[2] and thus the substantial risk that Plaintiff could lose class certification based. The reaction of the Class reflects this superior result—with thousands of claims, only 4 opt-outs, and not a single objection.

Plaintiff respectfully requests that the Court grant final approval of the Settlement, and grant the separately filed motion for attorneys' fees, costs, expenses, and a service award for Plaintiff, (Doc. 200).

The background of the litigation of this case, as well as the terms of the proposed Settlement, are set forth in detail in Plaintiff's Motion for Preliminary Approval. (Doc. 190 at 1–7). To avoid burdening the Court with duplication of efforts, Plaintiff will not repeat such discussions here.

On January 17, 2020, the Settlement Administrator caused the Class Notice to be mailed and emailed to the Settlement Class Members. Declaration of American Legal Claim Services, LLC, Keith Salhab, attached hereto as Exhibit A, at ¶¶ 7–8 (hereinafter "ALCS Decl."). On this same date, the Settlement Administrator established the Settlement Website, which allowed Settlement Class Members to complete and submit claims online through an online claim portal, contained general information about the Settlement, including Court documents, and important dates and deadlines pertinent to this matter, and enabled Settlement Class Members to contact the Settlement Administrator concerning additional questions regarding the Settlement. *Id*. ¶ 9. On November 22, 2019, the Settlement Administrator caused Notice of the Settlement to be sent to

---

[2] *See Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1304 (11th Cir. 2020) (finding that an ATDS must both store and produce using a random or sequential number generator).

the Attorneys General of all states and territories, as well as the Attorney General of the United States, none of whom have raised any concerns. *Id.* ¶ 3.

## II. ARGUMENT

The new rule 23(e) of the Federal Rules of Civil Procedure calls for front-loaded scrutiny of a proposed settlement so that any issues are identified before notice goes out to the class. That step has already occurred. *See* (Doc. 194 at 2–3) (Order granting preliminary approval, and citing amended Rule 23(e) analysis). With this Motion, Plaintiff respectfully requests the Court to take the second and final step in the process by granting final approval of the Settlement. Final approval is warranted because the Class Notice was effective and satisfied Rule 23 and due process, and because the Settlement is an excellent result for Class Members that was reached through arms-length, adversarial negotiations.

### a. The Notice Plan was Effective and Satisfied Rule 23 and Due Process.

When a class is certified through settlement, due process and Rule 23 require that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Notice is "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). This mandate does not require that every individual class member actually receive direct notice. *See, e.g.*, *CE Design v. Beaty Const., Inc.*, No. 07-cv-3340, 2009 WL 192481, at *10 (N.D. Ill. Jan. 26, 2009) ("The Federal Rules [] require the best notice that is 'practicable' not perfect notice. The word 'practicable' implies that the plaintiff should be afforded some flexibility with respect to providing notice to unknown, potential class members"). In particular, class members who cannot be reached through reasonable effort can be notified by publication. *Hughes v. Kore of Indiana Enter., Inc.*, 731 F.3d 672, 677 (7th Cir. 2013). Class notice must clearly state

in plain, easily understood language the details of the proposed settlement, including the nature of the action, the class definition(s), the claims, and the class members' rights. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) ("We have interpreted Rule 23 to require that class members be given 'information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action,' though the notice need not include 'every material fact' or be 'overly detailed.' In fact, we have recognized that 'an overly detailed notice' has the potential to 'confuse class members and impermissibly encumber their rights to benefit from the action.'") (quoting *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1104–1105 (5th Cir. 1977)).

Here, the Notice satisfied Rule 23 and due process. Following preliminary approval, Regions and Fiserv, Regions' third-party vendor, assembled the Notice list, identifying the telephone numbers that potentially received a text in error, which consisted of 65,096 distinct phone numbers. ALCS Decl. ¶ 4. Consistent with the Preliminary Approval Order, the Notice Plan was implemented by the Settlement Administrator, American Legal Claims Services, LLC. ALCS Decl. ¶¶ 3–12. Specifically, using the 65,096 distinct phone numbers, the Settlement Administrator incorporated a data fusion solution that focused on the reverse lookup function to locate names and addresses that were associated with the telephone numbers. ALCS Decl. ¶ 5. The Settlement Administrator was able to identify 69,128 names and addresses associated with the 65,096 distinct phone numbers. *Id.* Having derived this Class List, the Settlement Administrator utilized several means of ensuring the most accurate addresses for class members, including National Change of Address through the U.S. Postal Service, skip-tracing based on available information, and manual updates from class members and/or class counsel. ALCS Decl. ¶ 6.

On January 17, 2020, the Settlement Administrator sent direct notice of the Settlement via U.S. Mail to all 69,128 names and addresses that were identified. ALCS Decl. ¶ 7. On that same day, the Settlement Administrator also sent Email Notice to 35,708 email addresses associated with 13,550 individuals; resulting in 22,535 emails associated with 11,984 individuals reported as delivered. *Id.* ¶ 8. This direct notice was further supplemented by an internet noticing campaign. On February 4, 2020, the Settlement Administrator launched a geo-targeted internet campaign using Google Display Ads to the states in which Regions Bank operates, resulting in, at the campaign's conclusion, 3,793,768 unique ad impressions, leading to 6,384 direct clicks to the Settlement Website, 1,054 indirect clicks from other sites, and 962 clicks from organic searches. *Id.* ¶ 11.

Additionally, as of January 17, 2020, Class Members had access to the Settlement Website, TCPASettlementRegionsBank.com, which contains all of the information related to the Settlement, including key dates and deadlines, relevant court documents, contact information for Class Counsel, and most importantly, an easily accessible online Claim Form that Settlement Class Members can use to submit their claim through U.S. mail and also directly on the Settlement Website. ALCS Decl. ¶ 9. There have been 8,983 unique visitors to the Settlement Website with 32,955 page views. *Id.* The Settlement Administrator also established a tollfree phone number dedicated to answering telephone inquiries from Settlement Class Members, which was called 1,178 times. *Id.* ¶ 10.

As the Court has already found, the form and content of Class Notice satisfied Rule 23 and due process. (Doc. 194 at ¶¶ 11–13). And notice was effective, with direct mail and/or direct email notice reaching 61,276 individuals, some 88.64% of the Settlement Class, and resulting in more than 3,542 Claim Forms being submitted. ALCS Decl. ¶ 13.

5

### b. Final Approval of the Settlement Is Warranted.

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Lieberman*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Wilson v. EverBank*, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (quoting *Nelson v. Mead Johnson & Johnson Co.,* 484 Fed. App'x 429, 434 (11th Cir. 2012)).

Amended Rule 23(e)(2) standardizes the factors governing final approval, directing that approval is proper upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

### c. The Settlement was reached after extensive litigation, discovery, and arm's-length negotiation.

The first two factors under the amended Rule 23(e)(2) are intended to "look" to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R.

Civ. P. 23(e)(2)(A) & (B) Advisory Committee's Note. In determining whether these factors are satisfied the Court may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2)(A) & (B) Advisory Committee's Note.

As explained in the Preliminary Approval motion, the amount of the Settlement is very competitive with similar settlements, Plaintiff and Class Counsel have adequately represented the Class, and the Settlement was reached only after extensive motions practice and discovery as to the ATDS issue. (Doc. 190 at 2–4, 11, 15, 17–18); (Doc. 191-2 ¶¶ 3–14, 20–21); (Doc 191-3).

Moreover, courts begin with a presumption of good faith in the negotiating process. "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Wilson*, 2016 WL 457011, at * 6 (*Saccoccio v. JPMorgan Chase Bank, N.A*., 297 F.R.D. 683, 692 (S.D. Fla. 2014)). Here, the Settlement is the result of extensive, arm's length negotiations between attorneys experienced in class action litigation, including TCPA class actions. The settlement discussions took place during a full-day mediation, with additional settlement discussions over the following weeks. The mediation and subsequent negotiations were facilitated by Rodney Max, a highly skilled mediator with substantial experience mediating complex and class action cases. *See* (Doc. 190-2 ¶ 15); *see also Wilson*, 2016 WL 457011, at *6 (finding involvement of Mr. Rodney Max as the mediator "weighs in favor of approval") (citing *Poertner v. Gillette Co*., 618 F. App'x 624, 630 (11th Cir. 2015) ("self-dealing contention" was "belied" by involvement of experienced mediator); *Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7–12 Litig*., 447 F.Supp.2d 612, 619–20 (E.D. La. 2006) (use of special master to oversee mediation evidenced procedural fairness of negotiating

process)); *see also Butler v. Am. Cable & Tel., LLC*, No. 09-cv-5336, 2011 WL 2708399, at *8 (N.D. Ill. July 12, 2011) (presence of respected neutral supports finding of fairness); Fed. R. Civ. P. 23(e)(2)(A) & (B) Advisory Committee's Note ("[T]he involvement of a neutral or court affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests"). Accordingly, subsections (A) and (B) of Rule 23(e)(2) are met, the Settlement is not a product of fraud or collusion, and should be approved.

### d. The relief provided by the Settlement is exceptional in light of the costs, risks, and delay of trial and appeal.

The Settlement provides outstanding relief to the Settlement Class Members, especially in light of the numerous significant risks if this case had proceeded towards ruling on class certification, dispositive motions, and trial.

In determining whether a settlement is fair, given the potential range of recovery, "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (King, J.), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.* This is because a settlement must be evaluated "in light of the attendant risks with litigation." *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 64 (S.D.N.Y. 2003); *see also Bennett*, 737 F.2d at 986 ("[C]ompromise is the essence of settlement."). Thus, courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988); *see also, e.g.*, *Great Neck Capital Appreciation Investment P'ship, L.P. v. PriceWaterHouseCoopers, L.L.P.*, 212 F.R.D. 400, 409-410 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were

fully litigated is not a good reason for disapproving the settlement.").

Given that over 3,496 valid claims have been submitted, Plaintiff estimates that each claimant will receive just over $548, following the *pro rata* distribution of the residual fund. ALCS Decl. ¶ 17; *see also* S.A. § 3.3(b). This per-claimant benefit not only compares very favorably to other "wrong-number" settlements, it actually amounts to a sum in excess of full statutory damages available under the TCPA per violation. *See* 47 U.S.C. § 227(b)(3)(B) (setting statutory damages of $500 for each violation).[3]

---

[3] *See also, e.g.*, *Vergara et al v. Uber*, No. 15-cv-6942, Dkt. Nos. 101, 111 (N.D. Ill. 2018) (granting final approval of settlement creating $20 million fund for unauthorized robocalls with 103,000 claims made); *Markos v. Wells Fargo Bank, N.A.*, No. 15-cv-1156 (N.D. Ga.) ($16.4 million for 3,296,755 class members, $4.97 per class member); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270 (N.D. Ga.) ($30.4 million for 6,409,689 class members, $4.74 per class member); *Luster v. Wells Fargo Dealer Servs.*, No. 15-cv-1058 (N.D. Ga.) ($14.8 million for 3,128,914 class members, $4.73 per class member); *Gehrich v. Chase Bank USA, N.A.*, No. 12-cv-5510, 2016 WL 806549 (N.D. Ill. Mar. 3, 2016) ($34 million for more than 32 million class members, $1.06 per class member); *Arthur v. Sallie Mae Inc.*, No. 10-cv-00198 (W.D. Wash.) ($24.15 million for 7,792,256 class members, $3.10 per class member); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ($17.1 million for 4,546,293 class members, $3.76 per class member); *Duke v. Bank of Am., N.A.*, No. 12-cv-04009 (N.D. Cal.) ($32,083,905 for approximately 7,723,860 class members, $4.15 per class member); *Connor v. JPMorgan Chase Bank*, No. 10-cv-1284 (S.D. Cal.) ($11,665,592.09 for 2,684,518 class members, $4.35 per class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-cv-190 (N.D. Ill.) ($39,975,000 for 9,065,262 class members, $4.41 per class member); *In re Capital One Tel. Consumer Protection Act Litig.*, No. 12-cv-10064 (N.D. Ill.) ($75,455,098 for 16,645,221 class members, $4.53 per class member); *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) ($12.2 million for 47 million class members, $0.26 per class member); *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248 (S.D. Cal.) ($9 million for more than 6,079,411 class members, $1.48 per class member); *Luster et al. v. Wells Fargo Bank, N.A.*, 15-cv-01058, Dkt. Nos. 72-1, 80 (N.D. Ga. 2017) (granting final approval of settlement creating a $14.8 million fund for unauthorized robocalls with 301,000 claims made, approximately $33 per claimant after deduction of attorneys' fees, costs, and awards); *James v. JPMorgan Chase Bank, N.A.*, No. 15-cv-02424 (M.D. Fla.), Dkt. Nos. 56, 58 (granting final approval of settlement creating a $3.75 million fund for unauthorized robocalls with 24,000 claims made, approximately $81 per claimant after deduction of attorneys' fees, costs, and awards); *Bradshaw v. Bank of Am. Corp.*, No. 13-cv-0431-LAB (JLB) (S.D. Cal.) (settlement fund of over $32,000,000 providing payment of $20 to $40 per class member depending on number of claims submitted); *Couser v. Comenity Bank*, No. 12-cv-2484-MMA-BGS (S.D. Cal.) (settlement fund of $8,475,000 providing payment of $13.75 per class member); *In re Prescription Pads TCPA Litigation*, No. 13-cv-6897 (N.D. Ill.)

Without question, every step in this litigation was vigorously contested. Continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval. Had Plaintiff succeeded in obtaining class certification on a contested basis, Plaintiff and the Settlement Class could still have faced a challenge to the certification decision of the Court, as well as summary judgment, a trial on the merits, and a post-judgment appeal. *See Declaration of John Yanchunis*, (Doc. 190-2 ¶¶ 17–19). The uncertainties and delays from this process would have been significant. Complex litigation – like this case – "can occupy a court's docket for years on end, as it has been so far, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *Wilson*, 2016 WL 457011, at *7 (quoting *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir.1992)); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 325 n.32 (N.D. Ga. 1993) ("[A]djudication of the claims of two million claimants could last half a millennium."). As a result, recovery by any means other than settlement would have required additional complex, protracted and expensive litigation.

Because this case involves what is often termed "misdirected" automated texts, class certification was far from certain. *See, e.g.*, *Sandoe v. Bos. Sci.Corp.*, No. 18-cv-11826, 2019 WL 5424203 (D. Mass. Oct. 23, 2019) (denying class certification);*Tomeo v. CitiGroup, Inc.*, No. 13-cv-4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) (denying class certification); *Davis v. AT&T Corp.*, No. 15-cv-2342, 2017 WL 1155350, (S.D. Cal. Mar. 28, 2017) (denying class certification). Further, with respect to the merits of Plaintiff's claims, some courts have found that misdirected calls may not even be actionable under the TCPA and that a defendant's reasonable reliance on the consent of the customer it intended to reach may defeat the claim. *See, e.g.*, *Roark v. Credit*

---

(settlement fund of $1,000,000 providing payment of up to $20.00 per class member); *Kolinek v. Walgreen Co*., No. 13-C-4806 (N.D. Ill.) (settlement fund of $11,000,000 providing payment of approximately $30.00 per class member).

10

*One Bank, N.A.*, No. 16-cv-173, 2018 WL 5921652 (D. Minn. Nov. 13, 2018). Courts also often find – as Regions would argue here – that dialer equipment that sends texts from a list of numbers does not meet the statutory definition of an ATDS. *See Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1304 (11th Cir. 2020); *Smith v. Premier Dermatology*, No. 17-cv-3712, 2019 WL 4261245, at *7 (N.D. Ill. Sept. 9, 2019) (finding that a system that only "had the capacity to send text messages to client-provided phone numbers" and not "randomly or sequentially generated numbers" was not an ATDS); *Johnson v. Yahoo!, Inc.*, 346 F. Supp. 3d 1159, 1162 (N.D. Ill. 2018) (holding the system at issue was not an ATDS as it "did not have the capacity to generate random or sequential numbers to be dialed—it dialed numbers from a stored list").

Moreover, any trial in this matter would be complex and expensive, with fact and expert witnesses from across the country. "Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted). In addition, trial(s) would be unlikely to take place for some time. With this Settlement, Plaintiff and the Settlement Class Members will receive meaningful payments now, instead of years from now—or perhaps never. *See id.* at 582. In short, absent settlement, the expense, duration, and complexity of protracted litigation against Regions would be substantial. In light of these considerations, "the benefits to the class of the present settlement become all the more apparent." *Ressler v. Jacobson*, 822 F.Supp. 1551, 1555 (M.D. Fla. 1992).

In addition, in evaluating this factor, "[t]he court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *Lipuma*

11

*v. American Express Co.*, 406 F.Supp.2d 1298, 1323 (S.D. Fla. 2005) (quoting *In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D. La. 1993)). Particularly, because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler*, 822 F. Supp. at 1554 (citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides important benefits to the Settlement Class. Considering the uncertainties inherent in continued litigation, including trial and an appeal of this case, along with the delays and complexities inherent in this type of litigation, the Settlement is in the best interest of Plaintiff and the Settlement Class. *Lipuma*, 406 F.Supp.2d at 1324.

    **e. The remaining Rule 23(e)(2)(C) factors weigh in favor of approval.**

As detailed above, the Parties' preliminarily approved, extensive notice plan, ensured that Class Members received effective notice informing them about the Settlement and allowed for them to easily submit claims for compensation from the Settlement Fund. ALCS Decl. ¶¶ 3–14. Checks for approved claims will be mailed and postmarked as soon as practicable, but no later than sixty (60) days after the Effective Date. S.A. ¶ 3.3(a). The terms of attorney's fees are discussed below and in Plaintiff's Motion for Fees (Doc. 200), and there are no Rule 23(e)(3) agreements to disclose.

    **f. The Court Should Grant Final Certification of the Settlement Class.**

As explained in the Motion for Preliminary Approval, the Settlement Class meets the requirements of Rule 23(a) and Rule 23(b)(3). (Doc. 190 at 7–15). Nothing material has changed, and no objections have been filed. As such, the Court should conclude that the Settlement Class meets the requirements of Rule 23(a) and Rule 23(b)(3), and the Court should finally certify the Settlement Class.

    **g. Class Representative and Service Award.**

In a separate motion previously filed with the Court (Doc. 200), Plaintiff and Class Counsel seek a Service Award of $10,000.00 for the Class Representative, Sueann Swaney (or in another lesser amount if set by the Court). *See* Plaintiff's Motion for Attorneys' Fees, Costs, Expenses and for Service Award. (Doc. 200). The Service Award will compensate Plaintiff for her time, effort, and seven-year-long dedication in prosecuting this action against Defendant.

### h. Attorneys' Fees, Costs and Expenses.

Class Counsel also seeks Court approval of $841,560.00 (30% of the Settlement Fund) to Class Counsel for their attorneys' fees, and payment from the Settlement Fund of $35,327.51 for costs and expenses incurred by Class Counsel in connection with prosecuting this Litigation. *See* (Doc. 200). The Parties negotiated these attorneys' fees, costs, and expenses only after reaching agreement on all other material terms of the Settlement. *See* (Doc. 191-2 ¶ 15).

### i. The Opinions of Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval of the Settlement.

In addition to the factors discussed above, the Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted). "[T]he reaction of the class is [likewise] an important factor." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d at 1324. Thus, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable. *See id.*

Here, Class Counsel wholeheartedly endorses the Settlement. *See generally* (Doc. 191-2 ¶ 22). Additionally, the reaction of the Settlement Class to the Settlement here has been extremely positive. ALCS Decl. ¶¶ 14–16.

In accord with the Settlement terms, the deadline established by the Court for objections expired on March 4, 2020. The Settlement Class was given an opportunity to review and object to the Notice of Proposed Class Action Settlement and Plaintiff's application for attorneys' fees, costs, and expenses and service award to Plaintiff, prior to the objection deadline. *See In re Mercury Interactive Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010). Yet, of the more than 60,000 Settlement Class Member that received direct notice, not a single objection and only four (4) requests for exclusion were received by the Settlement Administrator. ALCS Decl. ¶¶ 14–16; *see also Association for Disabled Americans. v. Amoco Oil Co.,* 211 F.R.D. 457, 467 (S.D. Fla. 2002) (recognizing that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness"); *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) ("In evaluating the fairness of a class action settlement, such overwhelming support by class members is strong circumstantial evidence supporting the fairness of the Settlement."); *Austin v. Pennsylvania Dept. of Corrections*, 876 F. Supp. 1437, 1458 (E.D. Pa. 1995) ("Because class members are presumed to know what is in their best interest, the reaction of the class to the Settlement Agreement is an important factor for the court to consider.").

The Settlement is supported by Plaintiff, who has been at the helm of this case since its inception, participated throughout the prosecution of his claims, and was involved in the decision to enter into the Settlement with Defendant. (Doc. 190-2 ¶ 20).

### III. <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully requests that the Court enter a Final Judgment certifying the Settlement Class, approving the Settlement, and dismissing the action with prejudice.

Dated:  May 1, 2020                             Respectfully submitted,


/*s/*  *John A. Yanchunis*_____
John A. Yanchunis (admitted *pro hac vice*)
Patrick A. Barthle II (admitted *pro hac vice*)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
One Tampa City Center
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4747
jyanchunis@forthepeople.com
pbarthle@forthepeople.com

William "Billy" Peerce Howard
(admitted *pro hac vice*)
THE CONSUMER PROTECTION FIRM
4030 Henderson Boulevard
Tampa, FL, 33629
Telephone: (813) 500-1500
Facsimile:  (813) 435-2369
Billy@TheConsumerProtectionFirm.com

Micah S. Adkins (ASB-8639-I48A)
THE ADKINS FIRM, P.C.
The Kress Building
301 19th Street North, Suite 581
Birmingham, AL 35203
Telephone: (205) 458-1202
Facsimile: (205) 208-9632
MicahAdkins@itsyourcreditreport.com

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Julie Clark

EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
Telephone: (312) 739-4200
Facsimile: (312) 419-0379

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this May 1, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to all attorneys of record in this matter.

*/s/ John Yanchunis*
John Yanchunis