**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **SUEANN SWANEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CASE NO. 2:13-CV-00544-RDP** |
| | ) |
| **REGIONS BANK,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement (Doc. # 205), and Plaintiff's Motion for Attorneys' Fees, Costs, and Expenses, and for Service Award to Class Representative (Doc. # 200). The court preliminarily approved the Settlement Agreement on December 20, 2019, and notice was given to all members of the Settlement Class under the terms of the Preliminary Approval Order. Upon consideration of the Motions, the Settlement Agreement and the exhibits thereto, and the record in this case, Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement (Doc. # 205) is due to be granted, and Plaintiff's Motion for Attorneys' Fees, Costs, and Expenses, and for Service Award to Class Representative (Doc. # 200) is due to be granted in part.

The court finds as follows:

## I.      Jurisdiction

This court has jurisdiction over the subject matter of the Action and over all parties to the

Action, including all Settlement Class Members.[1]

## II.   Rule 23 Requirements and the Class Definition

Under Federal Rule of Civil Procedure 23, the court certifies the following "Settlement

Class":

> All persons who (a) received a text message from Regions between January 24, 2011 to present, (b) without their prior express consent in that the called (i.e. texted) party was not the intended recipient or the recipient had previously informed Regions that it had the wrong number. Excluded from the Settlement Class are (a) any persons who signed a release of Regions related to such conduct in exchange for consideration; (b) any officers, directors or employees, or immediate family members of the officers, directors or employees of Regions or any entity in which Regions has a controlling interest; (c) any legal counsel or employee of legal counsel for Regions; and (d) the presiding Judge in the Action, as well as the Judge's staff and their immediate family members.[2]

Pursuant to Rule 23(a), the court finds that: (a) the Settlement Class is so numerous that

joinder of all members is impracticable; (b) there are questions of law or fact common to the

Settlement Class; (c) the claims of the Class Representative, identified above, are typical of the

claims of the Settlement Class; and (d) the Class Representative will fairly and adequately protect

the interests of the Settlement Class.

---

[1]  Unless otherwise defined herein, all terms used in this Memorandum Opinion that are defined terms in the Settlement Agreement have the same meaning as set forth in the Settlement Agreement.

[2] The court is cognizant that the class definition includes persons who may have only received one errant text message and that such a person would not have standing to assert such a claim in the Eleventh Circuit. *See Salcedo v. Hanna*, 936 F.3d 1163, 1172 (11th Cir. 2019). However, the named Plaintiff, Swaney, received numerous messages allegedly in violation of the TCPA. (Doc. # 1 at ¶¶ 7-16). And, there is a circuit split regarding whether receipt of a single text message is sufficient to establish an injury. *Compare Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (Finding one text message sufficient to establish injury); *Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85, 92-95 (2d Cir. 2019) (Text message receipt establishes injury, with implication only one text message receipt at issue: "Plaintiffs have moved to supplement the appendix with evidence ... demonstrating that they did in fact receive the text messages in question.") *with Salcedo*, 936 F.3d at 1172 (finding one text message insufficient to establish injury). Because this is a nationwide settlement, any class members who may not have a viable claim in the Eleventh Circuit, may have a viable claim in another Circuit. *See Drazen v. GoDaddy.com, LLC*, 2020 WL 2494624, at *6 (S.D. Ala. May 14, 2020). Therefore, certification under these circumstances is not inappropriate. *See In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) ("By entering into class-wide settlements, defendants 'obtain[ ] releases from all those who might wish to assert claims, meritorious or not' and protect themselves from even those 'plaintiffs with non-viable claims [who] do nonetheless commence legal action.'").

The court also finds the settlement class is ascertainable. "In order to establish ascertainability, the plaintiff must propose an administratively feasible method by which class members can be identified." *Karhu v. Vital Pharmaceuticals, Inc.*, 621 F.App'x. 945, 947 (11th Cir. 2015); *Papasan v. Dometic Corporation*, 2019 WL 3317750, *5 (S.D. Ala. 2019) (citing *Karhu v. Vital Pharmaceuticals, Inc.*). "Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual inquiry." *Bussey v. Macon County Greyhound Park, Inc.*, 562 F.App'x. 782, 787 (11th Cir. 2014). Here, the Settlement Class Members are readily identifiable for the reasons explained by counsel during the telephonic hearing. Thus this element has been satisfied. *See Family Med. Pharmacy, LLC*, 2017 WL 1042079 at *4.

Pursuant to Rule 23(b)(3), the court finds that: (a) the questions of law or fact common to the members of the Settlement Class predominate over the questions affecting only individual members, and (b) certification of the Settlement Class is superior to other available methods for the fair and efficient adjudication of the controversy.

## III.   Class Representative and Class Counsel

Under Federal Rule of Civil Procedure 23, Sueann Swaney is hereby appointed as Class Representative.

The following is hereby appointed as Class Counsel:

> John Allen Yanchunis, Sr.
> MORGAN & MORGAN COMPLEX LITIGATION GROUP
> 201 N Franklin St 7th Floor
> Tampa, FL 33602
> Telephone: (813) 275-5272

## IV.   Notice and Opt-outs

The court finds that, in accordance with the Notice Plan and Rule 23(c)(2)(B), the Settlement Administrator provided the best notice practicable under the circumstances, including

individual notice to all Class members who could be identified through reasonable effort.[3]

The court finds that Defendant properly and timely notified the appropriate state and federal officials of the Settlement Agreement under the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. § 1715.[4]

All persons who made timely and valid requests for exclusion (there were only four) are excluded from the Settlement Class and are not bound by the Final Approval Order and Judgment (entered contemporaneously with this Memorandum Opinion). The list of persons submitting notices seeking exclusion from the Settlement Class, submitted by Plaintiff, will be accepted as the list of persons who have made timely and valid requests for exclusion. (Doc. # 205-1 ¶ 15).

## V.      Final Approval of the Settlement

Federal Rule of Civil Procedure 23(e)(2) requires the court to determine whether the Settlement Agreement is "fair, reasonable, and adequate," and in doing so the court must consider whether: (1) the Class Representative and Class Counsel have adequately represented the Class; (2) the Settlement was negotiated at arm's length; (3) the relief provided for the Class is adequate; and (4) the Settlement treats Class Members equitably relative to each other.

Pursuant to the Settlement Agreement, Defendant has agreed to pay $2,805,200.00 to create the Settlement Fund. Amounts awarded to Class Counsel and a Service Award to the Class Representative will be paid from the Settlement Fund. The Claims Administrator has received

---

[3] On January 17, 2020, the Settlement Administrator caused the Class Notice to be mailed and emailed to the Settlement Class Members. (Doc. # 205-1 ¶¶ 7-8). On that same date, the Settlement Administrator established the Settlement Website, which allowed Settlement Class Members to complete and submit claims online through an online claim portal, contained general information about the Settlement, including Court documents, and important dates and deadlines pertinent to this matter, and enabled Settlement Class Members to contact the Settlement Administrator concerning additional questions regarding the Settlement. (*Id.* ¶ 9).

[4] On November 22, 2019, the Settlement Administrator caused Notice of the Settlement to be sent to the Attorneys General of all states and territories, as well as the Attorney General of the United States, none of whom have raised any concerns. (Doc. # 205-1 ¶ 3).

3,542 Claims. Of the Claims processed by the Claims Administrator ("ALCS"), 3,496 (or 98%) are valid. (Doc. # 205-1, ¶ 14). The Estimated First Distribution amounts to $548.71 per Allowed Claim. (*Id.* ¶ 17). The Claims Administrator anticipates the amount of unallocated funds remaining in the Settlement Fund after amounts awarded to Class Counsel, a Service Award to the Class Representative, and the initial distribution to Settlement Class Members with valid Claims will total $22.33, due to rounding.

"Public policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) *(citing Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Class action settlements require court approval, and "such approval is committed to the sound discretion of the district court." *Id.* (citing Fed. R. Civ. P. 23(e)). "The court must be exacting and thorough in analyzing whether the settlement is in the best interests of class members." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 843 (E.D. La. 2007) (citing *Manual for Complex Litigation* (Fourth) § 21.61 (2004)). "The [c]ourt may not resolve contested issues of fact or law[] but instead is concerned with the overall fairness, reasonableness, and adequacy of the proposed settlement as compared to the alternative of litigation." *Turner*, 472 F. Supp. 2d at 843.

The Eleventh Circuit has set forth six factors courts are to consider in determining whether a proposed settlement is fair, adequate, and reasonable: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which the settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Parsons v. Brighthouse Networks, LLC*, 2015 WL 13629647, *2 (N.D. Ala. Feb. 5, 2015) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986

(11th Cir. 1984)). The court concludes that these factors all weigh in favor of approving the Settlement.

### A.     The Likelihood of Success at Trial

"The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005). In evaluating this factor, the court has not reached any ultimate conclusions with respect to issues of fact or law involved in the case. Rather, this factor weighs in favor of approval where there was "no guarantee that the plaintiffs would prevail at trial on their [] claims." *Camp v. City of Pelham*, 2014 WL 1764919, at *3 (N.D. Ala. May 1, 2014).

The court has not previously weighed in on the merits, risks, or likelihood of success at trial. And, while Counsel for both parties have become familiar with the legal and factual issues presented in this case, there remains much to be done before any final resolution of this case could occur. Here, the legal and factual issues presented in this case were hotly contested and "would almost certainly continue to be hotly contested throughout the remaining litigation." *Parsons*, 2015 WL 13629647, at *3. Because "the outcome on class certification and the ultimate outcome on the merits [was] uncertain for both [p]arties," a settlement was reached and here that is appropriate. *Id.* at *2. Thus, the court concludes that this factor weighs in favor of approving the Settlement.

### B.     The Range of Possible Recovery and the Point On or Below the Range of Possible Recovery at Which the Settlement is Fair, Adequate, and Reasonable

The second and third factors are "easily combined and normally considered in concert." *Camp*, 2014 WL 1764919, at *3. "The [c]ourt's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation[] but to evaluate the proposed settlement in its totality." *Lipuma*, 406 F. Supp. 2d at 1323. The range of outcomes extends from no liability to total victory and must be considered in light of the attendant risks. *See, e.g.*, *Beaty v. Contl. Auto. Sys. U.S., Inc.*, 2012 WL 12895014,

*8 (N.D. Ala. Feb. 6, 2012). Even a minimal settlement can be approved. *See, e.g.*, *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.").

Here, the Settlement provides significant relief to Settlement Class Members. Pursuant to the Settlement Agreement, Defendant has agreed to pay $2,805,200 to create the Settlement Fund. Attorneys' fees and a Service Award will be paid from the Settlement Fund. The Claims Administrator has received 3,542 Claims, of which 98.70% are valid. (Doc. # 205-1 ¶ 14). The Estimated First Distribution amounts to $548.71 per Allowed Claim. (Doc. # 205-1 ¶ 17).[5] The Claims Administrator anticipates the amount of unallocated funds remaining in the Settlement Fund (after payment of fees, a Service Award, and the initial distribution to Settlement Class Members with valid claims), will total $22.33 (which accounts for rounding). Because of the uncertainties surrounding continued litigation, and the fact that settlement provides for certain, immediate relief, the court concludes that this factor weighs in favor of approving the Settlement.

### C.      The Complexity, Expense, and Duration of Litigation

A settlement that "will alleviate the need for judicial exploration of . . . complex subjects, reduce litigation costs, and eliminate the significant risk that individual claimants might recover nothing" merits approval. *Lipuma*, 406 F. Supp. 2d at 1324. The court concludes that the Settlement here satisfies this standard. A national class action (such as this one), to be successful, involves extensive discovery and expert involvement; contentious argument and voluminous briefing over certification, summary judgment, and *Daubert* challenges; a lengthy trial; and

---

[5] At the Final Approval Hearing, Class Counsel urged the court to allow processing of thirty-nine (39) late, but otherwise valid claims. Class Counsel indicated that the Estimated First Distribution would be $542.66, rather than $548.71, if these claims are allowed. The court indicated that it would permit payment of these claims at the discretion of the Settlement Administrator.

7

appeals. *See Parsons*, 2015 WL 13629647, at *4. Due to the factual and legal issues presented in this case, both parties would likely expend a considerable amount of resources on litigation expenses. Therefore, "[g]iven the nature of this case, any judgment at trial would likely be appealed by the losing party. As a result, continued litigation would have risked delaying the class's potential recovery for years, further reducing the value of any such recovery." *Id.* at *4. These considerations weigh in favor of approving the Settlement.

### D.     The Substance and Amount of Opposition to the Settlement Agreement

In assessing whether a proposed settlement is fair, adequate, and reasonable, the court must "examine the settlement in light of the objections raised." *Cotton*, 559 F.2d at 1331. "In assessing the fairness of a proposed compromise, the number of objectors is a factor to be considered but is not controlling." *Id.* "Thus, a low percentage of objections [may] point[] to the reasonableness of a proposed settlement and support[] its approval." *Lipuma*, 406 F. Supp. 2d at 1324 (citing *Bennett*, 737 F.2d at 986).

Here, in response to the Notice program (as detailed above), only four Settlement Class Members have opted out and no Settlement Class Member has objected to the Settlement. In addition, no federal or state office has objected to the Settlement. These facts weigh in favor of approving the Settlement. *See Maher v. Zapata Corp.*, 714 F.2d 436, 456-57 (5th Cir. 1983); *Ressler v. Jacobson*, 822 F. Supp. 1551, 1556 (M.D. Fla. 1992).

### E.     The Stage of Proceedings at Which the Settlement Was Achieved

Courts look at this last factor "to ensure that [p]laintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324; *see Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) (holding that early settlements are to be encouraged, and accordingly,

only some reasonable amount of discovery is required to determine the fairness of the settlement). Plaintiff and Class Counsel have litigated this case for over seven years, through dispositive motions. They have had the opportunity to investigate the facts and law, review substantive evidence relating to the claims and defenses, and brief the relevant legal issues. The court concludes that this factor counsels in favor of approving the Settlement because it is not premature.

The court has read and considered the papers filed in support of the Motion, including the Settlement Agreement and the exhibits thereto, memoranda and arguments submitted on behalf of the Plaintiff, Settlement Class Members, and Defendant. The court has not received any objection from anyone regarding the Settlement. The court held a hearing on June 3, 2020, at which time the parties were afforded the opportunity to be heard in support of or in opposition to the Settlement. The court has concluded that notice under the Class Action Fairness Act was effectuated on January 17, 2020, and that ninety (90) days has passed without comment or objection from any governmental entity.

The court also concludes that the Settlement is fair, adequate, reasonable, and in the best interests of the Settlement Class and will grant final approval to the Settlement. This finding is supported by, among other things, the complex legal and factual posture of this Action, the fact that the Settlement is the result of arms' length negotiations presided over by a neutral mediator, and the settlement benefits being made available to Settlement Class Members. It is further supported by the reaction of the Class—with thousands of claims, only four opt-outs, and not a single objection.[6]

---

[6] Plaintiff believes she would have secured class certification and prevailed at trial. However, success was not assured, particularly given the uncertainty surrounding the FCC's interpretation of "automatic telephone dialing system" ("ATDS"), and evolving Eleventh Circuit precedent concerning the ATDS issue. *See Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1304 (11th Cir. 2020) (finding that an ATDS must both store and produce using a random or sequential number generator).

The Settlement Administrator will be directed to take all reasonable steps necessary to ensure that the settlement is effectuated in a manner consistent with the Settlement Agreement.

The Parties to the Settlement Agreement must perform their obligations thereunder. The Settlement Agreement is deemed incorporated herein as if explicitly set forth and shall have the full force of an order of this court.

## VI.    Attorneys' Fees and Expenses

Also before the court is Plaintiff's Motion for Attorneys' Fees, Costs, and Expenses, and for Service Award to Class Representative. (Doc. # 200). The Motion (Doc. # 200) is due to be granted in part.

"The Supreme Court has acknowledged that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (citation omitted); *see Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "In considering a fee award in the class action context, the district court has a significant supervisory role." *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999). Courts are given "great latitude in formulating attorneys' fee awards subject only to the necessity of explaining its reasoning." *Id.* (internal quotation omitted). As the Supreme Court explained in *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970):

> While the general American rule is that attorneys' fees are not ordinarily recoverable as costs, both the courts and Congress have developed exceptions to this rule for situations in which overriding considerations indicate the need for such a recovery. A primary judge-created exception has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself. To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense.

*Mills*, 396 U.S. at 391-92.

10

"[A]ttorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Faught v. American Home Shield Corp.*, 668 F.3d 1233, (11th Cir. 2011) (quoting *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 974 (11th Cir. 1991)). Importantly, though, "there is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded a fee because the amount of any fee must be determined upon the facts of each case." *Camden I*, 946 F.2d at 774-75.

Notably, in this Circuit, common-fund fee awards are properly calculated as a percentage of benefits made available to the class, regardless of whether each class member redeems the benefits made available to class members, or even whether unclaimed benefits revert to the defendant. *See e.g.*, *Waters*, 190 F.3d 1291, 1294-95 (11th Cir. 1999) (upholding an attorney fee award based on the entire settlement fund, even though a portion reverted to the defendant); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 200 (2d Cir. 2007) (holding that in determining counsel fees, trial court erred in calculating percentage of the fund on the basis of claims made against the fund rather than on the entire fund created by efforts of counsel); *Williams v. MGM-Pathe Comm'ncs. Co.*, 129 F.3d 1026 (9th Cir. 1997) (holding that the district court abused its discretion by awarding only one-third of the $10,000 claimed against the common fund rather than one-third of the entire $4.5 million settlement fund in a case where unclaimed funds reverted to the defendant).

In determining an award of attorney's fees in a percentage-of-fund class settlement case, the "benchmark" percentage is 25%, which is the dead center of the 20-30% range. *See e.g.*, *In re Home Depot Inc.*, 931 F.3d 1065, 1076 (11th Cir. 2019) ("In this Circuit, courts typically award between 20-30%, known as the benchmark range."); *Wilson v. EverBank*, 2016 WL 457011, *18 (S.D. Fla. Feb. 3, 2016) ("[F]ederal district courts across the country have, in the class action

settlement context, *routinely* awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so-called 'mega-fund' cases.") (emphasis in original) (quotation omitted); *Amason v. Pantry, Inc.*, 2014 WL 12600263, *2 (N.D. Ala. July 3, 2014) ("'[T]he majority of common fund fee awards fall between 20% to 30% of the fund,' with 25% of the fund being viewed as a 'benchmark percentage fee award.'") (quotation omitted); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1201 (S.D. Fla. 2006) ("[I]n determining [fee] . . . awards, the 'bench mark' percentage is 25%, 'which may be adjusted up or down based on the circumstances of each case.'") (quotation omitted); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) ("[A]ttorneys' fees should be a reasonable percentage of a common fund created for the benefit of the class[] and set a 25% recovery as an appropriate 'benchmark.'") (quotation omitted); *Walco Invs., Inc. v. Thenen*, 975 F. Supp. 1468, 1470 (S.D. Fla. 1997) (noting that "25% of the common fund is a 'benchmark'"); *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991) ("In an effort to provide appellate courts a record for review of attorneys' fee awards, district courts are beginning to view the median of this 20% to 30% range, i.e., 25%, as a 'bench mark' percentage fee award which may be adjusted in accordance with the individual circumstances of each case.").

Here, Class Counsel request approval of attorneys' fees in the amount of $841.560, payable from the Settlement. The common fund created under the settlement is the total amount of benefits available to Class Members: $2,805,200. Class Counsels' requested fee represents 30% of the award to the Settlement Class. Further, the requested fees are within the 20% to 30% "benchmark" range of percentages recognized as appropriate by the Eleventh Circuit under *Waters* and *Candem I*, albeit at the high point of that range.

But, where a requested fee "exceeds 25 percent of the claims," our Circuit has historically encouraged courts to apply the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 (1989) to determine the reasonableness of the requested fees in light of the outcome of the case. *Faught*, 668 F.3d at 1242 (citation omitted); *see Camden I*, 946 F.2d at 775 ("[T]he *Johnson* factors continue to be appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases."). The *Johnson* factors include:

> (1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because he accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Faught*, 668 F.3d at 1242-43 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983)). "[O]ther pertinent factors [courts should consider] are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees required by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Allapattah*, 454 F. Supp. 2d at 1202 (citation omitted).

The court concludes that Class Counsel's requested fee should be 25%, and expressly finds that to be the reasonable fee here. The court has considered a number of factors in reaching this decision. First, the court believes the fee awarded in this case should fall in the middle of the 20-30% range. Second, the court has considered the *Johnson* factors, given that the fee request is above the mean benchmark of 25%. *Faught*, 668 F.3d at 1242. The court appreciates the hard work and acumen of Class Counsel. Indeed, awarding a 25% rather than 30% fee in this case does not

13

in any way indicate that Class Counsel has not done exceedingly well in litigating this Class on behalf of the Class. But in this case, a 30% award has produced realized hourly rates that are much higher than the customary fees in this legal community. For example, if Class Counsel received a 30% fee, the realized hourly rate would equal $950 for Mr. Yanchunis (the lead attorney in this case) and $658 for Mr. Barthle (an eight-year lawyer). The court has scoured Eleventh Circuit case law but has not come across one case awarding a "reasonable" fee of $950/hour, even in the class action context. This obviously is not the only factor the court has considered. But, it does counsel toward a finding that a 25% award is appropriate. If Class Counsel were awarded a 25% fee, the realized hourly rate would become $791 for Mr. Yanchunis and $548 for Mr. Barthle, which are more reasonable rates in this legal community.

Thus, the court will approve the following payments to Class Counsel: (1) the amount of $701,300 in attorneys' fees, and (2) the amount of $35,327.51 in costs and expenses. This fee award amounts to 25% of the common fund. Although Plaintiff's Class Counsel had requested a 30% fee, the court does not find that the circumstances justify awarding more than the 25% benchmark. These amounts shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement. The court, having considered the materials submitted by Class Counsel in support of final approval of the Settlement and their request for attorneys' fees, costs, and expenses and in response to the filed objections thereto, finds the award of attorneys' fees, costs, and expenses appropriate and reasonable and the court notes that the Notice specifically and clearly advised the Class that Class Counsel would seek the award.[7]

---

[7] The court recognizes this issue may increase the estimated First Distribution to Class Members.

**VII.    Propriety of Incentive Payment to Class Representative Swaney**

As part of Plaintiff's Motion for Attorneys' Fees, Costs, and Expenses, and for Service Award to Class Representative (Doc. # 200), Class Counsel ask the court to award Class Representative Swaney an incentive payment in the amount of $10,000.00. (*Id.*).

Class representative payments "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). Courts have consistently found service awards to be an efficient and productive way to encourage member*s of a class to become class representatives. *See, e.g.*, *Ingram v. The Coca–Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representative payments); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (approving $7,500 awards to three representative plaintiffs); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) (awarding $50,000 to each of 6 class representatives, for an aggregate award of $300,000)*; In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (granting two incentive awards of $55,000 and three incentive awards of $35,000); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 33 (E.D. Pa. 1985) (granting incentive awards of $20,000 to each of two plaintiffs).

The factors for determining a class representative payment include: (1) whether the representative protected the interests of class members and others; (2) the degree to which the class benefitted from those actions; and (3) the amount of time and effort required in pursuing litigation. *See Carnegie v. Mutual Sav. Life Ins. Co.*, 2004 WL 3715446, *24 (N.D. Ala. 2004). Here, Plaintiff

participated in drafting the complaint and amendments, participated in providing evidence to investigate the case, reviewed evidence, was deposed, and participated remotely in the mediation and follow up settlement discussions. Thus, the court concludes that payment of an incentive payment proposed in this case is not shrouded by a "cloud of collusion," but instead is very reasonable and warranted in light of the time and effort Plaintiff committed to this litigation, not to mention the resulting benefits to the Settlement Class. *See Holmes v. Continental Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983).

The court approves a Service Award in the amount of $7,500 for Class Representative Swaney and specifically finds that amount to be reasonable in light of the service performed by the Class Representative for the class. This amount shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.

## VII.    Conclusion

For all these reasons, Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement (Doc. # 205) is due to be granted, and Plaintiff's Motion for Attorneys' Fees, Costs, and Expenses, and for Service Award to Class Representative (Doc. # 200) is due to be granted in part. A separate order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this June 9, 2020.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

16